# Exhibit A

| | | |
|---|---|---|
| AOC-E-105    Sum Code: CI<br>Rev. 9-14<br><br>Commonwealth of Kentucky<br>Court of Justice    *Courts.ky.gov*<br><br>CR 4.02; Cr Official Form 1 | <br><br>**CIVIL SUMMONS** | Case #: **22-CI-005754**<br>Court:   **CIRCUIT**<br>County: **JEFFERSON Circuit** |

*Plantiff,* **JOHNSON , RICHARD VS. LINCOLN LINE ASSURANCE COMPANY OF BOST**, *Defendant*

TO:  **CORPORATION SERVICE COMPANY**
    **421 WEST MAIN STREET**
    **FRANKFORT, KY 40601**

Memo: Related party is THE LINCOLN NATIONAL LIFE COMPANY

The Commonwealth of Kentucky to Defendant:
**THE LINCOLN NATIONAL LIFE COMPANY**

    You are hereby notified that **a legal action has been filed against you** in this Court demanding relief as shown on the document delivered to you with this Summons. **Unless a written defense is made by you or by an attorney on your behalf within twenty (20) days** following the day this paper is delivered to you, judgment by default may be taken against you for the relief demanded in the attached complaint.

The name(s) and address(es) of the party or parties demanding relief against you or his/her (their) attorney(s) are shown on the document delivered to you with this Summons.

*David L. Nicholson*

Jefferson Circuit Clerk
Date: **11/3/2022**

---

### Proof of Service

This Summons was:

☐ Served by delivering a true copy and the Complaint (or other initiating document)

    To: _____

☐ Not Served because: _____

    Date: _____ , 20 _____

| | |
|---|---|
| | _____<br>Served By |
| | _____<br>Title |

---

Summons ID: 523244335469245@00001016559
CIRCUIT: 22-CI-005754 Certified Mail
JOHNSON , RICHARD VS. LINCOLN LINE ASSURANCE COMPANY OF BOST



 

## COMMONWEALTH OF KENTUCKY

CIVIL ACTION NO. _____          JEFFERSON CIRCUIT COURT

DIVISION _____

JUDGE _____

### *ELECTRONICALLY FILED*

RICHARD JOHNSON                                            PLAINTIFF

v.                          COMPLAINT AND JURY DEMAND

LINCOLN LIFE ASSURANCE                                      DEFENDANTS
COMPANY OF BOSTON
Dennis Glass, President of Lincoln Life Assurance Company of Boston
150 N. Radnor Chester Road, Ste. A 300
Wayne, PA 19087

SERVE:      Kentucky Secretary of State
            Summonses Branch
            700 Capital Avenue, Suite 86
            Frankfort, Kentucky 40601

and

THE LINCOLN NATIONAL LIFE COMPANY
d/b/a  LINCOLN LIFE ASSURANCE COMPANY OF BOSTON
1300 S. Clinton Street
Fort Wayne, Indiana 46802

SERVE:      Corporation Service Company – Registered Agent
            421 West Main Street
            Frankfort, Kentucky 40601

and

LANTECH,COM, LLC
d/b/a LANTECH, INC.
11000 Bluegrass parkway
Louisville, KY 40299

SERVE:      Gary R. Weitkamp, Registered Agent
            2303 River Road, Ste. 301
            Louisville, KY 40206

*** *** *** *** ***



Plaintiff Richard Johnson brings the following Complaint against Defendant Lincoln Life Assurance Company of Boston and Lantech.com, LLC d/b/a Lantech, Inc. for wrongfully withholding initial payments of long-term disability benefits and wrongfully ceasing continuing long-term disability benefits to him and states as follows:

1.     This action arises under written contracts including a confidential Release Agreement and a contract for long-term disability benefits and involves both state law claims and ERISA rights, §502(e) of the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1132(e), et seq.

2.     This action is brought by Plaintiff and Plan Participant Richard Johnson to recover wrongfully terminated and wrongfully withheld long term disability benefits.

3.     This Court has jurisdiction over the parties and subject matter of this dispute pursuant to Kentucky state law and 28 U.S.C. §502(e) of the Employment Retirement Income Security Act of 1974 ("ERISA") and 29 U.S.C. §1132(e)(1) which provides concurrent jurisdiction to recover benefits and enforce rights under employee benefits plans to state courts.

4.     The events giving rise to Plaintiff's claims against Defendants occurred while Plaintiff was living in Louisville, Jefferson County, Kentucky and Defendants were doing business in Louisville, Jefferson County, Kentucky and accordingly venue is proper in this Court.

5.     Plaintiff Richard Johnson is a resident of Louisville, Jefferson County, Kentucky who was insured by Lincoln Life Assurance Company of Boston under a contract/policy for disability insurance and wage replacement pursuant to a group policy for the employees of Lantech.com, LLC d/b/a Lantech, Inc.

2

6.      A copy of the aforementioned contract/policy for disability insurance and wage replacement pursuant to a group policy for employees of Lantech.com, LLC d/b/a Lantech, Inc. is attached hereto as Exhibit A.

7.      Throughout the remainder of this Complaint, Plaintiff and Plan Participant Richard Johnson is denominated as "Plaintiff" or "Mr. Johnson."

8.      Defendant Lincoln Life Assurance Company of Boston is an insurance company doing business throughout the nation including doing business in the Commonwealth of Kentucky.

9.      Lincoln Life Assurance Company of Boston is not registered with the Kentucky Secretary of State or the Kentucky Department of Insurance.

10.     Lincoln is the successor to Liberty Life Assurance Company of Boston which originally insured Plaintiff under a contract for disability insurance and wage replacement pursuant to a group policy for the employees of Lantech.com, LLC d/b/a Lantech, Inc. until Liberty Life Assurance Company of Boston was acquired by The Lincoln National Life Insurance Company.

11.     Defendant The Lincoln National Life Insurance Company is an insurance company doing business throughout the nation including doing business in the Commonwealth of Kentucky.

12.     Defendant The Lincoln National Life Insurance Company is registered with the Kentucky Department of Insurance but is not registered with the Kentucky Secretary of State.

13.     Upon information and belief, The Lincoln National Life Insurance Company is doing business as Lincoln Life Assurance Company of Boston in the Commonwealth of Kentucky.

14.     Upon information and belief, Lincoln Life Assurance Company of Boston is the unregistered assumed name of The Lincoln National Life Insurance Company.

15.     Upon information and belief, The Lincoln National Life Insurance Company and Lincoln Life Assurance Company of Boston are interrelated business entities which function as a single business for all intents and purposes relating to this litigation.

16.     Throughout the remainder of this Complaint, Lincoln Life Assurance Company of Boston and The Lincoln National Life Insurance Company are collectively denominated as "Lincoln."

17.     Defendant Lantech.com, LLC is a Kentucky limited liability company which is registered with the Kentucky Secretary of State and doing business in the Commonwealth of Kentucky under the registered assumed name of Lantech, Inc.

18.     Throughout the remainder of this Complaint, Defendant Lantech.com, LLC d/b/a Lantech, Inc. is denominated as "Lantech."

19.     Mr. Johnson was employed by Lantech from August 22, 1981 through July 30, 2017 as an engineer.

20.     Mr. Johnson was a full-time employee of Lantech for a sufficient period of time to qualify for eligibility under the terms of the company's long-term disability insurance policies with Lincoln.

21.     During Mr. Johnson's employment with Lantech, he participated in the previously described long-term disability insurance plan offered by his employer.

22.     At all times relevant to this action and the events described herein, the above-described long term disability insurance policies/benefit plans were administered by Lincoln and its predecessor Liberty Life Assurance Company of Boston.

23.     At all times relevant to this action and the events described herein, Lincoln was acting as the "plan administrator" for the above-described long-term disability insurance plans.

4

17.     On or about January 27, 2017, Mr. Johnson became disabled.

18.     Due to Mr. Johnson's disabling conditions, he was unable to perform the material and substantial duties of his own occupation.    These disabling conditions also rendered Mr. Johnson unable to perform the material and substantial duties of any occupation.   By virtue of Mr. Johnson's medical impairments and according to healthcare providers, Mr. Johnson is permanently and totally disabled.

19.     Shortly after Mr. Johnson became disabled, he was presented with a confidential Release Agreement by Lantech.

20.     Mr. Johnson subsequently agreed to the terms of this Release Agreement with Lantech.

21.     Consistent with Mr. Johnson becoming disabled, he applied for short-term and long-term disability benefits under the disability insurance plan administered by Lincoln.

22.     Pursuant to his application for disability benefits, Mr. Johnson was approved for short-term disability benefits and he was subsequently approved for long-term disability benefits under the long-term disability plan administered by Lincoln for Lantech on or about July 30, 2017.

23.     In keeping with the terms of the long-term disability plan administered by Lincoln for Lantech, Mr. Johnson applied for Social Security disability benefits and was subsequently found disabled by the Social Security Administration.

24.     Pursuant to the aforementioned ruling from the Social Security Administration, Plaintiff was ruled disabled on January 27, 2017 under the rules, regulations and statutues governing eligibility for Social Security disability benefits.

25.     Although Plaintiff was found disabled by both Lincoln and the Social Security Administration, Lincoln nonetheless withheld disability benefits from Mr. Johnson during the first

thirty-seven (37) weeks of eligibility under the erroneous theory that payment made by Lantech to Mr. Johnson under their confidential Release Agreement off-set the amounts which Lincoln was obligated to pay pursuant to approving Mr. Johnson to receive long-term disability under the disability insurance plan it administered for Lantech.

26.    Lincoln wrongfully withholding these payments from Mr. Johnson is contrary to the terms of Mr. Johnson's agreement with Lantech.

27.    The disclosure and characterization of the confidential Release Agreement to Lincoln by Lantech violates the terms of the aforementioned agreement.

28.    The withholding/off-setting of long-term disability payments owed to Mr. Johnson by Lantech's Plan Administrator violates the terms of the aforementioned agreement.

29.    The withholding/off-setting of long-term disability payments owed to Mr. Johnson by Lantech's Plan Administrator renders the agreement unconscionable, lacking in consideration and illusory.

30.    Lincoln wrongfully withheld the first thirty-seven (37) weeks of disability payments under the Plan from Mr. Johnson.

31.    The above-described wrongfully withheld payments total $90,500.00.

32.    Worse yet, although Lincoln had previously found Mr. Johnson disabled under the terms of the long-term disability plan administered by Lincoln for Lantech and Johnson was subsequently ruled disabled by the Social Security Administration under its more stringent regulations governing eligibility for disability benefits, Lincoln nevertheless ceased paying disability benefits to Johnson in December, 2018 based upon its conclusion that Johnson was "no longer disabled" because updated medical records documenting continuing disability were not available to Lincoln.

33.     Following the undersigned counsel contesting and appealing Lincoln's decision to discontinue paying long-term disability benefits to Mr. Johnson, Lincoln reinstated payment of long-term disability benefits to Johnson and reversed its prior decision on August 1, 2019.

34.     Approximately seven months later while the Covid-19 pandemic was beginning and medical offices were shutting down, Lincoln again discontinued paying long-term disability benefits to Mr. Johnson.

35.     Lincoln notified Mr. Johnson of its decision to once again discontinue paying long-term disability benefits to Mr. Johnson *via* correspondence mailed to him on March 12, 2020.

36.     A copy of Lincoln's correspondence terminating disability benefits to Mr. Johnson is attached hereto as Exhibit B.

37.     Paralleling the approach originally used by Lincoln to "justify" ceasing paying disability benefits to Johnson in December, 2018, Lincoln claimed its decision to terminate disability benefits was made pursuant it continuing "to evaluate whether or not he [Mr. Johnson] continued to meet the above definition of disability" set forth in Lantech's LTD Policy.

38.     Absent from the explanation offered by Lincoln for terminating disability benefits is any reference to actual medical evidence indicating an improvement in Mr. Johnson's health or functioning

39.     Instead citing a review of Mr. Johnson's file conducted by an unnamed doctor hired by Lincoln, the LTD insurer perfunctorily asserts that "[b]ased upon the medical documentation received in relation to the requirements of his occupation, Mr. Johnson no longer meets the definition of disability outlined above" in Lantech's LTD Policy.

40.     Contrary to this conclusory explanation, however, the unnamed doctor hired by Lincoln simply indicates that Mr. Johnson's file/records "do not include any recent physical

reports including updated imaging or physical exam findings" and speculates that "given this lack of critical information, no specific restrictions/limitations can be supported from a Physical Medicine and Rehabilitation perspective from the review period of 02/24/2020 onward and beyond."

41.     The rationale offered by Lincoln for terminating benefits which is set forth in its March 12, 2020 correspondence is neither logical nor consistent with ERISA.

42.     Worse yet, the rationale offered by Lincoln for terminating benefits which is set forth in its March 12, 2020 correspondence runs directly counter to the medical evidence from Mr. Johnson's treating physicians demonstrating his impairments precluding him from performing the material and substantial duties of any occupation.

43.     Still worse, the rationale offered by Lincoln for terminating benefits is directly contrary to the decision of the Social Security Administration indicating the medical evidence of record supports a finding of disability and inability to work.

44.     Since Mr. Johnson applied for Social Security disability benefits at the behest of Lincoln and the LTD insurer has subsequently relied upon the Social Security Administration's determination of eligibility for disability benefits to off-set long-term disability benefits it otherwise owed to Mr. Johnson, Lincoln cannot now render a disability decision running completely counter to the Social Security Administration's determination of disability for Mr. Johnson.

45.     Mr. Johnson's healthcare providers have never questioned or express any doubts regarding the permanency and totality of his disability.

Filed          22-CI-005754      11/03/2022      David L. Nicholson, Jefferson Circuit Clerk

46.     Lincoln's rationale for terminating disability benefits is arbitrary, capricious and against the weight of all medical evidence pertaining to Mr. Johnson's impairments and inability to work

47.     Contrary to Lincoln's decision terminating disability benefits, Mr. Johnson is still "disabled" within the terms set forth in Lantech's LTD Policy.

48.     Lincoln has intentionally and callously ignored the substantive medical proof provided to it by Plaintiff's treating physicians and distorted their statements in a manner allowing the Court to review *de novo* Mr. Johnson's medical history.

49.     There is no evidence in the administrative record that Mr. Johnson's medical condition has improved or could ever improve from the time he was last approved for benefits by Lincoln.

50.     Lincoln's actions in repetitiously reviewing and denying benefits to Mr. Johnson were arbitrary, capricious and erroneous.

51.     Lincoln's refusal to consider and address the combination of Mr. Johnson's impairments and their combined impact upon his functioning is a clear and purposeful error.

52.     Lincoln's decision to terminate disability benefits for Mr. Johnson was arbitrary and capricious, contrary to the objective medical evidence and assigned inappropriate weight to the generic conclusions of a hired record review doctor.

53.     The hired record review doctor was not identified by name and never examined Mr. Johnson.

54.     The hired record review doctor did not offer an opinion that Mr. Johnson was no longer disabled under the terms of Lantech's LTD Policy.

Filed          22-CI-005754      11/03/2022      David L. Nicholson, Jefferson Circuit Clerk

55.     The hired record review doctor did not offer an opinion that Mr. Johnson no longer had the limitations in functioning previously found by his treating physicians.

56.     The only opinion offered by the hired record review doctor was actually a generalization that the absence of information in the file which he/she reviewed for Lincoln would preclude him/her from finding specific restrictions/limitations beyond the review period. Moreover, if Lincoln had wanted to accurately assess Mr. Johnson's limitations in functioning, the LTD insurer could have easily had him attend a functional capacity medical examination performed upon him.

57.     At all times relevant to the events described in Plaintiff's Complaint, Lincoln was acting under a conflict of interest since it was responsible for both determining continuing eligibility for disability benefits and paying disability benefits to Mr. Johnson. Plaintiff is therefore entitled to a broader scope of discovery than is normally available.

58.     Due to Lincoln's actions against Plaintiff, Mr. Johnson is entitled to discovery exceeding standard ERISA protocol.

59.     Lincoln so callously and purposefully ignored the substantive proof documenting Mr. Johnson's disability and limitations in functioning that it cannot rely upon the arbitrary and capricious standard of review and his medical records should therefore be reviewed *de novo*.

60.     Plaintiff's Complaint is timely and not otherwise time-barred.

### COUNT ONE – Violations of ERISA

61.     Plaintiff restates and incorporates herein by reference the allegations contained in paragraphs 1 through 60.

62.     Pursuant to the ERISA statute, Mr. Johnson is entitled to reinstatement and repayment of unpaid long-term disability benefits under the plan.

10

Filed        22-CI-005754        11/03/2022        David L. Nicholson, Jefferson Circuit Clerk

63.     Lincoln wrongfully withheld disability benefits from Mr. Johnson due under Lantech's LTD Policy.

64.     Lincoln wrongfully withheld disability benefits from Mr. Johnson under the auspices of off-setting funds paid to him by Lantech pursuant to a confidential Release Agreement.

65.     The aforementioned funds were not subject to off-set under the terms of the confidential Release Agreement.

66.     The aforementioned funds were not subject to off-set under the terms of the Lantech's LTD Policy.

67.     Lincoln wrongfully withholding disability benefits from Mr. Johnson breaches the terms of the plan under the ERISA statute.

68.     As previously detailed herein, after Lincoln had resumed long- term disability benefits to Mr. Johnson, Lincoln subsequently wrongfully ceased paying long- term disability benefits to Mr. Johnson in March, 2020.

69.     Lincoln discontinuing benefits breaches the terms of the plan under the ERISA statute.

70.     Lincoln denying benefits breaches the terms of the plan under the ERISA statute.

71.     Lincoln's handling of Plaintiff's claim and appeal and discontinuing long- term disability benefits and denying long-term benefits to Plaintiff has been wrongful, reckless, arbitrary and capricious.

72.     Lincoln ceasing long-term disability benefits to Mr. Johnson is not supported by substantial evidence.  Moreover, Lincoln has never referenced any credible medical evidence or opinion affirmatively stating Mr. Johnson has the physical ability to resume working.

Filed        22-CI-005754        11/03/2022        David L. Nicholson, Jefferson Circuit Clerk

73.     Defendant discontinuing long-term benefits to Plaintiff is contrary to the objective medical evidence and opinions of Plaintiff's treating providers.

74.     Mr. Johnson is entitled to recover pre-judgment and post-judgment interest on all amounts owed to him for Defendants violations of ERISA as outlined herein.

**COUNT TWO – Lincoln's Breach of Contract**

75.     Plaintiff restates and incorporates herein by reference the allegations contained in paragraphs 1 through 74.

76.     As set forth herein, contrary to the terms of Plaintiff's contract with Defendant – in the form of the long term disability insurance policy -  Lincoln has discontinued payment of long-term benefits to Plaintiff.

77.     Defendant ceasing payments and subsequently failing to make factual findings regarding Plaintiff's ability to perform essential functions/duties of any occupation is a breach of the parties' contract and violates the terms of the plan.

78.     Defendant ceasing payments in contravention of the evidence of record establishing Mr. Johnson's continuing eligibility for benefits is a breach of the parties' contract and violates the terms of the plan.

**COUNT THREE – Lantech's Breach of Contract**

79.     Plaintiff restates and incorporates herein by reference the allegations contained in paragraphs 1 through 80.

80.     As set forth herein, Lantech did not adhere to the terms of the confidential Release Agreement which it entered into with Mr. Johnson.

81.     As a result of Lantech breaching its obligations and promises under the confidential Release Agreement, Mr. Johnson has been deprived of enjoyment of $90,500.00.

12

82.     Due to Lantech breaching the confidential Release Agreement and the damages which resulted therefrom, Mr. Johnson seeks compensation in the amount of $90,500.00 from Lantech unless those monies are returned to Mr. Johnson by Lantech's Plan Administrator/Lincoln.

### COUNT FOUR – Unjust Enrichment

83.     Plaintiff restates and incorporates herein by reference the allegations contained in paragraphs 1 through 82.

84.     As set forth herein, a benefit was conferred upon Lantech via Mr. Johnson entering into a confidential Release Agreement with his former employer.

85.     The aforementioned benefit was enjoyed by Lantech including Mr. Johnson releasing and not pursuing any actions against his former employer.

86.     The enjoyment of these benefits by Lantech was inequitable because Mr. Johnson was deprived of payment for these benefits due to Lantech's Plan Administrator off-setting payment of benefits otherwise owed to Mr. Johnson.

87.     In the alternative, a benefit was inequitably conferred upon Lincoln in retaining benefits otherwise owed to Mr. Johnson and its retention of these benefits is inequitable.

88.     To the extent such actions were coordinated between Lantech and Lincoln, the foregoing course of conduct would constitute fraud and/or fraud in the inducement and Plaintiff should accordingly be permitted broad latitude in discovery regarding the interactions between Lantech and Lincoln

### COUNT FIVE – Promissory Estoppel

89.     Plaintiff restates and incorporates herein by reference the allegations contained in paragraphs 1 through 88.

90.     Pursuant the confidential Release Agreement executed between Lantech and Mr. Johnson, Plaintiff was promised by Lantech that entering into the Release Agreement would not affect his entitlement to benefits payable to him.

91.     Contrary to this promise, Lantech's Plan Administrator/Lincoln used the Release Agreement to adversely affect payment of long-term disability benefits to Mr. Johnson.

92.     Mr. Johnson's reliance upon Lantech's promise as reflected in the Release Agreement was reasonable.

93.     In keeping with this reliance, Mr. Johnson was induced by Lantech to act and forebear in accordance with the terms of the confidential Release Agreement.

94.     Justice and equity require that Lantech and/or Lantech's Plan Administrator/Lincoln remedy this matter by reimbursing $90,500.00 in previously withheld/offset benefits to Mr. Johnson.

**WHEREFORE,** Plaintiff Richard Johnson respectfully demands judgment in his favor and for the following relief:

(A)     Trial by Jury of all claims and causes of action permitted;

(B)     Compensatory, consequential and incidental damages in a sum fairly reasonable to compensate Plaintiff for damages proven at trial;

(C)     For payment of disability benefits due to him as calculated from date which benefits were withheld and/or ceased until judgment awarded to him by the Court with interest to the full extent permitted by law;

(D)     For attorney fees and expenses that Plaintiff has incurred as a result of enforcing his contractual and ERISA rights;

14

(E)     Any and all other relief to which the Plaintiff may be entitled and justice or equity

        demands; and

(F)     Leave to freely amend in conformity with discovery of additional facts.

                              Respectfully submitted,

                              DORAN LAW OFFICE

                              /s/ Kevan M. Doran_____
                              Kevan M. Doran
                              KBA Bar No.  90631
                              DORAN LAW OFFICE
                              2950 Breckenridge Lane, Suite 12A
                              Louisville, Kentucky 40220
                              Phone: (502) 208-4971
                              Fax: (502) 618-0605
                              kdoran@thedoranlawoffice.com

15



Liberty Life Assurance Company of Boston

# GROUP DISABILITY INCOME POLICY

**Sponsor:**      Lantech, Inc.

**Policy Number:**  GF3-890-463163-01

**Effective Date:**  October 1, 2014

**Governing Jurisdiction** is Kentucky and subject to the laws of that State.

**Premiums** are due and payable monthly on the first day of each month.

**Policy Anniversaries** shall occur each October 1st beginning in 2015.

Liberty Life Assurance Company of Boston (hereinafter referred to as Liberty) agrees to pay benefits provided by this policy in accordance with its provisions.  This policy provides Long Term Disability coverage.

**PLEASE READ THIS POLICY CAREFULLY FOR FULL DETAILS.**

This policy is a legal contract and is issued in consideration of the Application of the Sponsor, a copy of which is attached, and of the payment of premiums by the Sponsor.

For purposes of this policy, the Sponsor acts on its own behalf or as the Covered Person's agent.  Under no circumstances will the Sponsor be deemed the agent of Liberty.

This policy is delivered in and governed by the laws of the governing jurisdiction and to the extent applicable by The Employee Retirement Income Security Act of 1974 (ERISA) and any subsequent amendments.

The following pages including any amendments, riders or endorsements are a part of this policy.

Signed at Liberty's Home Office, 175 Berkeley Street, Boston, Massachusetts, 02117

SECRETARY                                             PRESIDENT

**NON-PARTICIPATING**

FORM ADOP

Exhibit A



# TABLE OF CONTENTS

SECTION 1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . SCHEDULE OF BENEFITS

SECTION 2. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . DEFINITIONS

SECTION 3. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ELIGIBILITY AND EFFECTIVE DATES

SECTION 4. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . DISABILITY INCOME BENEFITS

SECTION 5. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . EXCLUSIONS

SECTION 6. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . TERMINATION PROVISIONS

SECTION 7. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . GENERAL PROVISIONS

SECTION 8. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PREMIUMS

SECTION 9. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . APPLICATION

# SECTION 1 - SCHEDULE OF BENEFITS

## ELIGIBILITY REQUIREMENTS FOR INSURANCE BENEFITS

**Minimum Hourly Requirement:**

Employees working a minimum of 40 regularly scheduled hours per week

**Long Term Disability Benefits:**

Class 1:        All full-time Employees

Note:    This policy does not cover the following Employees:  Temporary and seasonal Employees, Employees who are not legal residents working in the United States.

**Eligibility Waiting Period:**

1.      If the Covered Person is employed by the Sponsor on the policy effective date - 90 days of continuous, Active Employment

2.      If the Covered Person begins employment for the Sponsor after the policy effective date - 60 days of continuous, Active Employment

**Employee Contributions Required:**

No



## SECTION 1 - SCHEDULE OF BENEFITS
(Continued)

### LONG TERM DISABILITY COVERAGE

**Elimination Period:**

180 days.

**Amount of Insurance:**

60.00% of Basic Monthly Earnings not to exceed a Maximum Monthly Benefit of $8,000.00 less
Other Income Benefits and Other Income Earnings as outlined in Section 4.

**Maximum Basic Monthly Earnings on which the Benefit is Based: $13,333.33**

**Own Occupation Duration:**

36 Month Own Occupation

Filed          22-CI-005754      11/03/2022     David L. Nicholson, Jefferson Circuit Clerk

# SECTION 1 - SCHEDULE OF BENEFITS
## (Continued)

LONG TERM DISABILITY COVERAGE (Continued)

**Minimum Monthly Benefit:**

The Minimum Monthly Benefit is $100.00.

**Maximum Benefit Period:**

| Age at Disability | Maximum Benefit Period |
|---|---|
| Less than age 60 | Greater of SSNRA* or to age 65 (but not less than 5 years) |
| 60 | 60 months |
| 61 | 48 months |
| 62 | 42 months |
| 63 | 36 months |
| 64 | 30 months |
| 65 | 24 months |
| 66 | 21 months |
| 67 | 18 months |
| 68 | 15 months |
| 69 and over | 12 months |

\* SSNRA means the Social Security Normal Retirement Age as figured by the 1983 amendment to the Social Security Act and any subsequent amendments and provides:

| Year of Birth | Normal Retirement Age |
|---|---|
| Before 1938 | 65 |
| 1938 | 65 and 2 months |
| 1939 | 65 and 4 months |
| 1940 | 65 and 6 months |
| 1941 | 65 and 8 months |
| 1942 | 65 and 10 months |
| 1943-1954 | 66 |
| 1955 | 66 and 2 months |
| 1956 | 66 and 4 months |
| 1957 | 66 and 6 months |
| 1958 | 66 and 8 months |
| 1959 | 66 and 10 months |
| 1960 and after | 67 |

# SECTION 2 - DEFINITIONS

In this section Liberty defines some basic terms needed to understand this policy. The male pronoun whenever used in this policy includes the female.

"**Active Employment**" means the Employee must be actively at work for the Sponsor:

   1.   on a full-time basis and paid regular earnings;

   2.   for at least the minimum number of hours shown in the Schedule of Benefits; and either perform such work

      a.   at the Sponsor's usual place of business; or

      b.   at a location to which the Sponsor's business requires the Employee to travel.

An Employee will be considered actively at work if he was actually at work on the day immediately preceding:

   1.   a weekend (except where one or both of these days are scheduled work days);

   2.   holidays (except when the holiday is a scheduled work day);

   3.   paid vacations;

   4.   any non-scheduled work day;

   5.   an excused leave of absence (except medical leave for the Covered Person's own disabling condition and lay-off); and

   6.   an emergency leave of absence (except emergency medical leave for the Covered Person's own disabling condition).

"**Administrative Office**" means Liberty Life Assurance Company of Boston, 9 Riverside Road, Weston, MA 02493.

Form ADOP-DEF-1
Definitions

## SECTION 2 - DEFINITIONS
(Continued)

"Any Occupation" means any occupation that the Covered Person is or becomes reasonably fitted by training, education, experience, age, physical and mental capacity.

"Application" is the document designated in Section 9; it is attached to and is made a part of this policy.

"Appropriate Available Treatment" means care or services which are:

1. generally acknowledged by Physicians to cure, correct, limit, treat or manage the disabling condition;
2. accessible within the Covered Person's geographical region;
3. provided by a Physician who is licensed and qualified in a discipline suitable to treat the disabling Injury or Sickness;
4. in accordance with generally accepted medical standards of practice.

"Basic Monthly Earnings" means the Covered Person's monthly rate of earnings from the Sponsor in effect immediately prior to the date Disability or Partial Disability begins. However, such earnings will not include bonuses, commissions, overtime pay and extra compensation.

"Covered Person" means an Employee insured under this policy.

## SECTION 2 - DEFINITIONS
### (Continued)

"Disability" or "Disabled" means:

1. For persons other than pilots, co-pilots, and crewmembers of an aircraft:

    i.    that during the Elimination Period and the next 36 months of Disability the Covered Person, as a result of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Occupation; and

    ii.    thereafter, the Covered Person is unable to perform, with reasonable continuity, the Material and Substantial Duties of Any Occupation.

2. With respect to Covered Persons employed as pilots, co-pilots and crewmembers of an aircraft:

    "Disability" or "Disabled" means as a result of Injury or Sickness the Covered Person is unable to perform the Material and Substantial Duties of Any Occupation.

"Disability Benefits under a Retirement Plan" means money which:

1. is payable under a Retirement Plan due to Disability as defined in that plan; and

2. does not reduce the amount of money which would have been paid as retirement benefits at the normal retirement age under the plan if the Disability had not occurred. (If the payment does cause such a reduction, it will be deemed a Retirement Benefit as defined in this policy.)

## SECTION 2 - DEFINITIONS
(Continued)

**"Eligibility Date"** means the date an Employee becomes eligible for insurance under this policy. Eligibility Requirements are shown in the Schedule of Benefits.

**"Eligible Survivor"** means the Covered Person's spouse, if living, otherwise the Covered Person's children under age 25.

**"Eligibility Waiting Period"** means the continuous length of time an Employee must be in Active Employment in an eligible class to reach his Eligibility Date.

**"Elimination Period"** means a period of consecutive days of Disability or Partial Disability for which no benefit is payable. The Elimination Period is shown in the Schedule of Benefits and begins on the first day of Disability.

If the Covered Person returns to work for any thirty or fewer days during the Elimination Period and cannot continue, Liberty will count only those days the Covered Person is Disabled or Partially Disabled to satisfy the Elimination Period.

**"Employee"** means a person in Active Employment with the Sponsor.

**"Enrollment Form"** is the document completed by the Covered Person, if required, when enrolling for coverage. This form must be satisfactory to Liberty.

## SECTION 2 - DEFINITIONS
(Continued)

"**Extended Treatment Plan**" means continued care that is consistent with the American Psychiatric Association's standard principles of Treatment, and is in lieu of confinement in a Hospital or Institution. It must be approved in writing by a Physician.

"**Family and Medical Leave**" means a leave of absence for the birth, adoption or foster care of a child, or for the care of the Covered Person's child, spouse or parent or for the Covered Person's own serious health condition as those terms are defined by the Federal Family and Medical Leave Act of 1993 (FMLA) and any amendments, or by applicable state law.

"**Gross Monthly Benefit**" means the Covered Person's Monthly Benefit before any reduction for Other Income Benefits and Other Income Earnings.

"**Hospital**" or "**Institution**" means a facility licensed to provide Treatment for the condition causing the Covered Person's Disability.

## SECTION 2 - DEFINITIONS
(Continued)

"**Initial Enrollment Period**" means one of the following periods during which an Employee may first enroll for coverage under this policy:

1.  for an Employee who is eligible for insurance on the policy effective date, a period before the policy effective date set by the Sponsor and Liberty.

2.  for an Employee who becomes eligible for insurance after the policy effective date, the period which ends 31 days after his Eligibility Date.

"**Injury**" means bodily impairment resulting directly from an accident and independently of all other causes. For the purpose of determining benefits under this policy:

1.  any Disability which begins more than 60 days after an Injury will be considered a Sickness; and

2.  any Injury which occurs before the Covered Person is covered under this policy, but which accounts for a medical condition that arises while the Covered Person is covered under this policy will be treated as a Sickness.

"**Last Monthly Benefit**" means the gross Monthly Benefit payable to the Covered Person prior to his death without any reduction for earnings received from employment.

"**Material and Substantial Duties**" means responsibilities that are normally required to perform the Covered Person's Own Occupation, or any other occupation, and cannot be reasonably eliminated or modified.



## SECTION 2 - DEFINITIONS
### (Continued)

"Mental Illness" means a psychiatric or psychological condition classified as such in the most current edition of the Diagnostic and Statistical Manual of Mental Disorders (DSM) regardless of the underlying cause of the Mental Illness. If the DSM is discontinued, Liberty will use the replacement chosen or published by the American Psychiatric Association.

"Monthly Benefit" means the monthly amount payable by Liberty to the Disabled or Partially Disabled Covered Person.

"Non-Verifiable Symptoms" means the Covered Person's subjective complaints to a Physician which cannot be diagnosed using tests, procedures or clinical examinations typically accepted in the practice of medicine. Such symptoms may include, but are not limited to, dizziness, fatigue, headache, loss of energy, numbness, pain, ringing in the ear, and stiffness.

"Own Occupation" means the Covered Person's occupation that he was performing when his Disability or Partial Disability began. For the purposes of determining Disability under this policy, Liberty will consider the Covered Person's occupation as it is normally performed in the national economy.

Form ADOP-DEF-7                                                                   Definitions

## SECTION 2 - DEFINITIONS
### (Continued)

**"Partial Disability"** or **"Partially Disabled"** means the Covered Person, as a result of Injury or Sickness, is able to:

1. perform one or more, but not all, of the Material and Substantial Duties of his Own Occupation or Any Occupation on an Active Employment or a part-time basis; or

2. perform all of the Material and Substantial Duties of his Own Occupation or Any Occupation on a part-time basis; and

3. earn between 20.00% and 80.00% of his Basic Monthly Earnings.

**"Physician"** means a person who:

1. is licensed to practice medicine and is practicing within the terms of his license; or

2. is a licensed practitioner of the healing arts in a category specifically favored under the health insurance laws of the state where the Treatment is received and is practicing within the terms of his license.

It does not include a Covered Person, any family member or domestic partner.



## SECTION 2 – DEFINITIONS
### (Continued)

"Proof" means the evidence in support of a claim for benefits and includes, but is not limited to, the following:

1. a claim form completed and signed (or otherwise formally submitted) by the Covered Person claiming benefits;

2. an attending Physician's statement completed and signed (or otherwise formally submitted) by the Covered Person's attending Physician; and

3. the provision by the attending Physician of standard diagnosis, chart notes, lab findings, test results, x-rays and/or other forms of objective medical evidence in support of a claim for benefits.

Proof must be submitted in a form or format satisfactory to Liberty.

"Regular Attendance" means the Covered Person's personal visits to a Physician which are medically necessary according to generally accepted medical standards to effectively manage and treat the Covered Person's Disability or Partial Disability.

"Retirement Benefit under a Retirement Plan" means money which:

1. is payable under a Retirement Plan either in a lump sum or in the form of periodic payments;

2. does not represent contributions made by an Employee (payments which represent Employee contributions are deemed to be received over the Employee's expected remaining life regardless of when such payments are actually received); and

3. is payable upon:

   a. early or normal retirement; or
   b. Disability, if the payment does reduce the amount of money which would have been paid under the plan at the normal retirement age.

Filed                22-CI-005754      11/03/2022      David L. Nicholson, Jefferson Circuit Clerk

## SECTION 2 - DEFINITIONS
(Continued)

**"Retirement Plan"** means a plan which provides retirement benefits to Employees and which is not funded wholly by Employee contributions. The term shall not include a profit-sharing plan, informal salary continuation plan, registered retirement savings plan, stock ownership plan, 401(K) or a non-qualified plan of deferred compensation.

**"Schedule of Benefits"** means the section of this policy which shows, among other things, the Eligibility Requirements, Eligibility Waiting Period, Elimination Period, Amount of Insurance, Minimum Benefit, and Maximum Benefit Period.

**"Sickness"** means illness, disease, pregnancy or complications of pregnancy.

**"Sponsor"** means the entity to whom this policy is issued.

**"Sponsor's Retirement Plan"** is deemed to include any Retirement Plan:

1.   which is part of any Federal, State, Municipal or Association retirement system; or

2.   for which the Employee is eligible as a result of employment with the Sponsor.

**"Substance Abuse"** means alcohol and/or drug abuse, addiction or dependency.

**"Treatment"** means consulting, receiving care or services provided by or under the direction of a Physician including diagnostic measures, being prescribed drugs and/or medicines, whether the Covered Person chooses to take them or not, and taking drugs and/or medicines.

Filed                22-CI-005754      11/03/2022      David L. Nicholson, Jefferson Circuit Clerk



## SECTION 3 - ELIGIBILITY AND EFFECTIVE DATES

**Eligibility Requirements for Insurance Benefits**

The eligibility requirements for insurance benefits are shown in the Schedule of Benefits.

**Eligibility Date for Insurance Benefits**

An Employee in an eligible class will qualify for insurance on the later of:

1.  this policy's effective date; or

2.  the day after the Employee completes the Eligibility Waiting Period shown in the Schedule of
    Benefits.

## SECTION 3 - ELIGIBILITY AND EFFECTIVE DATES
(Continued)

**Effective Date of Insurance**

Insurance will be effective at 12:01 A.M. Standard Time in the governing jurisdiction on the day determined as follows, but only if the Employee's application or enrollment for insurance is made with Liberty through the Sponsor in a form or format satisfactory to Liberty.

An Employee will be insured on his Eligibility Date.

**Delayed Effective Date for Insurance**

The effective date of any initial, increased or additional insurance will be delayed for an individual if he is not in Active Employment because of Injury or Sickness. The initial, increased or additional insurance will begin on the date the individual returns to Active Employment.



## SECTION 3 - ELIGIBILITY AND EFFECTIVE DATES
(Continued)

**Family and Medical Leave**

An Employee's coverage may be continued under this policy for an approved family or medical leave of absence for up to 12 weeks following the date coverage would have terminated, subject to the following:

1. the authorized leave is in writing;

2. the required premium is paid;

3. the Covered Person's benefit level, or the amount of earnings upon which the Covered Person's benefit may be based, will be that in effect on the date before said leave begins; and

4. continuation of coverage will cease immediately if any one of the following events should occur:

    a. the Covered Person returns to work;
    b. this group insurance policy terminates;
    c. the Covered Person is no longer in an eligible class;
    d. nonpayment of premium when due by the Sponsor or the Covered Person;
    e. the Covered Person's employment terminates.

**Rehire Terms**

If a former Employee is re-hired by the Sponsor within 12 months of his termination date, all past periods of Active Employment with the Sponsor will be used in determining the re-hired Employee's Eligibility Date. If a former Employee is re-hired by the Sponsor more than 12 months after his termination date, he is considered to be a new Employee when determining his Eligibility Date.

## SECTION 3 - ELIGIBILITY AND EFFECTIVE DATES

(Continued)

**Leave of Absence**

The Sponsor may continue the Covered Person's coverage(s) by paying the required premiums, if the Covered Person is given a leave of absence

The Covered Person's coverage will not continue beyond a period of 30 days. In continuing such coverage under this provision, the Sponsor agrees to treat all Covered Persons equally.

**Lay-off**

The Sponsor may continue the Covered Person's coverage(s) by paying the required premiums, if the Covered Person is temporarily laid off

The Covered Person's coverage will not continue beyond a period of 30 days. In continuing such coverage under this provision, the Sponsor agrees to treat all Covered Persons equally.

## SECTION 3 - ELIGIBILITY AND EFFECTIVE DATES
(Continued)

**Transfer Provision**

In order to prevent loss of coverage for an individual because of transfer of insurance carriers, this policy will provide coverage for certain individuals as follows:

**Failure to be In Active Employment Due to Injury or Sickness:**

Subject to premium payments, this policy will cover individuals who:

1. at the time of transfer are covered under the prior carrier's policy; and

2. are not in Active Employment due to Injury or Sickness on the effective date of this policy.

Benefits will be determined based on the lesser of:

1. the amount of the Disability benefit that would have been payable under the prior policy and subject to any applicable policy limitations; or

2. the amount of Disability benefits payable under this policy. If benefits are payable under the prior policy for the Disability, no benefits are payable under this policy.

**Disability Due to a Pre-Existing Condition**

If an individual was insured under the prior carrier's policy at the time of transfer and was in Active Employment and insured under this policy on its effective date, benefits may be payable for a Disability due to a Pre-Existing Condition.

If the individual can satisfy this policy's Pre-Existing Condition Exclusion, the benefit will be determined according to this policy.

If the individual cannot satisfy this policy's Pre-Existing Condition Exclusion, then:

1. Liberty will apply the Pre-Existing Condition Exclusion of the prior carrier's policy and;

2. if the individual would have satisfied the prior carrier's pre-existing condition exclusion, giving consideration towards continuous time coverage under this policy; and the prior carrier's policy, the benefit will be determined according to this policy. However, the Maximum Monthly Benefit amount payable under this policy shall not exceed the maximum monthly benefit payable under the prior carrier's policy.

No benefit will be paid if the individual cannot satisfy the Pre-Existing Condition Exclusions of either policy.

## SECTION 4 - DISABILITY INCOME BENEFITS

**LONG TERM DISABILITY COVERAGE**

**Disability Benefit**

When Liberty receives Proof that a Covered Person is Disabled due to Injury or Sickness and requires the Regular Attendance of a Physician, Liberty will pay the Covered Person a Monthly Benefit after the end of the Elimination Period, subject to any other provisions of this policy. The benefit will be paid for the period of Disability if the Covered Person gives to Liberty Proof of continued:

1. Disability;

2. Regular Attendance of a Physician; and

3. Appropriate Available Treatment.

The Proof must be given upon Liberty's request and at the Covered Person's expense. In determining whether the Covered Person is Disabled, Liberty will not consider employment factors including, but not limited to, interpersonal conflict in the workplace, recession, job obsolescence, paycuts, job sharing and loss of a professional or occupational license or certification.

For purposes of determining Disability, the Injury must occur and Disability must begin while the Employee is insured for this coverage.

The Monthly Benefit will not:

1. exceed the Covered Person's Amount of Insurance; or

2. be paid for longer than the Maximum Benefit Period.

The Amount of Insurance and the Maximum Benefit Period are shown in the Schedule of Benefits.

**Amount of Disability Monthly Benefit**

To figure the amount of Monthly Benefit:

1. Take the lesser of:

    a. the Covered Person's Basic Monthly Earnings multiplied by the benefit percentage shown in the Schedule of Benefits; or

    b. the Maximum Monthly Benefit shown in the Schedule of Benefits; and then

2. Deduct Other Income Benefits and Other Income Earnings, (shown in the Other Income Benefits and Other Income Earnings provision of this policy), from this amount.

The Monthly Benefit payable will not be less than the Minimum Monthly Benefit shown in the Schedule of Benefits. However, if an overpayment is due to Liberty, the Minimum Monthly Benefit otherwise payable under this provision will be applied toward satisfying the overpayment.



## SECTION 4 - DISABILITY INCOME BENEFITS
(Continued)

### LONG TERM DISABILITY COVERAGE (Continued)

**Partial Disability**

When Liberty receives Proof that a Covered Person is Partially Disabled and has experienced a loss of earnings due to Injury or Sickness and requires the Regular Attendance of a Physician, he may be eligible to receive a Monthly Benefit, subject to any other provisions of this policy. To be eligible to receive Partial Disability benefits, the Covered Person may be employed in his Own Occupation or another occupation, must satisfy the Elimination Period and must be earning between 20.00% and 80.00% of his Basic Monthly Earnings.

A Monthly Benefit will be paid for the period of Partial Disability if the Covered Person gives to Liberty Proof of continued:

1. Partial Disability;

2. Regular Attendance of a Physician; and

3. Appropriate Available Treatment.

The Proof must be given upon Liberty's request and at the Covered Person's expense. In determining whether the Covered Person is Partially Disabled, Liberty will not consider employment factors including, but not limited to, interpersonal conflict in the workplace, recession, job obsolescence, paycuts, job sharing and loss of a professional or occupational license or certification.

For purposes of determining Partial Disability, the Injury must occur and Partial Disability must begin while the Employee is insured for this coverage.

### Loss of Earnings Monthly Calculation with Work Incentive Benefit

For the first 24 Months, the work incentive benefit will be an amount equal to the Covered Person's Basic Monthly Earnings multiplied by the benefit percentage shown in the Schedule of Benefits, without any reductions from earnings. The work incentive benefit will only be reduced, if the Monthly Benefit payable plus any earnings exceed 100% of the Covered Person's Basic Monthly Earnings. If the combined total is more, the Monthly Benefit will be reduced by the excess amount so that the Monthly Benefit plus the Covered Person's earnings does not exceed 100% of his Basic Monthly Earnings.

Thereafter, the Monthly Benefit will be calculated as follows:

1. The Covered Person's Basic Monthly Earnings minus the Covered Person's earnings received while he is Partially Disabled. This figure represents the amount of lost earnings.

2. Multiply the amount of lost earnings by 75%; and then

3. deduct Other Income Benefits (shown in the Other Income Benefits and Other Income Earnings provision of this policy) from this amount.

The Monthly Benefit payable will not be less than the Minimum Monthly Benefit shown in the Schedule of Benefits. However, if an overpayment is due to Liberty, the Minimum Monthly Benefit otherwise payable under this provision will be applied toward satisfying the overpayment.

Form ADOP-LTD-4

Long Term Partial Disability with Work Incentive
Loss of Earnings

## SECTION 4 - DISABILITY INCOME BENEFITS
(Continued)

LONG TERM DISABILITY COVERAGE (Continued)

Mental Illness and/or Substance Abuse and/or Non-Verifiable Symptoms Limitation

The benefit for Disability due to Mental Illness and/or Substance Abuse and/or Non-Verifiable Symptoms will not exceed a combined period of 24 months of Monthly Benefit payments while the Covered Person is insured under this policy.

If the Covered Person is in a Hospital or Institution for Mental Illness and/or Substance Abuse at the end of the combined period of 24 months, the Monthly Benefit will be paid during the confinement.

If the Covered Person is not confined in a Hospital or Institution for Mental Illness and/or Substance Abuse, but is fully participating in an Extended Treatment Plan for the condition that caused Disability, the Monthly Benefit will be payable to a Covered Person for up to a combined period of 36 months.

In no event will the Monthly Benefit be payable beyond the Maximum Benefit Period shown in the Schedule of Benefits.

## SECTION 4 – DISABILITY INCOME BENEFITS
(Continued)

### LONG TERM DISABILITY COVERAGE (Continued)

#### Rehabilitation Incentive Benefit

Liberty will pay an increased Monthly Benefit while a Covered Person is fully participating in a Rehabilitation Program. Liberty must first approve the Rehabilitation Program in writing before a Covered Person can be considered for this benefit. If Liberty does not approve a Rehabilitation Program, the regular Disability benefit will be payable provided the Covered Person is Disabled under the terms of this policy. To be eligible for a Rehabilitation Incentive Benefit, the Covered Person must:

1. be Disabled and receiving benefits under this policy; and

2. be fully participating in a Rehabilitation Program approved by Liberty.

#### Increased Monthly Benefit

If the Covered Person is eligible for a Rehabilitation Incentive Benefit, the benefit percentage shown in the Schedule of Benefits, will be increased by 10.00%. The increased benefit will begin on the first day of the month after Liberty receives written Proof of the Covered Person's full participation in the Rehabilitation Program.

#### Disability Benefits Termination

If the Covered Person, at any time, declines to fully participate in an approved Rehabilitation Program recommended by Liberty, his Disability benefits will terminate on the first day of the month following the Covered Person's declination to fully participate in the approved Rehabilitation Program. If Liberty recommends rehabilitation, no benefit will be paid from the date recommendation is made until Liberty receives the Covered Person's written agreement to fully participate in the Rehabilitation Program.

#### Discontinuation of the Rehabilitation Incentive Benefit

The Rehabilitation Incentive Benefit will cease:

1. when the Covered Person is no longer fully participating in a Rehabilitation Program approved by Liberty;

2. in accordance with the provision[s] entitled "Discontinuation of the Long Term Disability Benefit"; or

3. when the Rehabilitation Program ends.

## SECTION 4 - DISABILITY INCOME BENEFITS
### (Continued)

### LONG TERM DISABILITY COVERAGE (Continued)

### Rehabilitation Incentive Benefit (Continued)

For the purpose of this provision, **"Rehabilitation Program"** means a comprehensive individually tailored, goal oriented program to return a Disabled Covered Person to gainful employment. The services offered may include, but are not limited to, the following:

1. physical therapy;
2. occupational therapy;
3. work hardening programs;
4. functional capacity evaluations;
5. psychological and vocational counseling;
6. rehabilitative employment; and
7. vocational rehabilitation services.

## SECTION 4 - DISABILITY INCOME BENEFITS
(Continued)

LONG TERM DISABILITY COVERAGE (Continued)

**Three Month Survivor Benefit**

Liberty will pay a lump sum benefit to the Eligible Survivor when Proof is received that a Covered Person died:

1. after Disability had continued for 180 or more consecutive days; and

2. while receiving a Monthly Benefit.

The lump sum benefit will be an amount equal to three times the Covered Person's Last Monthly Benefit.

If the survivor benefit is payable to the Covered Person's children, payment will be made in equal shares to the children, including step children and legally adopted children. However, if any of said children are minors or incapacitated, payment will be made on their behalf to the court appointed guardian of the children's property. This payment will be valid and effective against all claims by others representing or claiming to represent the children.

If there is no Eligible Survivor, the benefit is payable to the estate.

If an overpayment is due to Liberty at the time of a Covered Person's death, the benefit payable under this provision will be applied toward satisfying the overpayment.

## SECTION 4 - DISABILITY INCOME BENEFITS
(Continued)

### LONG TERM DISABILITY COVERAGE (Continued)

#### Workplace Modification Benefit

If a Covered Person is Disabled or Partially Disabled and receiving a benefit from Liberty, a benefit may be payable to the Sponsor as part of the Covered Person's benefit for modifications to the workplace to accommodate the Covered Person's return to work or to assist the Covered Person in remaining at work.

Liberty will reimburse the Sponsor for up to 100% of reasonable costs the Sponsor incurs for the modification, up to the greater of:

1. $2,000.00; or

2. the equivalent of 2 months of the Covered Person's Monthly Benefit.

To qualify for this benefit:

1. the Disability or Partial Disability must prevent the Covered Person from performing some or all of the Material and Substantial Duties of his occupation; and

2. any proposed modifications must be approved in writing and signed by the Covered Person, the Sponsor and Liberty; and

3. the Sponsor must agree to make the modifications to the workplace to reasonably accommodate the Covered Person's return to work or to assist the Covered Person in remaining at work.

The Sponsor's costs for the approved modifications will be reimbursed after:

1. the proposed modifications have been made; and

2. written proof of the expenses incurred by the Sponsor has been provided to Liberty; and

3. Liberty has received proof that the Covered Person has returned to and/or remains at work.



## SECTION 4 - DISABILITY INCOME BENEFITS
### (Continued)

**LONG TERM DISABILITY COVERAGE** (Continued)

**Other Income Benefits and Other Income Earnings**

**Other Income Benefits** means:

1. The amount for which the Covered Person is eligible under:

    a. Workers' or Workmen's Compensation Laws;
    b. Occupational Disease Law;
    c. Title 46, United States Code Section 688 (The Jones Act);
    d. any work-loss provision in mandatory "No-Fault" auto insurance;
    e. Railroad Retirement Act;
    f. any governmental compulsory benefit act or law; or
    g. any other act or law of like intent.

2. The amount of any Disability benefits which the Covered Person is eligible to receive under:
    a. any other group insurance plan of the Sponsor;
    b. any governmental retirement system as a result of his employment with the Sponsor ; or
    c. any individual insurance plan where the premium is wholly or partially paid by the Sponsor. However, Liberty will only reduce the Monthly Benefit if the Covered Person's Monthly Benefit under this policy, plus any benefits that the Covered Person is eligible to receive under such individual insurance plan exceed 100% of the Covered Person's Basic Monthly Earnings. If this sum exceeds 100% of Basic Monthly Earnings, the Covered Person's Monthly Benefit under this policy will be reduced by such excess amount.

3. The amount of benefits the Covered Person receives under the Sponsor's Retirement Plan as follows:

    a. the amount of any Disability Benefits under a Retirement Plan, or Retirement Benefits under a Retirement Plan the Covered Person voluntarily elects to receive as retirement payment under the Sponsor's Retirement Plan; and
    b. the amount the Covered Person receives as retirement payments when he reaches the later of age 62, or normal retirement age as defined in the Sponsor's plan.

4. The amount of Disability and/or Retirement Benefits under the United States Social Security Act, the Canada Pension Plan, the Quebec Pension Plan, or any similar plan or act, which:

    a. the Covered Person receives or is eligible to receive; and
    b. his spouse, child or children receives or are eligible to receive because of his Disability; or
    c. his spouse, child or children receives or are eligible to receive because of his eligibility for retirement benefits.

5. Any amount the Covered Person receives from any unemployment benefits.

Form ADOP-LTD-22
Filed  22-CI-005754  11/03/2022

**Long Term Disability Primary and Family Integration**
**Other Income Benefits and Other Income Earnings**
David L. Nicholson, Jefferson Circuit Clerk

## SECTION 4 - DISABILITY INCOME BENEFITS
(Continued)

**LONG TERM DISABILITY COVERAGE** (Continued)

**Other Income Benefits and Other Income Earnings** (Continued)

**Other Income Earnings** means:

1.  the amount of earnings the Covered Person earns or receives from any form of employment including severance; and

2.  any amount the Covered Person receives from any formal or informal sick leave or salary continuation plan(s).

Other Income Benefits, except retirement benefits, must be payable as a result of the same Disability for which Liberty pays a benefit. The sum of Other Income Benefits and Other Income Earnings will be deducted in accordance with the provisions of this policy.



## SECTION 4 - DISABILITY INCOME BENEFITS
(Continued)

### LONG TERM DISABILITY COVERAGE (Continued)

**Estimation of Benefits**

Liberty will reduce the Covered Person's Disability or Partial Disability benefits by the amount of Other Income Benefits that we estimate are payable to the Covered Person and his dependents.

The Covered Person's Disability benefit will not be reduced by the estimated amount of Other Income Benefits if the Covered Person:

1.  provides satisfactory proof of application for Other Income Benefits;

2.  signs a reimbursement agreement under which, in part, the Covered Person agrees to repay Liberty for any overpayment resulting from the award or receipt of Other Income Benefits;

3.  if applicable, provides satisfactory proof that all appeals for Other Income Benefits have been made on a timely basis to the highest administrative level unless Liberty determines that further appeals are not likely to succeed; and

4.  if applicable, submits satisfactory proof that Other Income Benefits have been denied at the highest administrative level unless Liberty determines that further appeals are not likely to succeed.

Liberty will not estimate or reduce for any benefits under the Sponsor's pension or retirement benefit plan according to applicable law, until the Covered Person actually receives them.

In the event that Liberty overestimates the amount payable to the Covered Person from any plans referred to in the Other Income Benefits and Other Income Earnings provision of this policy, Liberty will reimburse the Covered Person for such amount upon receipt of written proof of the amount of Other Income Benefits awarded (whether by compromise, settlement, award or judgement) or denied (after appeal through the highest administrative level).

**Social Security Assistance**

Liberty may help a Covered Person in applying for Social Security Disability Income Benefits. In order to be eligible for assistance the Covered Person must be receiving a Monthly Benefit from Liberty. Such assistance will be provided only if Liberty determines that assistance would be beneficial.

## SECTION 4 - DISABILITY INCOME BENEFITS
### (Continued)

### LONG TERM DISABILITY COVERAGE (Continued)

**Lump Sum Payments**

Other Income Benefits from a compromise, settlement, award or judgement which are paid to the Covered Person in a lump sum and are meant to compensate the Covered Person for any one or more of the following:

1.  loss of past or future wages;
2.  impaired earnings capacity;
3.  lessened ability to compete in the open labor market;
4.  any degree of permanent impairment; and
5.  any degree of loss of bodily function or capacity;

will be prorated on a monthly basis as follows:

1.  over the period of time such benefits would have been paid if not in a lump sum; or

2.  if such period of time cannot be determined, the lesser of:

    a.  the remainder of the Maximum Benefit Period; or
    b.  5 years.

**Cost of Living Freeze**

After the first deduction for each of the Other Income Benefits, the Monthly Benefit will not be further reduced due to any cost of living increases payable under the Other Income Benefits and Other Income Earnings provision of this policy. This provision does not apply to increases received from any form of employment.

**Prorated Benefits**

For any period for which a Long Term Disability benefit is payable that does not extend through a full month, the benefit will be paid on a prorated basis. The rate will be 1/30th for each day for such period of Disability.

### Discontinuation of the Long Term Disability Benefit

The Monthly Benefit will cease on the earliest of:

1.  the date the Covered Person fails to provide Proof of continued Disability or Partial Disability and Regular Attendance of a Physician;

2.  the date the Covered Person fails to cooperate in the administration of the claim. Such cooperation includes, but is not limited to, providing any information or documents needed to determine whether benefits are payable or the actual benefit amount due.



## SECTION 4 - DISABILITY INCOME BENEFITS
(Continued)

LONG TERM DISABILITY COVERAGE (Continued)

Discontinuation of the Long Term Disability Benefit (Continued)

The Monthly Benefit will cease on the earliest of: (Continued)

3.  the date the Covered Person refuses to be examined or evaluated at reasonable intervals;

4.  the date the Covered Person refuses to receive Appropriate Available Treatment;

5.  the date the Covered Person refuses a job with the Sponsor where workplace modifications or accommodations were made to allow the Covered Person to perform the Material and Substantial Duties of the job;

6.  the date the Covered Person is able to work in his Own Occupation on a part-time basis, but chooses not to;

7.  on the first day of the month following the date the Covered Person refuses to fully participate in a Rehabilitation Program recommended by Liberty according to the individually written Rehabilitation Program;

8.  the date the Covered Person's current Partial Disability earnings exceed 80.00% of his Basic Monthly Earnings;

    Because the Covered Person's current earnings may fluctuate, Liberty will average earnings over three consecutive months rather than immediately terminating his benefit once 80.00% of Basic Monthly Earnings has been exceeded.

9.  the date the Covered Person is no longer Disabled according to this policy;

10. the end of the Maximum Benefit Period; or

11. the date the Covered Person dies.

## SECTION 4 – DISABILITY INCOME BENEFITS
(Continued)

LONG-TERM DISABILITY COVERAGE (Continued)

**Successive Periods of Disability**

With respect to this policy, "**Successive Periods of Disability**" means a Disability which is related or due to the same cause(s) as a prior Disability for which a Monthly Benefit was payable.

A Successive Period of Disability will be treated as part of the prior Disability if, after receiving Disability benefits under this policy, a Covered Person:

1. returns to his Own Occupation on an Active Employment basis for less than six continuous months; and

2. performs all the Material and Substantial Duties of his Own Occupation.

To qualify for a Successive Periods of Disability benefit, the Covered Person must experience more than a 20% loss of Basic Monthly Earnings.

Benefit payments will be subject to the terms of this policy for the prior Disability.

If a Covered Person returns to his Own Occupation on an Active Employment basis for six continuous months or more, the Successive Period of Disability will be treated as a new period of Disability.  The Covered Person must complete another Elimination Period.

If a Covered Person becomes eligible for coverage under any other group long term disability coverage, this Successive Period of Disability provision will cease to apply to that Covered Person.



## SECTION 5 - EXCLUSIONS

### GENERAL EXCLUSIONS

This policy will not cover any Disability due to:

1. war, declared or undeclared, or any act of war;

2. intentionally self-inflicted injuries, while sane or insane;

3. active Participation in a Riot;

4. the committing of or attempting to commit a felony or misdemeanor;

5. cosmetic surgery unless such surgery is in connection with an Injury or Sickness sustained while the individual is a Covered Person; or

6. a gender change, including, but not limited to, any operation, drug therapy or any other procedure related to a gender change.

No benefit will be payable during any period of incarceration.

With respect to this provision, **Participation** shall include promoting, inciting, conspiring to promote or incite, aiding, abetting, and all forms of taking part in, but shall not include actions taken in defense of public or private property, or actions taken in defense of the Covered Person, if such actions of defense are not taken against persons seeking to maintain or restore law and order including, but not limited to police officers and fire fighters.

With respect to this provision, **Riot** shall include all forms of public violence, disorder or disturbance of the public peace, by three or more persons assembled together, whether or not acting with a common intent and whether or not damage to persons or property or unlawful act or acts is the intent or the consequence of such disorder.

## SECTION 5 - EXCLUSIONS
(Continued)

**LONG TERM DISABILITY COVERAGE**

**Pre-Existing Condition Exclusion**

This policy will not cover any Disability or Partial Disability:

1.  which is caused or contributed to by, or results from, a Pre-Existing Condition; and

2.  which begins in the first 12 months immediately after the Covered Person's effective date of coverage.

"Pre-Existing Condition" means a condition resulting from an Injury or Sickness for which the Covered Person is diagnosed or received Treatment within three months prior to the Covered Person's effective date of coverage.

Form ADOP-EXC-5

Long Term Disability
3-12 Pre-Existing Exclusion
Filed 22-CI-005754 11/03/2022 David L. Nicholson, Jefferson Circuit Clerk

## SECTION 6 - TERMINATION PROVISIONS

**Termination of a Covered Person's Insurance**

A Covered Person will cease to be insured on the earliest of the following dates:

1.  the date this policy terminates, but without prejudice to any claim originating prior to the time of termination;

2.  the date the Covered Person is no longer in an eligible class;

3.  the date the Covered Person's class is no longer included for insurance;

4.  the date employment terminates.  Cessation of Active Employment will be deemed termination of employment, except the insurance will be continued for an Employee absent due to Disability during:

    a.  the Elimination Period; and
    b.  any period during which premium is being waived.

5.  the date the Covered Person ceases active work due to a labor dispute, including any strike, work slowdown, or lockout.

Liberty reserves the right to review and terminate all classes insured under this policy if any class(es) cease(s) to be covered.

## SECTION 6 - TERMINATION PROVISIONS
### (Continued)

**Policy Termination**

1. Termination of this policy under any conditions will not prejudice any claim which occurs while this policy is in force.

2. If the Sponsor fails to pay any premium within the grace period, this policy will terminate at 12:00 midnight Standard Time on the last day of the grace period. The Sponsor may terminate this policy by advance written notice delivered to Liberty at least 31 days prior to the termination date. This policy will not terminate during any period for which premium has been paid. The Sponsor will be liable to Liberty for all premiums due and unpaid for the full period for which this policy is in force.

3. Liberty may terminate this policy on any premium due date by giving written notice to the Sponsor at least 31 days in advance if:

   a. the number of Employees insured is fewer than 10; or

   b. less than 100.00% of all the Employees eligible for any non-contributory insurance are insured for it; or

   c. the Sponsor fails:

      i. to furnish promptly any information which Liberty may reasonably require; or
      ii. to perform any other obligations pertaining to this policy.

4. Liberty may terminate this policy or any coverage(s) afforded hereunder and for any class of covered Employees on any premium due date after it has been in force for 12 months. Liberty will provide written notice of such termination to the Sponsor at least 31 days before the termination is effective.

5. Termination may take effect on an earlier date if agreed to by the Sponsor and Liberty.



## SECTION 7 - GENERAL PROVISIONS

**Assignment**

No assignment of any present or future right or benefit under this policy will be allowed.

**Complete Contract - Policy Changes**

1. This policy is the entire contract. It consists of:

   a. all of the pages; and
   b. the attached signed Application of the Sponsor.

2. This policy may be changed in whole or in part. Only an officer of Liberty can approve a change. The approval must be in writing and endorsed on or attached to this policy.

3. No other person, including an agent, may change this policy or waive any part of it.

**Conformity with State Statutes**

Any provision of this policy which, on its effective date, is in conflict with the statutes of the governing jurisdiction of this policy is hereby amended to conform to the minimum requirements of such statute.

**Employee's Certificate**

Liberty will provide a Certificate to the Sponsor for delivery to Covered Persons. It will state:

1. the name of the insurance company and the policy number;
2. a description of the insurance provided;
3. the method used to determine the amount of benefits;
4. to whom benefits are payable;
5. limitations or reductions that may apply;
6. the circumstances under which insurance terminates; and
7. the rights of the Covered Person upon termination of this policy.

If the terms of a Certificate and this policy differ, this policy will govern.

**Examination**

Liberty, at its own expense, may have the right and opportunity to have a Covered Person, whose Injury or Sickness is the basis of a claim, examined or evaluated at reasonable intervals deemed necessary by Liberty. This right may be used as often as reasonably required.

## SECTION 7 - GENERAL PROVISIONS
(Continued)

**Furnishing of Information - Access to Records**

1. The Sponsor will furnish at regular intervals to Liberty:

   a. information relative to Employees:

      i.   who qualify to become insured;
      ii.  whose amounts of insurance change; and/or
      iii. whose insurance terminates.

   b. any other information about this policy that may be reasonably required.

   The Sponsor's records which, in the opinion of Liberty, have a bearing on the insurance will be opened for inspection at any reasonable time.

2. Clerical error or omission will not:

   a. deprive an Employee of insurance;
   b. affect an Employee's Amount of Insurance; or
   c. effect or continue an Employee's insurance which otherwise would not be in force.

**Interpretation of the Policy**

Liberty shall possess the authority, in its sole discretion, to construe the terms of this policy and to determine benefit eligibility hereunder. Liberty's decisions regarding construction of the terms of this policy and benefit eligibility shall be conclusive and binding.

**Incontestability**

The validity of this policy shall not be contested, except for non-payment of premiums, after it has been in force for two years from the date of issue. The validity of this policy shall not be contested on the basis of a statement made relating to insurability by any person covered under this policy after such insurance has been in force for two years during such person's lifetime, and shall not be contested unless the statement is contained in a written instrument signed by the person making such statement.

**Legal Proceedings**

A claimant or the claimant's authorized representative cannot start any legal action:

1. until 60 days after Proof of claim has been given; or

2. more than three years after the time Proof of claim is required.



## SECTION 7 - GENERAL PROVISIONS
(Continued)

### Misstatement of Age

If a Covered Person's age has been misstated, an equitable adjustment will be made in the premium. If the amount of the benefit is dependent upon an Employee's age, the amount of the benefit will be the amount an Employee would have been entitled to if his correct age were known.

A refund of premium will not be made for a period more than 12 months before the date Liberty is advised of the error.

### Notice and Proof of Claim

1. **Notice**

   a. Notice of claim must be given to Liberty within 30 days of the date of the loss on which the claim is based. If that is not possible, Liberty must be notified as soon as it is reasonably possible to do so. Such notice of claim must be received in a form or format satisfactory to Liberty.

   b. When written notice of claim is applicable and has been received by Liberty, the Covered Person will be sent claim forms. If the forms are not received within 15 days after written notice of claim is sent, the Covered Person can send to Liberty written Proof of claim without waiting for the forms.

2. **Proof**

   a. Satisfactory Proof of loss must be given to Liberty no later than 90 days after the end of the Elimination Period.

   b. Failure to furnish such Proof within such time shall not invalidate or reduce any claim if it was not reasonably possible to furnish such Proof within such time. Such Proof must be furnished as soon as reasonably possible, and in no event, except in the absence of legal capacity of the claimant, later than one year from the time Proof is otherwise required.

   c. Proof of continued loss, continued Disability or Partial Disability, when applicable, and Regular Attendance of a Physician must be given to Liberty within 30 days of the request for such Proof.

Liberty reserves the right to determine if the Covered Person's Proof of loss is satisfactory.

### Payment of Claims

The benefit is payable to the Covered Person. But, if a benefit is payable to a Covered Person's estate, a Covered Person who is a minor, or who is not competent, Liberty has the right to pay up to $1,000 to any of the Covered Person's relatives or any other person whom Liberty considers entitled thereto by reason of having incurred expense for the maintenance, medical attendance or burial of the Covered Person. If Liberty in good faith pays the benefit in such a manner, any such payment shall fulfill Liberty's responsibility for the amount paid.

## SECTION 7 - GENERAL PROVISIONS
(Continued)

**Right of Recovery**

Liberty has the right to recover any overpayment of benefits caused by, but not limited to, the following:

1. fraud;
2. any error made by Liberty in processing a claim; or
3. the Covered Person's receipt of any Other Income Benefits.

Liberty may recover an overpayment by, but not limited to, the following:

1. requesting a lump sum payment of the overpaid amount;
2. reducing any benefits payable under this policy;
3. taking any appropriate collection activity available including any legal action needed; and
4. placing a lien, if not prohibited by law, in the amount of the overpayment on the proceeds of any Other Income Benefits, whether on a periodic or lump sum basis.

It is required that full reimbursement be made to Liberty.

**Statements**

In the absence of fraud, all statements made in any application are considered representations and not warranties (absolute guarantees). No representation by:

1. the Sponsor in applying for this policy will make it void unless the representation is contained in the signed Application; or

2. any Employee in enrolling for insurance under this policy will be used to reduce or deny a claim unless a copy of the Enrollment Form, signed by the Employee if required, is or has been given to the Employee.

**Subrogation and Reimbursement**

When a Covered Person's Injury or Sickness appears to be someone else's fault, benefits otherwise payable under this policy for loss of time as a result of that Injury or Sickness will not be paid unless the Covered Person or his legal representative agree(s):

1. to repay Liberty for such benefits to the extent they are for losses for which compensation is paid to the Covered Person by or on behalf of the person at fault;

2. to allow Liberty a lien on such compensation and to hold such compensation in trust for Liberty; and

3. to execute and give to Liberty any instruments needed to secure the rights under 1. and 2. above.

Further, when Liberty has paid benefits to or on behalf of the injured Covered Person, Liberty will be subrogated to all rights of recovery that the Covered Person has against the person at fault. These subrogation rights will extend only to recovery of the amount Liberty has paid. The Covered Person must execute and deliver any instruments needed and do whatever else is necessary to secure those rights to Liberty.



## SECTION 7 - GENERAL PROVISIONS
(Continued)

Workers' Compensation

This policy and the coverages provided are not in lieu of, nor will they affect any requirements for coverage under any Workers' Compensation Law or other similar law.

## SECTION 8 - PREMIUMS

**Premium Rates**

Liberty has set the premiums that apply to the coverage(s) provided under this policy. Those premiums are shown in a notice given to the Sponsor with or prior to delivery of this policy.

A change in the initial premium rate(s) will not take effect within the first 36 months except that Liberty may change premium rates at any time for reasons which affect the risk assumed, including those reasons shown below:

1. a change occurs in the policy design;

2. a division, subsidiary or Associated Company is added to or deleted from this policy;

3. when the number of Covered Persons changes by 15.00% or more from the number insured on this policy's effective date; or

4. a change in existing law which affects this policy.

No premium may be changed unless Liberty notifies the Sponsor at least 31 days in advance. Premium changes may take effect on an earlier date when both Liberty and the Sponsor agree.

**Payment of Premiums**

1. All premiums due under this policy, including adjustments, if any, are payable by the Sponsor on or before their due dates at Liberty's Administrative Office, or to Liberty's agent. The due dates are specified on the first page of this policy.

2. All payments made to or by Liberty shall be in United States dollars.

3. If premiums are payable on a monthly basis, premiums for additional or increased insurance becoming effective during a policy month will be charged from the next premium due date.

4. The premium charge for insurance terminated during a policy month will cease at the end of the policy month in which such insurance terminates. This manner of charging premium is for accounting purposes only. It will not extend insurance coverage beyond a date it would have otherwise terminated as shown in the "Termination of a Covered Person's Insurance" provision of this policy.

5. If premiums are payable on other than a monthly basis, premiums for additional, increased, reduced or terminated insurance will cause a prorated adjustment on the next premium due date.

6. Except for fraud and premium adjustments, refunds of premiums or charges will be made only for:

    1. the current policy year; and

    2. the immediately preceding policy year.



## SECTION 8 - PREMIUMS
(Continued)

**Grace Period**

This is the 31 days following a premium due date, other than the first, during which premium payment
may be made. During the grace period this policy shall continue in force, unless the Sponsor has given
Liberty written notice 31 days in advance of discontinuance of this policy.

**Waiver of Premium**

Premium payments for a Covered Person are waived during any period for which benefits are payable.
If coverage is to be continued, premium payments must be resumed following a period during which
they were waived.

# AMENDMENT NO. 1

It is agreed the following changes are hereby made to this policy: GF3-890-463163-01

| Changes | Additions | Deletions |
|---|---|---|
| Revised the Eligibility Waiting Period for new hires | Form ADOP-SCH-1 R (1) | Form ADOP-SCH-1 |

The effective date of this change is October 1, 2015.

The changes will only apply to Disabilities or Partial Disabilities which start on or after the effective date of this change.

This policy's terms and provisions will apply other than as stated in this amendment.

Dated this 25th day of November, 2015.

Issued to and Accepted by:

Lantech, Inc.
**Sponsor**

By _____

**Signature and Title of Officer**

Liberty Life Assurance Company of Boston

Stephen J. McAnna

Lincoln Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7207
London, KY 40742-7207
Phone No.: (800) 291-0112
Secure Fax No.: (603) 430-5923

March 12, 2020

Kevan M. Doran
Doran Law Office
2950 BRECKENRIDGE LANE
STE 12A
LOUISVILLE, KY 40220

RE:   Long Term Disability (LTD) Benefits
      Lantech, Inc.
      Claim #: 7521853
      Claimant: Richard Johnson

Dear Kevan Doran:

Lincoln Life Assurance Company of Boston is responsible for managing claims for Long Term
Disability (LTD) benefits under Lantech, Inc.'s Group Disability Policy. We are writing in reference
to Richard Johnson's claim for LTD benefits under the Policy.

We have completed a thorough review of Mr. Johnson's eligibility for benefits and have determined
that benefits are not payable beyond March 12, 2020. Lantech, Inc.'s LTD Policy requires that to
receive benefits Mr. Johnson must meet the following definition of disability:

> *"Disability" or "Disabled" means:*
> *1. For persons other than pilots, co-pilots, and crewmembers of an aircraft:*
> *i. that during the Elimination Period and the next 36 months of Disability the Covered*
> *Person, as a result of Injury or Sickness, is unable to perform the Material and*
> *Substantial Duties of his Own Occupation; and*
> *ii. thereafter, the Covered Person is unable to perform, with reasonable continuity, the*
> *Material and Substantial Duties of Any Occupation.*
>
> *"Own Occupation" means the Covered Person's occupation that he was performing when*
> *his Disability or Partial Disability began. For the purposes of determining Disability*
> *under this policy, Liberty will consider the Covered Person's occupation as it is normally*
> *performed in the national economy.*

Mr. Johnson has been receiving LTD benefits for his disability since July 30, 2017.

In order to evaluate whether or not he continued to meet the above definition of disability, we
requested medical information from his physician(s).

Exhibit B

1 of 4



Mr. Johnson submitted a claim for left knee pain and back and neck pain and his claim file contains the following medical documentation:

- Medical records dated January 10, 2017 through January 21, 2020 from Dr. Popham.
- Medical records dated May 29, 2018 through October 4, 2018 Dr. Petrucci.
- Medical records dated March 26, 2019 from Ellis and Badenhausen Physical Therapy

In order to better understand the restrictions and limitations in relation to your medical condition, your file was referred to a doctor Board Certified in Physical Medicine and Rehabilitation. A summary of the review follows:

*Assessment/Rationale*

*This review is from a Physical Medicine and Rehabilitation perspective only. The claimant is a 64-yearold male. The chiropractic reports spanning 05/29/2018 - 10/04/2018 are reviewed. The claimant has been managed with manual, manipulative therapy for diagnoses that include upper back pain, and cervical myofascial pains. Treatments have included manual manipulation, dry needling, and soft tissue mobilizations. The chiropractic provider notes there are multiple areas of subluxations, noted about the spine and active trigger points are consistently palpated. On 10/04/2018, the chiropractic provider notes the claimant derives some relief of pain, with manual therapy. However, subluxations and spasms remain present on the exam, and the visual analog scale (VAS) pain level is 7/10. As per the report dated 01/16/2019, Dr. Krupp, MD indicates the claimant complains of new-onset right shoulder pains. There is no specific mechanism of injury, but the claimant does report associated numbness. The history is notable for prior LEFT shoulder debridement in 2016. On exam, there is tenderness to palpation over the greater tuberosity and biceps groove. There is positive impingement, and Speed's. Mild ER and deltoid weakness is seen. Diagnoses include rotator cuff (RTC) impingement. Plan: A cortisone injection was performed. MRI can be considered if symptoms do not improve. As per the report dated 03/26/2019, Dr. Popham, MD indicates the claimant is now status post left total knee arthroplasty (TKA). The current pain is 6/10 and made worse by walking. Medications include Tylenol ES. The claimant denies instability or tingling. On exam, there is distal hamstring insertion tenderness to palpation. There is no gross motor or sensory deficit. Hamstring injury following TKA is diagnosed. Medications were prescribed for knee pain.*

*This claimant is status post left TKR, with ongoing pain. However, the records do not include any recent physician reports, including updated imaging or physical exam findings. Therefore, given this lack of critical information, no specific restrictions/limitations can be supported from a Physical Medicine and Rehabilitation perspective, from the review period of 02/24/2020 onward and beyond.*

Based on the medical documentation received in relation to the requirements of his occupation, Mr. Johnson no longer meets the definition of disability outlined above. Thus benefits are no longer payable and we must close his claim.

Any pending application(s) for benefits that are considered an offset under the disability Policy continue to be applicable to Mr. Johnson's claim. If benefits are awarded retroactive to his period of disability with Lincoln Life Assurance Company of Boston, Mr. Johnson is expected to repay the

written request for review within 180 days from the receipt of this notice, our claim decision will be final, his file will remain closed, and no further review will be conducted.

Under normal circumstances, Mr. Johnson will be notified of the final decision within 45 days from the date his request is received.

If you require language translation assistance, please contact Lincoln Financial Group to initiate a service provided free of charge to assist with understanding your claim and appeal rights.

如果您需要翻译方面的帮助，请联系我，我会免费为您服务以便了解您的要求和诉求。

Shá ata' hane'go shíká a'doowoł nínízingo saad hosíníłį́į' dóó ná'ookąąh nííní'ą́ągo naaltsoos nííníłtsoozígíí hazho'ó bik'idi'deeshtį́į́ł nínízingo doo bą́ą́h ílínígóó níká a'doowoł éí biniiyé shił hodíílnih áko ákwe'égi níká adeeshwoł.

Si necesita traducción, contácteme para iniciar un servicio gratuito a fin de ayudarle a entender sus derechos de reclamo y apelación.

Kung nangangailangan ka ng tulong sa translation, mangyaring makipag-ugnayan sa akin upang gumamit ng serbisyong ibinigay nang walang bayad upang matulungan kang maunawaan ang iyong mga karapatan sa paghahabol at pag-aapela.

If special circumstances cause a delay in our decision, Mr. Johnson will be notified of the final decision no later than 90 days from the date his request is received.

Nothing in this letter should be construed as a waiver of any rights and defenses under the above captioned Policy, and all of these rights and defenses are reserved to the company, whether or not they are specifically mentioned herein.

If Mr. Johnson has any questions regarding this matter, please contact me.

Sincerely,

Latimer Turner
LTD Technical Specialist I
Phone No.: (800) 291-0112 Ext. 13973
Secure Fax No.: (603) 430-5923



Filed                22-CI-005754       11/03/2022    David L. Nicholson, Jefferson Circuit Clerk

Liberty Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7207
London, KY 40742-7207

MR. RICHARD JOHNSON
2112 CLEARVIEW DRIVE
LAGRANGE KY 40031



AOC-E-105          Sum Code: CI
Rev. 9-14

Commonwealth of Kentucky
Court of Justice      *Courts.ky.gov*

CR 4.02; Cr Official Form 1

**CIVIL SUMMONS**

NOT ORIGINAL DOCUMENT
11/04/2022          Case #: **22-CI-005754**
90469 11.1          Court:   **CIRCUIT**
County: **JEFFERSON Circuit**

*Plaintiff,* **JOHNSON , RICHARD VS. LINCOLN LINE ASSURANCE COMPANY OF BOST**, *Defendant*

TO:  **GARY  WEITKAMP**

    **2303 RIVER ROAD, SUITE 301**

    **LOUISVILLE, KY 40206**

Memo: Related party is LANTECH.COM, LLC

The Commonwealth of Kentucky to Defendant:
**LANTECH.COM, LLC**

    You are hereby notified that a **legal action has been filed against you** in this Court demanding relief as shown on the document delivered to you with this Summons. **Unless a written defense is made by you or by an attorney on your behalf within twenty (20) days** following the day this paper is delivered to you, judgment by default may be taken against you for the relief demanded in the attached complaint.

The name(s) and address(es) of the party or parties demanding relief against you or his/her (their) attorney(s) are shown on the document delivered to you with this Summons.

*David L. Nicholson*

Jefferson Circuit Clerk
Date: **11/3/2022**

**Proof of Service**

This Summons was:

☐ Served by delivering a true copy and the Complaint (or other initiating document)

    To: _____

☐ Not Served because: _____

    Date: _____, 20_____          _____

                                              Served By

                                            _____

                                            Title

Presiding Judge: HON. MITCH PERRY (630267)

CI : 000001 of 000001

Summons ID: @00001016560
CIRCUIT: 22-CI-005754 Certified Mail
JOHNSON , RICHARD VS. LINCOLN LINE ASSURANCE COMPANY OF BOST




eFiled

Filed          22-CI-005754      11/03/2022      David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
11/04/2022 12:53:31 PM
90450-111

# COMMONWEALTH OF KENTUCKY

CIVIL ACTION NO.  _____          JEFFERSON CIRCUIT COURT

DIVISION  _____

JUDGE  _____

## *ELECTRONICALLY FILED*

RICHARD JOHNSON                                                              PLAINTIFF

v.                            COMPLAINT AND JURY DEMAND

LINCOLN LIFE ASSURANCE                                        DEFENDANTS
COMPANY OF BOSTON
Dennis Glass, President of Lincoln Life Assurance Company of Boston
150 N. Radnor Chester Road, Ste. A 300
Wayne, PA 19087

SERVE:        Kentucky Secretary of State
              Summonses Branch
              700 Capital Avenue, Suite 86
              Frankfort, Kentucky 40601
and

THE LINCOLN NATIONAL LIFE COMPANY
d/b/a  LINCOLN LIFE ASSURANCE COMPANY OF BOSTON
1300 S. Clinton Street
Fort Wayne, Indiana 46802

SERVE:        Corporation Service Company – Registered Agent
              421 West Main Street
              Frankfort, Kentucky 40601
and

LANTECH,COM, LLC
d/b/a LANTECH, INC.
11000 Bluegrass parkway
Louisville, KY 40299

SERVE:        Gary R. Weitkamp, Registered Agent
              2303 River Road, Ste. 301
              Louisville, KY 40206

*** *** *** *** ***

Presiding Judge: HON. MITCH PERRY (630267)

COM : 000001 of 000015

Filed          22-CI-005754      11/03/2022         David L. Nicholson, Jefferson Circuit Clerk
NOT ORIGINAL DOCUMENT
11/04/2022 12:53:31 PM
90450-111

Plaintiff Richard Johnson brings the following Complaint against Defendant Lincoln Life Assurance Company of Boston and Lantech.com, LLC d/b/a Lantech, Inc. for wrongfully withholding initial payments of long-term disability benefits and wrongfully ceasing continuing long-term disability benefits to him and states as follows:

1.      This action arises under written contracts including a confidential Release Agreement and a contract for long-term disability benefits and involves both state law claims and ERISA rights, §502(e) of the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1132(e), et seq.

2.      This action is brought by Plaintiff and Plan Participant Richard Johnson to recover wrongfully terminated and wrongfully withheld long term disability benefits.

3.      This Court has jurisdiction over the parties and subject matter of this dispute pursuant to Kentucky state law and 28 U.S.C. §502(e) of the Employment Retirement Income Security Act of 1974 ("ERISA") and 29 U.S.C. §1132(e)(1) which provides concurrent jurisdiction to recover benefits and enforce rights under employee benefits plans to state courts.

4.      The events giving rise to Plaintiff's claims against Defendants occurred while Plaintiff was living in Louisville, Jefferson County, Kentucky and Defendants were doing business in Louisville, Jefferson County, Kentucky and accordingly venue is proper in this Court.

5.      Plaintiff Richard Johnson is a resident of Louisville, Jefferson County, Kentucky who was insured by Lincoln Life Assurance Company of Boston under a contract/policy for disability insurance and wage replacement pursuant to a group policy for the employees of Lantech.com, LLC d/b/a Lantech, Inc.

Presiding Judge: HON. MITCH PERRY (630267)

COM : 000002 of 000015

Filed          22-CI-005754      11/03/2022         David L. Nicholson, Jefferson Circuit Clerk

Filed                22-CI-005754      11/03/2022                                NOT ORIGINAL DOCUMENT
                                                                                11/04/2022 12:53:31 PM
                                                                                90450-111

6.     A copy of the aforementioned contract/policy for disability insurance and wage replacement pursuant to a group policy for employees of Lantech.com, LLC d/b/a Lantech, Inc. is attached hereto as Exhibit A.

7.     Throughout the remainder of this Complaint, Plaintiff and Plan Participant Richard Johnson is denominated as "Plaintiff" or "Mr. Johnson."

8.     Defendant Lincoln Life Assurance Company of Boston is an insurance company doing business throughout the nation including doing business in the Commonwealth of Kentucky.

9.     Lincoln Life Assurance Company of Boston is not registered with the Kentucky Secretary of State or the Kentucky Department of Insurance.

10.     Lincoln is the successor to Liberty Life Assurance Company of Boston which originally insured Plaintiff under a contract for disability insurance and wage replacement pursuant to a group policy for the employees of Lantech.com, LLC d/b/a Lantech, Inc. until Liberty Life Assurance Company of Boston was acquired by The Lincoln National Life Insurance Company.

11.     Defendant The Lincoln National Life Insurance Company is an insurance company doing business throughout the nation including doing business in the Commonwealth of Kentucky.

12.     Defendant The Lincoln National Life Insurance Company is registered with the Kentucky Department of Insurance but is not registered with the Kentucky Secretary of State.

13.     Upon information and belief, The Lincoln National Life Insurance Company is doing business as Lincoln Life Assurance Company of Boston in the Commonwealth of Kentucky.

14.     Upon information and belief, Lincoln Life Assurance Company of Boston is the unregistered assumed name of The Lincoln National Life Insurance Company.

Presiding Judge: HON. MITCH PERRY (630267)

COM : 000003 of 000015

Filed                22-CI-005754      11/03/2022          David L. Nicholson, Jefferson Circuit Clerk

Filed                22-CI-005754      11/03/2022          David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
11/04/2022 12:53:31 PM
90450-111

15.    Upon information and belief, The Lincoln National Life Insurance Company and Lincoln Life Assurance Company of Boston are interrelated business entities which function as a single business for all intents and purposes relating to this litigation.

16.    Throughout the remainder of this Complaint, Lincoln Life Assurance Company of Boston and The Lincoln National Life Insurance Company are collectively denominated as "Lincoln."

17.    Defendant Lantech.com, LLC is a Kentucky limited liability company which is registered with the Kentucky Secretary of State and doing business in the Commonwealth of Kentucky under the registered assumed name of Lantech, Inc.

18.    Throughout the remainder of this Complaint, Defendant Lantech.com, LLC d/b/a Lantech, Inc. is denominated as "Lantech."

19.    Mr. Johnson was employed by Lantech from August 22, 1981 through July 30, 2017 as an engineer.

20.    Mr. Johnson was a full-time employee of Lantech for a sufficient period of time to qualify for eligibility under the terms of the company's long-term disability insurance policies with Lincoln.

21.    During Mr. Johnson's employment with Lantech, he participated in the previously described long-term disability insurance plan offered by his employer.

22.    At all times relevant to this action and the events described herein, the above-described long term disability insurance policies/benefit plans were administered by Lincoln and its predecessor Liberty Life Assurance Company of Boston.

23.    At all times relevant to this action and the events described herein, Lincoln was acting as the "plan administrator" for the above-described long-term disability insurance plans.

Presiding Judge: HON. MITCH PERRY (630267)

COM : 000004 of 000015

4

Filed          22-CI-005754     11/03/2022     David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
11/04/2022 12:53:31 PM
90450-111

17.     On or about January 27, 2017, Mr. Johnson became disabled.

18.     Due to Mr. Johnson's disabling conditions, he was unable to perform the material and substantial duties of his own occupation.   These disabling conditions also rendered Mr. Johnson unable to perform the material and substantial duties of any occupation.   By virtue of Mr. Johnson's medical impairments and according to healthcare providers, Mr. Johnson is permanently and totally disabled.

19.     Shortly after Mr. Johnson became disabled, he was presented with a confidential Release Agreement by Lantech.

20.     Mr. Johnson subsequently agreed to the terms of this Release Agreement with Lantech.

21.     Consistent with Mr. Johnson becoming disabled, he applied for short-term and long-term disability benefits under the disability insurance plan administered by Lincoln.

22.     Pursuant to his application for disability benefits, Mr. Johnson was approved for short-term disability benefits and he was subsequently approved for long-term disability benefits under the long-term disability plan administered by Lincoln for Lantech on or about July 30, 2017.

23.     In keeping with the terms of the long-term disability plan administered by Lincoln for Lantech, Mr. Johnson applied for Social Security disability benefits and was subsequently found disabled by the Social Security Administration.

24.     Pursuant to the aforementioned ruling from the Social Security Administration, Plaintiff was ruled disabled on January 27, 2017 under the rules, regulations and statutues governing eligibility for Social Security disability benefits.

25.     Although Plaintiff was found disabled by both Lincoln and the Social Security Administration, Lincoln nonetheless withheld disability benefits from Mr. Johnson during the first

Presiding Judge: HON. MITCH PERRY (630267)

COM : 000005 of 000015

Filed          22-CI-005754     11/03/2022     David L. Nicholson, Jefferson Circuit Clerk

Filed          22-CI-005754          11/03/2022          David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
11/04/2022 12:53:31 PM
90450-111

thirty-seven (37) weeks of eligibility under the erroneous theory that payment made by Lantech to Mr. Johnson under their confidential Release Agreement off-set the amounts which Lincoln was obligated to pay pursuant to approving Mr. Johnson to receive long-term disability under the disability insurance plan it administered for Lantech.

26.     Lincoln wrongfully withholding these payments from Mr. Johnson is contrary to the terms of Mr. Johnson's agreement with Lantech.

27.     The disclosure and characterization of the confidential Release Agreement to Lincoln by Lantech violates the terms of the aforementioned agreement.

28.     The withholding/off-setting of long-term disability payments owed to Mr. Johnson by Lantech's Plan Administrator violates the terms of the aforementioned agreement.

29.     The withholding/off-setting of long-term disability payments owed to Mr. Johnson by Lantech's Plan Administrator renders the agreement unconscionable, lacking in consideration and illusory.

30.     Lincoln wrongfully withheld the first thirty-seven (37) weeks of disability payments under the Plan from Mr. Johnson.

31.     The above-described wrongfully withheld payments total $90,500.00.

32.     Worse yet, although Lincoln had previously found Mr. Johnson disabled under the terms of the long-term disability plan administered by Lincoln for Lantech and Johnson was subsequently ruled disabled by the Social Security Administration under its more stringent regulations governing eligibility for disability benefits, Lincoln nevertheless ceased paying disability benefits to Johnson in December, 2018 based upon its conclusion that Johnson was "no longer disabled" because updated medical records documenting continuing disability were not available to Lincoln.

Presiding Judge: HON. MITCH PERRY (630267)

COM : 000006 of 000015

Filed          22-CI-005754          11/03/2022          David L. Nicholson, Jefferson Circuit Clerk

Filed          22-CI-005754     11/03/2022     David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
11/04/2022 12:53:31 PM
90450-111

33.     Following the undersigned counsel contesting and appealing Lincoln's decision to discontinue paying long-term disability benefits to Mr. Johnson, Lincoln reinstated payment of long-term disability benefits to Johnson and reversed its prior decision on August 1, 2019.

34.     Approximately seven months later while the Covid-19 pandemic was beginning and medical offices were shutting down, Lincoln again discontinued paying long-term disability benefits to Mr. Johnson.

35.     Lincoln notified Mr. Johnson of its decision to once again discontinue paying long-term disability benefits to Mr. Johnson *via* correspondence mailed to him on March 12, 2020.

36.     A copy of Lincoln's correspondence terminating disability benefits to Mr. Johnson is attached hereto as Exhibit B.

37.     Paralleling the approach originally used by Lincoln to "justify" ceasing paying disability benefits to Johnson in December, 2018, Lincoln claimed its decision to terminate disability benefits was made pursuant it continuing "to evaluate whether or not he [Mr. Johnson] continued to meet the above definition of disability" set forth in Lantech's LTD Policy.

38.     Absent from the explanation offered by Lincoln for terminating disability benefits is any reference to actual medical evidence indicating an improvement in Mr. Johnson's health or functioning

39.     Instead citing a review of Mr. Johnson's file conducted by an unnamed doctor hired by Lincoln, the LTD insurer perfunctorily asserts that "[b]ased upon the medical documentation received in relation to the requirements of his occupation, Mr. Johnson no longer meets the definition of disability outlined above" in Lantech's LTD Policy.

40.     Contrary to this conclusory explanation, however, the unnamed doctor hired by Lincoln simply indicates that Mr. Johnson's file/records "do not include any recent physical

Presiding Judge: HON. MITCH PERRY (630267)

COM : 000007 of 000015

Filed          22-CI-005754     11/03/2022     David L. Nicholson, Jefferson Circuit Clerk

Filed            22-CI-005754      11/03/2022      David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
11/04/2022 12:53:31 PM
90450-111

reports including updated imaging or physical exam findings" and speculates that "given this lack of critical information, no specific restrictions/limitations can be supported from a Physical Medicine and Rehabilitation perspective from the review period of 02/24/2020 onward and beyond."

41.     The rationale offered by Lincoln for terminating benefits which is set forth in its March 12, 2020 correspondence is neither logical nor consistent with ERISA.

42.     Worse yet, the rationale offered by Lincoln for terminating benefits which is set forth in its March 12, 2020 correspondence runs directly counter to the medical evidence from Mr. Johnson's treating physicians demonstrating his impairments precluding him from performing the material and substantial duties of any occupation.

43.     Still worse, the rationale offered by Lincoln for terminating benefits is directly contrary to the decision of the Social Security Administration indicating the medical evidence of record supports a finding of disability and inability to work.

44.     Since Mr. Johnson applied for Social Security disability benefits at the behest of Lincoln and the LTD insurer has subsequently relied upon the Social Security Administration's determination of eligibility for disability benefits to off-set long-term disability benefits it otherwise owed to Mr. Johnson, Lincoln cannot now render a disability decision running completely counter to the Social Security Administration's determination of disability for Mr. Johnson.

45.     Mr. Johnson's healthcare providers have never questioned or express any doubts regarding the permanency and totality of his disability.

Presiding Judge: HON. MITCH PERRY (630267)

COM : 000008 of 000015

Filed            22-CI-005754      11/03/2022      David L. Nicholson, Jefferson Circuit Clerk

Filed         22-CI-005754      11/03/2022
NOT ORIGINAL DOCUMENT
11/04/2022 12:53:31 PM
90450-111

46.     Lincoln's rationale for terminating disability benefits is arbitrary, capricious and against the weight of all medical evidence pertaining to Mr. Johnson's impairments and inability to work

47.     Contrary to Lincoln's decision terminating disability benefits, Mr. Johnson is still "disabled" within the terms set forth in Lantech's LTD Policy.

48.     Lincoln has intentionally and callously ignored the substantive medical proof provided to it by Plaintiff's treating physicians and distorted their statements in a manner allowing the Court to review *de novo* Mr. Johnson's medical history.

49.     There is no evidence in the administrative record that Mr. Johnson's medical condition has improved or could ever improve from the time he was last approved for benefits by Lincoln.

50.     Lincoln's actions in repetitiously reviewing and denying benefits to Mr. Johnson were arbitrary, capricious and erroneous.

51.     Lincoln's refusal to consider and address the combination of Mr. Johnson's impairments and their combined impact upon his functioning is a clear and purposeful error.

52.     Lincoln's decision to terminate disability benefits for Mr. Johnson was arbitrary and capricious, contrary to the objective medical evidence and assigned inappropriate weight to the generic conclusions of a hired record review doctor.

53.     The hired record review doctor was not identified by name and never examined Mr. Johnson.

54.     The hired record review doctor did not offer an opinion that Mr. Johnson was no longer disabled under the terms of Lantech's LTD Policy.

Presiding Judge: HON. MITCH PERRY (630267)

COM : 000009 of 000015

Filed         22-CI-005754      11/03/2022      David L. Nicholson, Jefferson Circuit Clerk

Filed          22-CI-005754     11/03/2022          David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
11/04/2022 12:53:31 PM
90450-111

55.     The hired record review doctor did not offer an opinion that Mr. Johnson no longer had the limitations in functioning previously found by his treating physicians.

56.     The only opinion offered by the hired record review doctor was actually a generalization that the absence of information in the file which he/she reviewed for Lincoln would preclude him/her from finding specific restrictions/limitations beyond the review period. Moreover, if Lincoln had wanted to accurately assess Mr. Johnson's limitations in functioning, the LTD insurer could have easily had him attend a functional capacity medical examination performed upon him.

57.     At all times relevant to the events described in Plaintiff's Complaint, Lincoln was acting under a conflict of interest since it was responsible for both determining continuing eligibility for disability benefits and paying disability benefits to Mr. Johnson.  Plaintiff is therefore entitled to a broader scope of discovery than is normally available.

58.     Due to Lincoln's actions against Plaintiff, Mr. Johnson is entitled to discovery exceeding standard ERISA protocol.

59.     Lincoln so callously and purposefully ignored the substantive proof documenting Mr. Johnson's disability and limitations in functioning that it cannot rely upon the arbitrary and capricious standard of review and his medical records should therefore be reviewed *de novo*.

60.     Plaintiff's Complaint is timely and not otherwise time-barred.

### COUNT ONE – Violations of ERISA

61.     Plaintiff restates and incorporates herein by reference the allegations contained in paragraphs 1 through 60.

62.     Pursuant to the ERISA statute, Mr. Johnson is entitled to reinstatement and repayment of unpaid long-term disability benefits under the plan.

Presiding Judge: HON. MITCH PERRY (630267)

COM : 000010 of 000015

Filed          22-CI-005754     11/03/2022          David L. Nicholson, Jefferson Circuit Clerk

Filed          22-CI-005754       11/03/2022       David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
11/04/2022 12:53:31 PM
90450-111

63.     Lincoln wrongfully withheld disability benefits from Mr. Johnson due under Lantech's LTD Policy.

64.     Lincoln wrongfully withheld disability benefits from Mr. Johnson under the auspices of off-setting funds paid to him by Lantech pursuant to a confidential Release Agreement.

65.     The aforementioned funds were not subject to off-set under the terms of the confidential Release Agreement.

66.     The aforementioned funds were not subject to off-set under the terms of the Lantech's LTD Policy.

67.     Lincoln wrongfully withholding disability benefits from Mr. Johnson breaches the terms of the plan under the ERISA statute.

68.     As previously detailed herein, after Lincoln had resumed long- term disability benefits to Mr. Johnson, Lincoln subsequently wrongfully ceased paying long- term disability benefits to Mr. Johnson in March, 2020.

69.     Lincoln discontinuing benefits breaches the terms of the plan under the ERISA statute.

70.     Lincoln denying benefits breaches the terms of the plan under the ERISA statute.

71.     Lincoln's handling of Plaintiff's claim and appeal and discontinuing long- term disability benefits and denying long-term benefits to Plaintiff has been wrongful, reckless, arbitrary and capricious.

72.     Lincoln ceasing long-term disability benefits to Mr. Johnson is not supported by substantial evidence.  Moreover, Lincoln has never referenced any credible medical evidence or opinion affirmatively stating Mr. Johnson has the physical ability to resume working.

Presiding Judge: HON. MITCH PERRY (630267)

COM : 000011 of 000015

Filed          22-CI-005754       11/03/2022       David L. Nicholson, Jefferson Circuit Clerk

Filed            22-CI-005754    11/03/2022        David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
11/04/2022 12:53:31 PM
90450-111

73.     Defendant discontinuing long-term benefits to Plaintiff is contrary to the objective medical evidence and opinions of Plaintiff's treating providers.

74.     Mr. Johnson is entitled to recover pre-judgment and post-judgment interest on all amounts owed to him for Defendants violations of ERISA as outlined herein.

**COUNT TWO – Lincoln's Breach of Contract**

75.     Plaintiff restates and incorporates herein by reference the allegations contained in paragraphs 1 through 74.

76.     As set forth herein, contrary to the terms of Plaintiff's contract with Defendant – in the form of the long term disability insurance policy -  Lincoln has discontinued payment of long-term benefits to Plaintiff.

77.     Defendant ceasing payments and subsequently failing to make factual findings regarding Plaintiff's ability to perform essential functions/duties of any occupation is a breach of the parties' contract and violates the terms of the plan.

78.     Defendant ceasing payments in contravention of the evidence of record establishing Mr. Johnson's continuing eligibility for benefits is a breach of the parties' contract and violates the terms of the plan.

**COUNT THREE – Lantech's Breach of Contract**

79.     Plaintiff restates and incorporates herein by reference the allegations contained in paragraphs 1 through 80.

80.     As set forth herein, Lantech did not adhere to the terms of the confidential Release Agreement which it entered into with Mr. Johnson.

81.     As a result of Lantech breaching its obligations and promises under the confidential Release Agreement, Mr. Johnson has been deprived of enjoyment of $90,500.00.

Presiding Judge: HON. MITCH PERRY (630267)

COM : 000012 of 000015

Filed            22-CI-005754    11/03/2022        David L. Nicholson, Jefferson Circuit Clerk

Filed 22-CI-005754 11/03/2022 David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
11/04/2022 12:53:31 PM
90450-111

82. Due to Lantech breaching the confidential Release Agreement and the damages which resulted therefrom, Mr. Johnson seeks compensation in the amount of $90,500.00 from Lantech unless those monies are returned to Mr. Johnson by Lantech's Plan Administrator/Lincoln.

## COUNT FOUR – Unjust Enrichment

83. Plaintiff restates and incorporates herein by reference the allegations contained in paragraphs 1 through 82.

84. As set forth herein, a benefit was conferred upon Lantech via Mr. Johnson entering into a confidential Release Agreement with his former employer.

85. The aforementioned benefit was enjoyed by Lantech including Mr. Johnson releasing and not pursuing any actions against his former employer.

86. The enjoyment of these benefits by Lantech was inequitable because Mr. Johnson was deprived of payment for these benefits due to Lantech's Plan Administrator off-setting payment of benefits otherwise owed to Mr. Johnson.

87. In the alternative, a benefit was inequitably conferred upon Lincoln in retaining benefits otherwise owed to Mr. Johnson and its retention of these benefits is inequitable.

88. To the extent such actions were coordinated between Lantech and Lincoln, the foregoing course of conduct would constitute fraud and/or fraud in the inducement and Plaintiff should accordingly be permitted broad latitude in discovery regarding the interactions between Lantech and Lincoln

## COUNT FIVE – Promissory Estoppel

89. Plaintiff restates and incorporates herein by reference the allegations contained in paragraphs 1 through 88.

Presiding Judge: HON. MITCH PERRY (630267)

COM : 000013 of 000015

Filed 22-CI-005754 11/03/2022 David L. Nicholson, Jefferson Circuit Clerk

Filed          22-CI-005754     11/03/2022       David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
11/04/2022 12:53:31 PM
90450-111

90.     Pursuant the confidential Release Agreement executed between Lantech and Mr. Johnson, Plaintiff was promised by Lantech that entering into the Release Agreement would not affect his entitlement to benefits payable to him.

91.     Contrary to this promise, Lantech's Plan Administrator/Lincoln used the Release Agreement to adversely affect payment of long-term disability benefits to Mr. Johnson.

92.     Mr. Johnson's reliance upon Lantech's promise as reflected in the Release Agreement was reasonable.

93.     In keeping with this reliance, Mr. Johnson was induced by Lantech to act and forebear in accordance with the terms of the confidential Release Agreement.

94.     Justice and equity require that Lantech and/or Lantech's Plan Administrator/Lincoln remedy this matter by reimbursing $90,500.00 in previously withheld/off-set benefits to Mr. Johnson.

**WHEREFORE**, Plaintiff Richard Johnson respectfully demands judgment in his favor and for the following relief:

(A)     Trial by Jury of all claims and causes of action permitted;

(B)     Compensatory, consequential and incidental damages in a sum fairly reasonable to compensate Plaintiff for damages proven at trial;

(C)     For payment of disability benefits due to him as calculated from date which benefits were withheld and/or ceased until judgment awarded to him by the Court with interest to the full extent permitted by law;

(D)     For attorney fees and expenses that Plaintiff has incurred as a result of enforcing his contractual and ERISA rights;

Presiding Judge: HON. MITCH PERRY (630267)

COM : 000014 of 000015

14

Filed          22-CI-005754     11/03/2022        David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
11/04/2022 12:53:31 PM
90450-111

(E)     Any and all other relief to which the Plaintiff may be entitled and justice or equity

demands; and

(F)     Leave to freely amend in conformity with discovery of additional facts.

Respectfully submitted,

DORAN LAW OFFICE

*/s/* Kevan M. Doran_____
Kevan M. Doran
KBA Bar No.  90631
DORAN LAW OFFICE
2950 Breckenridge Lane, Suite 12A
Louisville, Kentucky 40220
Phone: (502) 208-4971
Fax: (502) 618-0605
kdoran@thedoranlawoffice.com

Presiding Judge: HON. MITCH PERRY (630267)

COM : 000015 of 000015

15

Filed        22-CI-005754    11/03/2022    David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
11/04/2022 12:53:55 PM
90450-111

# Liberty Mutual.
## INSURANCE

Liberty Life Assurance Company of Boston

# GROUP DISABILITY INCOME POLICY

**Sponsor:**   Lantech, Inc.

**Policy Number:**  GF3-890-463163-01

**Effective Date:**   October 1, 2014

**Governing Jurisdiction is Kentucky** and subject to the laws of that State.

**Premiums** are due and payable monthly on the first day of each month.

**Policy Anniversaries** shall occur each October 1st beginning in 2015.

Liberty Life Assurance Company of Boston (hereinafter referred to as Liberty) agrees to pay benefits provided by this policy in accordance with its provisions.  This policy provides Long Term Disability coverage.

**PLEASE READ THIS POLICY CAREFULLY FOR FULL DETAILS.**

This policy is a legal contract and is issued in consideration of the Application of the Sponsor, a copy of which is attached, and of the payment of premiums by the Sponsor.

For purposes of this policy, the Sponsor acts on its own behalf or as the Covered Person's agent.  Under no circumstances will the Sponsor be deemed the agent of Liberty.

This policy is delivered in and governed by the laws of the governing jurisdiction and to the extent applicable by The Employee Retirement Income Security Act of 1974 (ERISA) and any subsequent amendments.

The following pages including any amendments, riders or endorsements are a part of this policy.

Signed at Liberty's Home Office, 175 Berkeley Street, Boston, Massachusetts, 02117

SECRETARY

PRESIDENT

## NON-PARTICIPATING

FORM ADOP

Exhibit A

Filed        22-CI-005754    11/03/2022    David L. Nicholson, Jefferson Circuit Clerk

Presiding Judge: HON. MITCH PERRY (630267)

EXH : 000001 of 000045

Filed          22-CI-005754      11/03/2022     David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
11/04/2022 12:53:55 PM
90450-111

# TABLE OF CONTENTS

SECTION 1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . SCHEDULE OF BENEFITS

SECTION 2. . . . . . . . . . . . . . . . . . . . . . . . . . . . . DEFINITIONS

SECTION 3. . . . . . . . . . . . . . . . . . . . . . . . . . . . . ELIGIBILITY AND EFFECTIVE DATES

SECTION 4. . . . . . . . . . . . . . . . . . . . . . . . . . . . . DISABILITY INCOME BENEFITS

SECTION 5. . . . . . . . . . . . . . . . . . . . . . . . . . . . . EXCLUSIONS

SECTION 6. . . . . . . . . . . . . . . . . . . . . . . . . . . . . TERMINATION PROVISIONS

SECTION 7. . . . . . . . . . . . . . . . . . . . . . . . . . . . . GENERAL PROVISIONS

SECTION 8. . . . . . . . . . . . . . . . . . . . . . . . . . . . . PREMIUMS

SECTION 9. . . . . . . . . . . . . . . . . . . . . . . . . . . . . APPLICATION

Presiding Judge: HON. MITCH PERRY (630267)

EXH : 000002 of 000045

Form ADOP-TOC                                                              Table of Contents

Filed          22-CI-005754      11/03/2022     David L. Nicholson, Jefferson Circuit Clerk

Filed      22-CI-005754    11/03/2022      David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
11/04/2022 12:53:55 PM
90450-111

# SECTION 1 - SCHEDULE OF BENEFITS

## ELIGIBILITY REQUIREMENTS FOR INSURANCE BENEFITS

**Minimum Hourly Requirement:**

Employees working a minimum of 40 regularly scheduled hours per week

**Long Term Disability Benefits:**

Class 1:          All full-time Employees

Note:    This policy does not cover the following Employees:  Temporary and seasonal Employees,
Employees who are not legal residents working in the United States.

**Eligibility Waiting Period:**

1.       If the Covered Person is employed by the Sponsor on the policy effective date -
90 days of continuous, Active Employment

2.       If the Covered Person begins employment for the Sponsor after the policy effective date -
60 days of continuous, Active Employment

**Employee Contributions Required:**

No

Presiding Judge: HON. MITCH PERRY (630267)

EXH - 000003 of 000045

Form ADOP-SCH-1                                                     Schedule of Benefits
GF3-890-463163-01 R (1) Effective October 1, 2015

Filed        22-CI-005754    11/03/2022    David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
11/04/2022 12:53:55 PM
90450-111

## SECTION 1 - SCHEDULE OF BENEFITS
### (Continued)

**LONG TERM DISABILITY COVERAGE**

**Elimination Period:**

> 180 days

**Amount of Insurance:**

> 60.00% of Basic Monthly Earnings not to exceed a Maximum Monthly Benefit of $8,000.00 less
> Other Income Benefits and Other Income Earnings as outlined in Section 4.

**Maximum Basic Monthly Earnings on which the Benefit is Based:** $13,333.33

**Own Occupation Duration:**

36 Month Own Occupation

Presiding Judge: HON. MITCH PERRY (630267)

EXH - 000004 of 000045

Filed        22-CI-005754    11/03/2022    David L. Nicholson, Jefferson Circuit Clerk

Filed          22-CI-005754      11/03/2022      David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
11/04/2022 12:53:55 PM
90450-111

# SECTION 1 - SCHEDULE OF BENEFITS
(Continued)

**LONG TERM DISABILITY COVERAGE** (Continued)

**Minimum Monthly Benefit:**

The Minimum Monthly Benefit is $100.00.

**Maximum Benefit Period:**

| Age at Disability | Maximum Benefit Period |
|---|---|
| Less than age 60 | Greater of SSNRA* or to age 65 (but not less than 5 years) |
| 60 | 60 months |
| 61 | 48 months |
| 62 | 42 months |
| 63 | 36 months |
| 64 | 30 months |
| 65 | 24 months |
| 66 | 21 months |
| 67 | 18 months |
| 68 | 15 months |
| 69 and over | 12 months |

\*    SSNRA means the Social Security Normal Retirement Age as figured by the 1983 amendment to the Social Security Act and any subsequent amendments and provides:

| Year of Birth | Normal Retirement Age |
|---|---|
| Before 1938 | 65 |
| 1938 | 65 and 2 months |
| 1939 | 65 and 4 months |
| 1940 | 65 and 6 months |
| 1941 | 65 and 8 months |
| 1942 | 65 and 10 months |
| 1943-1954 | 66 |
| 1955 | 66 and 2 months |
| 1956 | 66 and 4 months |
| 1957 | 66 and 6 months |
| 1958 | 66 and 8 months |
| 1959 | 66 and 10 months |
| 1960 and after | 67 |

Presiding Judge: HON. MITCH PERRY (630267)

EXH : 000005 of 000045

Form ADOP-SCH-4                                          Schedule of Benefits

Filed          22-CI-005754          11/03/2022          David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
11/04/2022 12:53:55 PM
90450-111

## SECTION 2 - DEFINITIONS

In this section Liberty defines some basic terms needed to understand this policy.  The male pronoun whenever used in this policy includes the female.

**"Active Employment"** means the Employee must be actively at work for the Sponsor:

1.  on a full-time  basis and paid regular earnings;

2.  for at least the minimum number of hours shown in the Schedule of Benefits; and either perform such work

    a.  at the Sponsor's usual place of business; or
    b.  at a location to which the Sponsor's business requires the Employee to travel.

An Employee will be considered actively at work if he was actually at work on the day immediately preceding:

1.  a weekend (except where one or both of these days are scheduled work days);
2.  holidays (except when the holiday is a scheduled work day);
3.  paid vacations;
4.  any non-scheduled work day;
5.  an excused leave of absence (except medical leave for the Covered Person's own disabling condition and lay-off); and
6.  an emergency leave of absence (except emergency medical leave for the Covered Person's own disabling condition).

**"Administrative Office"** means Liberty Life Assurance Company of Boston, 9 Riverside Road, Weston, MA  02493.

Presiding Judge: HON. MITCH PERRY (630267)

EXH : 000006 of 000045

Filed          22-CI-005754          11/03/2022          David L. Nicholson, Jefferson Circuit Clerk

Filed          22-CI-005754     11/03/2022     David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
11/04/2022 12:53:55 PM
90450-111

## SECTION 2 - DEFINITIONS
### (Continued)

**"Any Occupation"** means any occupation that the Covered Person is or becomes reasonably fitted by training, education, experience, age, physical and mental capacity.

**"Application"** is the document designated in Section 9; it is attached to and is made a part of this policy.

**"Appropriate Available Treatment"** means care or services which are:

1. generally acknowledged by Physicians to cure, correct, limit, treat or manage the disabling condition;
2. accessible within the Covered Person's geographical region;
3. provided by a Physician who is licensed and qualified in a discipline suitable to treat the disabling Injury or Sickness;
4. in accordance with generally accepted medical standards of practice.

**"Basic Monthly Earnings"** means the Covered Person's monthly rate of earnings from the Sponsor in effect immediately prior to the date Disability or Partial Disability begins. However, such earnings will not include bonuses, commissions, overtime pay and extra compensation.

**"Covered Person"** means an Employee insured under this policy.

Presiding Judge: HON. MITCH PERRY (630267)

EXH : 000007 of 000045

Form ADOP-DEF-2

Definitions

Filed          22-CI-005754     11/03/2022     David L. Nicholson, Jefferson Circuit Clerk

Filed          22-CI-005754      11/03/2022      David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
11/04/2022 12:53:55 PM
90450-111

## SECTION 2 - DEFINITIONS
### (Continued)

**"Disability"** or **"Disabled"** means:

1. For persons other than pilots, co-pilots, and crewmembers of an aircraft:

    i.    that during the Elimination Period and the next 36 months of Disability the Covered Person, as a result of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Occupation; and

    ii.    thereafter, the Covered Person is unable to perform, with reasonable continuity, the Material and Substantial Duties of Any Occupation.

2. With respect to Covered Persons employed as pilots, co-pilots and crewmembers of an aircraft:

    **"Disability"** or **"Disabled"** means as a result of Injury or Sickness the Covered Person is unable to perform the Material and Substantial Duties of Any Occupation.

**"Disability Benefits under a Retirement Plan"** means money which:

1. is payable under a Retirement Plan due to Disability as defined in that plan; and

2. does not reduce the amount of money which would have been paid as retirement benefits at the normal retirement age under the plan if the Disability had not occurred. (If the payment does cause such a reduction, it will be deemed a Retirement Benefit as defined in this policy.)

Presiding Judge: HON. MITCH PERRY (630267)

EXH : 000008 of 000045

Form ADOP-DEF-3                                                              Definitions

Filed          22-CI-005754     11/03/2022      David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
11/04/2022 12:53:55 PM
90450-111

## SECTION 2 - DEFINITIONS
### (Continued)

**"Eligibility Date"** means the date an Employee becomes eligible for insurance under this policy. Eligibility Requirements are shown in the Schedule of Benefits.

**"Eligible Survivor"** means the Covered Person's spouse, if living, otherwise the Covered Person's children under age 25.

**"Eligibility Waiting Period"** means the continuous length of time an Employee must be in Active Employment in an eligible class to reach his Eligibility Date.

**"Elimination Period"** means a period of consecutive days of Disability or Partial Disability for which no benefit is payable. The Elimination Period is shown in the Schedule of Benefits and begins on the first day of Disability.

If the Covered Person returns to work for any thirty or fewer days during the Elimination Period and cannot continue, Liberty will count only those days the Covered Person is Disabled or Partially Disabled to satisfy the Elimination Period.

**"Employee"** means a person in Active Employment with the Sponsor.

**"Enrollment Form"** is the document completed by the Covered Person, if required, when enrolling for coverage. This form must be satisfactory to Liberty.

Presiding Judge: HON. MITCH PERRY (630267)

EXH - 000009 of 000045

Form ADOP-DEF-4                                                                    Definitions

Filed          22-CI-005754     11/03/2022      David L. Nicholson, Jefferson Circuit Clerk

Filed     22-CI-005754     11/03/2022     David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
11/04/2022 12:53:55 PM
90450-111

## SECTION 2 - DEFINITIONS
### (Continued)

**"Extended Treatment Plan"** means continued care that is consistent with the American Psychiatric Association's standard principles of Treatment, and is in lieu of confinement in a Hospital or Institution. It must be approved in writing by a Physician.

**"Family and Medical Leave"** means a leave of absence for the birth, adoption or foster care of a child, or for the care of the Covered Person's child, spouse or parent or for the Covered Person's own serious health condition as those terms are defined by the Federal Family and Medical Leave Act of 1993 (FMLA) and any amendments, or by applicable state law.

**"Gross Monthly Benefit"** means the Covered Person's Monthly Benefit before any reduction for Other Income Benefits and Other Income Earnings.

**"Hospital"** or **"Institution"** means a facility licensed to provide Treatment for the condition causing the Covered Person's Disability.

Presiding Judge: HON. MITCH PERRY (630267)

EXH : 000010 of 000045

Form ADOP-DEF-5

Definitions

Filed     22-CI-005754     11/03/2022     David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
11/04/2022 12:53:55 PM
90450-111

## SECTION 2 - DEFINITIONS
### (Continued)

**"Initial Enrollment Period"** means one of the following periods during which an Employee may first enroll for coverage under this policy:

1. for an Employee who is eligible for insurance on the policy effective date, a period before the policy effective date set by the Sponsor and Liberty.

2. for an Employee who becomes eligible for insurance after the policy effective date, the period which ends 31 days after his Eligibility Date.

**"Injury"** means bodily impairment resulting directly from an accident and independently of all other causes. For the purpose of determining benefits under this policy:

1. any Disability which begins more than 60 days after an Injury will be considered a Sickness; and

2. any Injury which occurs before the Covered Person is covered under this policy, but which accounts for a medical condition that arises while the Covered Person is covered under this policy will be treated as a Sickness.

**"Last Monthly Benefit"** means the gross Monthly Benefit payable to the Covered Person prior to his death without any reduction for earnings received from employment.

**"Material and Substantial Duties"** means responsibilities that are normally required to perform the Covered Person's Own Occupation, or any other occupation, and cannot be reasonably eliminated or modified.

Presiding Judge: HON. MITCH PERRY (630267)

EXH - 000011 of 000045

Filed        22-CI-005754      11/03/2022        David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
11/04/2022 12:53:55 PM
90450-111

## SECTION 2 - DEFINITIONS
(Continued)

**"Mental Illness"** means a psychiatric or psychological condition classified as such in the most current edition of the Diagnostic and Statistical Manual of Mental Disorders (DSM) regardless of the underlying cause of the Mental Illness. If the DSM is discontinued, Liberty will use the replacement chosen or published by the American Psychiatric Association.

**"Monthly Benefit"** means the monthly amount payable by Liberty to the Disabled or Partially Disabled Covered Person.

**"Non-Verifiable Symptoms"** means the Covered Person's subjective complaints to a Physician which cannot be diagnosed using tests, procedures or clinical examinations typically accepted in the practice of medicine. Such symptoms may include, but are not limited to, dizziness, fatigue, headache, loss of energy, numbness, pain, ringing in the ear, and stiffness.

**"Own Occupation"** means the Covered Person's occupation that he was performing when his Disability or Partial Disability began. For the purposes of determining Disability under this policy, Liberty will consider the Covered Person's occupation as it is normally performed in the national economy.

Presiding Judge: HON. MITCH PERRY (630267)

EXH - 000012 of 000045

Form ADOP-DEF-7

Definitions

Filed        22-CI-005754      11/03/2022        David L. Nicholson, Jefferson Circuit Clerk

Filed          22-CI-005754      11/03/2022          David L. Nicholson, Jefferson Circuit Clerk
NOT ORIGINAL DOCUMENT
11/04/2022 12:53:55 PM
90450-111

## SECTION 2 - DEFINITIONS
### (Continued)

**"Partial Disability"** or **"Partially Disabled"** means the Covered Person, as a result of Injury or Sickness, is able to:

1. perform one or more, but not all, of the Material and Substantial Duties of his Own Occupation or Any Occupation on an Active Employment or a part-time basis; or

2. perform all of the Material and Substantial Duties of his Own Occupation or Any Occupation on a part-time basis; and

3. earn between 20.00% and 80.00% of his Basic Monthly Earnings.

**"Physician"** means a person who:

1. is licensed to practice medicine and is practicing within the terms of his license; or

2. is a licensed practitioner of the healing arts in a category specifically favored under the health insurance laws of the state where the Treatment is received and is practicing within the terms of his license.

It does not include a Covered Person, any family member or domestic partner.

Presiding Judge: HON. MITCH PERRY (630267)

EXH·: 000013 of 000045

Form **ADOP-DEF-8**                                                                 Definitions

Filed          22-CI-005754      11/03/2022          David L. Nicholson, Jefferson Circuit Clerk

Filed        22-CI-005754     11/03/2022     David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
11/04/2022 12:53:55 PM
90450-111

## SECTION 2 - DEFINITIONS
### (Continued)

"**Proof**" means the evidence in support of a claim for benefits and includes, but is not limited to, the following:

1. a claim form completed and signed (or otherwise formally submitted) by the Covered Person claiming benefits;

2. an attending Physician's statement completed and signed (or otherwise formally submitted) by the Covered Person's attending Physician; and

3. the provision by the attending Physician of standard diagnosis, chart notes, lab findings, test results, x-rays and/or other forms of objective medical evidence in support of a claim for benefits.

Proof must be submitted in a form or format satisfactory to Liberty.

"**Regular Attendance**" means the Covered Person's personal visits to a Physician which are medically necessary according to generally accepted medical standards to effectively manage and treat the Covered Person's Disability or Partial Disability.

"**Retirement Benefit under a Retirement Plan**" means money which:

1. is payable under a Retirement Plan either in a lump sum or in the form of periodic payments;

2. does not represent contributions made by an Employee (payments which represent Employee contributions are deemed to be received over the Employee's expected remaining life regardless of when such payments are actually received); and

3. is payable upon:

   a. early or normal retirement; or
   b. Disability, if the payment does reduce the amount of money which would have been paid under the plan at the normal retirement age.

Form ADOP-DEF-9

Definitions

Presiding Judge: HON. MITCH PERRY (630267)

EXH : 000014 of 000045

Filed        22-CI-005754     11/03/2022     David L. Nicholson, Jefferson Circuit Clerk

Filed        22-CI-005754        11/03/2022        David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
11/04/2022 12:53:55 PM
90450-111

## SECTION 2 - DEFINITIONS
### (Continued)

**"Retirement Plan"** means a plan which provides retirement benefits to Employees and which is not funded wholly by Employee contributions.  The term shall not include a profit-sharing plan, informal salary continuation plan, registered retirement savings plan, stock ownership plan, 401(K) or a non-qualified plan of deferred compensation.

**"Schedule of Benefits"** means the section of this policy which shows, among other things, the Eligibility Requirements, Eligibility Waiting Period, Elimination Period, Amount of Insurance, Minimum Benefit, and Maximum Benefit Period.

**"Sickness"** means illness, disease, pregnancy or complications of pregnancy.

**"Sponsor"** means the entity to whom this policy is issued.

**"Sponsor's Retirement Plan"** is deemed to include any Retirement Plan:

1.  which is part of any Federal, State, Municipal or Association retirement system; or

2.  for which the Employee is eligible as a result of employment with the Sponsor.

**"Substance Abuse"** means alcohol and/or drug abuse, addiction or dependency.

**"Treatment"** means consulting, receiving care or services provided by or under the direction of a Physician including diagnostic measures, being prescribed drugs and/or medicines, whether the Covered Person chooses to take them or not, and taking drugs and/or medicines.

Presiding Judge: HON. MITCH PERRY (630267)

EXH-: 000015 of 000045

Filed        22-CI-005754        11/03/2022        David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
11/04/2022 12:53:55 PM
90450-111

## SECTION 3 - ELIGIBILITY AND EFFECTIVE DATES

**Eligibility Requirements for Insurance Benefits**

The eligibility requirements for insurance benefits are shown in the Schedule of Benefits.

**Eligibility Date for Insurance Benefits**

An Employee in an eligible class will qualify for insurance on the later of:

1.  this policy's effective date; or

2.  the day after the Employee completes the Eligibility Waiting Period shown in the Schedule of Benefits.

Presiding Judge: HON. MITCH PERRY (630267)

EXH - 000016 of 000045

Form ADOP-ELG-1                                     **Eligibility and Effective Dates**

Filed          22-CI-005754     11/03/2022     David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
11/04/2022 12:53:55 PM
90450-111

## SECTION 3 - ELIGIBILITY AND EFFECTIVE DATES
### (Continued)

**Effective Date of Insurance**

Insurance will be effective at 12:01 A.M. Standard Time in the governing jurisdiction on the day determined as follows, but only if the Employee's application or enrollment for insurance is made with Liberty through the Sponsor in a form or format satisfactory to Liberty.

An Employee will be insured on his Eligibility Date.

**Delayed Effective Date for Insurance**

The effective date of any initial, increased or additional insurance will be delayed for an individual if he is not in Active Employment because of Injury or Sickness.  The initial, increased or additional insurance will begin on the date the individual returns to Active Employment.

Presiding Judge: HON. MITCH PERRY (630267)

EXH : 000017 of 000045

Form ADOP-ELG-2                          **Eligibility and Effective Dates**

Filed          22-CI-005754     11/03/2022     David L. Nicholson, Jefferson Circuit Clerk

Filed          22-CI-005754     11/03/2022     David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
11/04/2022 12:53:55 PM
90450-111

## SECTION 3 - ELIGIBILITY AND EFFECTIVE DATES
(Continued)

**Family and Medical Leave**

An Employee's coverage may be continued under this policy for an approved family or medical leave of absence for up to 12 weeks following the date coverage would have terminated, subject to the following:

1.  the authorized leave is in writing;

2.  the required premium is paid;

3.  the Covered Person's benefit level, or the amount of earnings upon which the Covered Person's benefit may be based, will be that in effect on the date before said leave begins; and

4.  continuation of coverage will cease immediately if any one of the following events should occur:

    a.  the Covered Person returns to work;
    b.  this group insurance policy terminates;
    c.  the Covered Person is no longer in an eligible class;
    d.  nonpayment of premium when due by the Sponsor or the Covered Person;
    e.  the Covered Person's employment terminates.

**Rehire Terms**

If a former Employee is re-hired by the Sponsor within 12 months of his termination date, all past periods of Active Employment with the Sponsor will be used in determining the re-hired Employee's Eligibility Date.  If a former Employee is re-hired by the Sponsor more than 12 months after his termination date, he is considered to be a new Employee when determining his Eligibility Date.

Presiding Judge: HON. MITCH PERRY (630267)

EXH : 000018 of 000045

Family and Medical Leave/Rehire
Eligibility and Effective Dates

Filed          22-CI-005754     11/03/2022     David L. Nicholson, Jefferson Circuit Clerk

Filed        22-CI-005754       11/03/2022        David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
11/04/2022 12:53:55 PM
90450-111

## SECTION 3 - ELIGIBILITY AND EFFECTIVE DATES
### (Continued)

**Leave of Absence**

The Sponsor may continue the Covered Person's coverage(s) by paying the required premiums, if the Covered Person is given a leave of absence

The Covered Person's coverage will not continue beyond a period of 30 days.  In continuing such coverage under this provision, the Sponsor agrees to treat all Covered Persons equally.

**Lay-off**

The Sponsor may continue the Covered Person's coverage(s) by paying the required premiums, if the Covered Person is temporarily laid off

The Covered Person's coverage will not continue beyond a period of 30 days.  In continuing such coverage under this provision, the Sponsor agrees to treat all Covered Persons equally.

Presiding Judge: HON. MITCH PERRY (630267)

EXH - 000019 of 000045

Form ADOP-ELG-8

Leave of Absence/Lay-off
Eligibility and Effective Dates

Filed        22-CI-005754       11/03/2022        David L. Nicholson, Jefferson Circuit Clerk

Filed          22-CI-005754     11/03/2022     David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
11/04/2022 12:53:55 PM
90450-111

# SECTION 3 - ELIGIBILITY AND EFFECTIVE DATES
### (Continued)

**Transfer Provision**

In order to prevent loss of coverage for an individual because of transfer of insurance carriers, this policy will provide coverage for certain individuals as follows:

**Failure to be In Active Employment Due to Injury or Sickness:**

Subject to premium payments, this policy will cover individuals who:

1. at the time of transfer are covered under the prior carrier's policy; and

2. are not in Active Employment due to Injury or Sickness on the effective date of this policy.

Benefits will be determined based on the lesser of:

1. the amount of the Disability benefit that would have been payable under the prior policy and subject to any applicable policy limitations; or

2. the amount of Disability benefits payable under this policy. If benefits are payable under the prior policy for the Disability, no benefits are payable under this policy.

**Disability Due to a Pre-Existing Condition**

If an individual was insured under the prior carrier's policy at the time of transfer and was in Active Employment and insured under this policy on its effective date, benefits may be payable for a Disability due to a Pre-Existing Condition.

If the individual can satisfy this policy's Pre-Existing Condition Exclusion, the benefit will be determined according to this policy.

If the individual cannot satisfy this policy's Pre-Existing Condition Exclusion, then:

1. Liberty will apply the Pre-Existing Condition Exclusion of the prior carrier's policy and;

2. if the individual would have satisfied the prior carrier's pre-existing condition exclusion, giving consideration towards continuous time coverage under this policy; and the prior carrier's policy, the benefit will be determined according to this policy. However, the Maximum Monthly Benefit amount payable under this policy shall not exceed the maximum monthly benefit payable under the prior carrier's policy.

No benefit will be paid if the individual cannot satisfy the Pre-Existing Condition Exclusions of either policy.

Presiding Judge: HON. MITCH PERRY (630267)

EXH : 000020 of 000045

Form ADOP-ELG-9

Transfer Provision
Eligibility and Effective Dates

Filed          22-CI-005754     11/03/2022     David L. Nicholson, Jefferson Circuit Clerk

Filed          22-CI-005754      11/03/2022      David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
11/04/2022 12:53:55 PM
90450-111

# SECTION 4 - DISABILITY INCOME BENEFITS

## LONG TERM DISABILITY COVERAGE

### Disability Benefit

When Liberty receives Proof that a Covered Person is Disabled due to Injury or Sickness and requires the Regular Attendance of a Physician, Liberty will pay the Covered Person a Monthly Benefit after the end of the Elimination Period, subject to any other provisions of this policy. The benefit will be paid for the period of Disability if the Covered Person gives to Liberty Proof of continued:

1. Disability;

2. Regular Attendance of a Physician; and

3. Appropriate Available Treatment.

The Proof must be given upon Liberty's request and at the Covered Person's expense. In determining whether the Covered Person is Disabled, Liberty will not consider employment factors including, but not limited to, interpersonal conflict in the workplace, recession, job obsolescence, paycuts, job sharing and loss of a professional or occupational license or certification.

For purposes of determining Disability, the Injury must occur and Disability must begin while the Employee is insured for this coverage.

The Monthly Benefit will not:

1. exceed the Covered Person's Amount of Insurance; or

2. be paid for longer than the Maximum Benefit Period.

The Amount of Insurance and the Maximum Benefit Period are shown in the Schedule of Benefits.

### Amount of Disability Monthly Benefit

To figure the amount of Monthly Benefit:

1. Take the lesser of:

   a. the Covered Person's Basic Monthly Earnings multiplied by the benefit percentage shown in the Schedule of Benefits; or

   b. the Maximum Monthly Benefit shown in the Schedule of Benefits; and then

2. Deduct Other Income Benefits and Other Income Earnings, (shown in the Other Income Benefits and Other Income Earnings provision of this policy), from this amount.

The Monthly Benefit payable will not be less than the Minimum Monthly Benefit shown in the Schedule of Benefits. However, if an overpayment is due to Liberty, the Minimum Monthly Benefit otherwise payable under this provision will be applied toward satisfying the overpayment.

Presiding Judge: HON. MITCH PERRY (630267)

EXH : 000021 of 000045

Form ADOP-LTD-1

Long Term Disability
Standard Integration

Filed        22-CI-005754    11/03/2022        David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
11/04/2022 12:53:55 PM
90450-111

## SECTION 4 – DISABILITY INCOME BENEFITS
### (Continued)

**LONG TERM DISABILITY COVERAGE** (Continued)

**Partial Disability**

When Liberty receives Proof that a Covered Person is Partially Disabled and has experienced a loss of earnings due to Injury or Sickness and requires the Regular Attendance of a Physician, he may be eligible to receive a Monthly Benefit, subject to any other provisions of this policy. To be eligible to receive Partial Disability benefits, the Covered Person may be employed in his Own Occupation or another occupation, must satisfy the Elimination Period and must be earning between 20.00% and 80.00% of his Basic Monthly Earnings.

A Monthly Benefit will be paid for the period of Partial Disability if the Covered Person gives to Liberty Proof of continued:

1.   Partial Disability;

2.   Regular Attendance of a Physician; and

3.   Appropriate Available Treatment.

The Proof must be given upon Liberty's request and at the Covered Person's expense. In determining whether the Covered Person is Partially Disabled, Liberty will not consider employment factors including, but not limited to, interpersonal conflict in the workplace, recession, job obsolescence, paycuts, job sharing and loss of a professional or occupational license or certification.

For purposes of determining Partial Disability, the Injury must occur and Partial Disability must begin while the Employee is insured for this coverage.

**Loss of Earnings Monthly Calculation with Work Incentive Benefit**

For the first 24 Months, the work incentive benefit will be an amount equal to the Covered Person's Basic Monthly Earnings multiplied by the benefit percentage shown in the Schedule of Benefits, without any reductions from earnings. The work incentive benefit will only be reduced, if the Monthly Benefit payable plus any earnings exceed 100% of the Covered Person's Basic Monthly Earnings. If the combined total is more, the Monthly Benefit will be reduced by the excess amount so that the Monthly Benefit plus the Covered Person's earnings does not exceed 100% of his Basic Monthly Earnings.

Thereafter, the Monthly Benefit will be calculated as follows:

1.   The Covered Person's Basic Monthly Earnings minus the Covered Person's earnings received while he is Partially Disabled. This figure represents the amount of lost earnings.

2.   Multiply the amount of lost earnings by 75%; and then

3.   deduct Other Income Benefits (shown in the Other Income Benefits and Other Income Earnings provision of this policy) from this amount.

The Monthly Benefit payable will not be less than the Minimum Monthly Benefit shown in the Schedule of Benefits. However, if an overpayment is due to Liberty, the Minimum Monthly Benefit otherwise payable under this provision will be applied toward satisfying the overpayment.

Form ADOP-LTD-4

**Long Term Partial Disability with Work Incentive
Loss of Earnings**

Presiding Judge: HON. MITCH PERRY (630267)

EXH : 000022 of 000045

Filed        22-CI-005754    11/03/2022        David L. Nicholson, Jefferson Circuit Clerk

Filed          22-CI-005754     11/03/2022     David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
11/04/2022 12:53:55 PM
90450-111

## SECTION 4 – DISABILITY INCOME BENEFITS
### (Continued)

**LONG TERM DISABILITY COVERAGE** (Continued)

**Mental Illness and/or Substance Abuse and/or Non-Verifiable Symptoms Limitation**

The benefit for Disability due to Mental Illness and/or Substance Abuse and/or Non-Verifiable Symptoms will not exceed a combined period of 24 months of Monthly Benefit payments while the Covered Person is insured under this policy.

If the Covered Person is in a Hospital or Institution for Mental Illness and/or Substance Abuse at the end of the combined period of 24 months, the Monthly Benefit will be paid during the confinement.

If the Covered Person is not confined in a Hospital or Institution for Mental Illness and/or Substance Abuse, but is fully participating in an Extended Treatment Plan for the condition that caused Disability, the Monthly Benefit will be payable to a Covered Person for up to a combined period of 36 months.

In no event will the Monthly Benefit be payable beyond the Maximum Benefit Period shown in the Schedule of Benefits.

Presiding Judge: HON. MITCH PERRY (630267)

EXH - 000023 of 000045

Filed          22-CI-005754     11/03/2022     David L. Nicholson, Jefferson Circuit Clerk

Filed          22-CI-005754      11/03/2022      David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
11/04/2022 12:53:55 PM
90450-111

## SECTION 4 - DISABILITY INCOME BENEFITS
### (Continued)

**LONG TERM DISABILITY COVERAGE** (Continued)

**Rehabilitation Incentive Benefit**

Liberty will pay an increased Monthly Benefit while a Covered Person is fully participating in a Rehabilitation Program.  Liberty must first approve the Rehabilitation Program in writing before a Covered Person can be considered for this benefit.  If Liberty does not approve a Rehabilitation Program, the regular Disability benefit will be payable provided the Covered Person is Disabled under the terms of this policy.  To be eligible for a Rehabilitation Incentive Benefit, the Covered Person must:

  1.  be Disabled and receiving benefits under this policy; and

  2.  be fully participating in a Rehabilitation Program approved by Liberty.

**Increased Monthly Benefit**

If the Covered Person is eligible for a Rehabilitation Incentive Benefit, the benefit percentage shown in the Schedule of Benefits, will be increased by 10.00%.  The increased benefit will begin on the first day of the month after Liberty receives written Proof of the Covered Person's full participation in the Rehabilitation Program.

**Disability Benefits Termination**

If the Covered Person, at any time, declines to fully participate in an approved Rehabilitation Program recommended by Liberty, his Disability benefits will terminate on the first day of the month following the Covered Person's declination to fully participate in the approved Rehabilitation Program.  If Liberty recommends rehabilitation, no benefit will be paid from the date recommendation is made until Liberty receives the Covered Person's written agreement to fully participate in the Rehabilitation Program.

**Discontinuation of the Rehabilitation Incentive Benefit**

The Rehabilitation Incentive Benefit will cease:

  1.  when the Covered Person is no longer fully participating in a Rehabilitation Program approved by Liberty;

  2.  in accordance with the provision[s] entitled "Discontinuation of the Long Term Disability Benefit"; or

  3.  when the Rehabilitation Program ends.

Presiding Judge: HON. MITCH PERRY (630267)

EXH : 000024 of 000045

Form ADOP-LTD-8

Long Term Disability
Rehabilitation

Filed            22-CI-005754      11/03/2022        David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
11/04/2022 12:53:55 PM
90450-111

## SECTION 4 - DISABILITY INCOME BENEFITS
(Continued)

**LONG TERM DISABILITY COVERAGE** (Continued)

**Rehabilitation Incentive Benefit** (Continued)

For the purpose of this provision, **"Rehabilitation Program"** means a comprehensive individually tailored, goal oriented program to return a Disabled Covered Person to gainful employment. The services offered may include, but are not limited to, the following:

1. physical therapy;
2. occupational therapy;
3. work hardening programs;
4. functional capacity evaluations;
5. psychological and vocational counseling;
6. rehabilitative employment; and
7. vocational rehabilitation services.

Presiding Judge: HON. MITCH PERRY (630267)

EXH - 000025 of 000045

Form ADOP-LTD-9

Long Term Disability
Rehabilitation

Filed            22-CI-005754      11/03/2022        David L. Nicholson, Jefferson Circuit Clerk

Filed        22-CI-005754      11/03/2022      David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
11/04/2022 12:53:55 PM
90450-111

## SECTION 4 - DISABILITY INCOME BENEFITS
(Continued)

**LONG TERM DISABILITY COVERAGE** (Continued)

**Three Month Survivor Benefit**

Liberty will pay a lump sum benefit to the Eligible Survivor when Proof is received that a Covered Person died:

1.  after Disability had continued for 180 or more consecutive days; and

2.  while receiving a Monthly Benefit.

The lump sum benefit will be an amount equal to three times the Covered Person's Last Monthly Benefit.

If the survivor benefit is payable to the Covered Person's children, payment will be made in equal shares to the children, including step children and legally adopted children. However, if any of said children are minors or incapacitated, payment will be made on their behalf to the court appointed guardian of the children's property. This payment will be valid and effective against all claims by others representing or claiming to represent the children.

If there is no Eligible Survivor, the benefit is payable to the estate.

If an overpayment is due to Liberty at the time of a Covered Person's death, the benefit payable under this provision will be applied toward satisfying the overpayment.

Presiding Judge: HON. MITCH PERRY (630267)

EXH : 000026 of 000045

Form ADOP-LTD-10

Filed        22-CI-005754      11/03/2022      David L. Nicholson, Jefferson Circuit Clerk

Filed        22-CI-005754    11/03/2022      David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
11/04/2022 12:53:55 PM
90450-111

# SECTION 4 – DISABILITY INCOME BENEFITS
### (Continued)

**LONG TERM DISABILITY COVERAGE** (Continued)

**Workplace Modification Benefit**

If a Covered Person is Disabled or Partially Disabled and receiving a benefit from Liberty, a benefit may be payable to the Sponsor as part of the Covered Person's benefit for modifications to the workplace to accommodate the Covered Person's return to work or to assist the Covered Person in remaining at work.

Liberty will reimburse the Sponsor for up to 100% of reasonable costs the Sponsor incurs for the modification, up to the greater of:

1. $2,000.00; or

2. the equivalent of 2 months of the Covered Person's Monthly Benefit.

To qualify for this benefit:

1. the Disability or Partial Disability must prevent the Covered Person from performing some or all of the Material and Substantial Duties of his occupation; and

2. any proposed modifications must be approved in writing and signed by the Covered Person, the Sponsor and Liberty; and

3. the Sponsor must agree to make the modifications to the workplace to reasonably accommodate the Covered Person's return to work or to assist the Covered Person in remaining at work.

The Sponsor's costs for the approved modifications will be reimbursed after:

1. the proposed modifications have been made; and

2. written proof of the expenses incurred by the Sponsor has been provided to Liberty; and

3. Liberty has received proof that the Covered Person has returned to and/or remains at work.

Presiding Judge: HON. MITCH PERRY (630267)

EXH : 000027 of 000045

Filed        22-CI-005754    11/03/2022      David L. Nicholson, Jefferson Circuit Clerk

Filed          22-CI-005754    11/03/2022     David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
11/04/2022 12:53:55 PM
90450-111

## SECTION 4 - DISABILITY INCOME BENEFITS
### (Continued)

**LONG TERM DISABILITY COVERAGE** (Continued)

**Other Income Benefits and Other Income Earnings**

**Other Income Benefits** means:

1. The amount for which the Covered Person is eligible under:

   a. Workers' or Workmen's Compensation Laws;
   b. Occupational Disease Law;
   c. Title 46, United States Code Section 688 (The Jones Act);
   d. any work loss provision in mandatory "No-Fault" auto insurance;
   e. Railroad Retirement Act;
   f. any governmental compulsory benefit act or law; or
   g. any other act or law of like intent.

2. The amount of any Disability benefits which the Covered Person is eligible to receive under:
   a. any other group insurance plan of the Sponsor;
   b. any governmental retirement system as a result of his employment with the Sponsor ; or
   c. any individual insurance plan where the premium is wholly or partially paid by the Sponsor. However, Liberty will only reduce the Monthly Benefit if the Covered Person's Monthly Benefit under this policy, plus any benefits that the Covered Person is eligible to receive under such individual insurance plan exceed 100% of the Covered Person's Basic Monthly Earnings. If this sum exceeds 100% of Basic Monthly Earnings, the Covered Person's Monthly Benefit under this policy will be reduced by such excess amount.

3. The amount of benefits the Covered Person receives under the Sponsor's Retirement Plan as follows:

   a. the amount of any Disability Benefits under a Retirement Plan, or Retirement Benefits under a Retirement Plan the Covered Person voluntarily elects to receive as retirement payment under the Sponsor's Retirement Plan; and
   b. the amount the Covered Person receives as retirement payments when he reaches the later of age 62, or normal retirement age as defined in the Sponsor's plan.

4. The amount of Disability and/or Retirement Benefits under the United States Social Security Act, the Canada Pension Plan, the Quebec Pension Plan, or any similar plan or act, which:

   a. the Covered Person receives or is eligible to receive; and
   b. his spouse, child or children receives or are eligible to receive because of his Disability; or
   c. his spouse, child or children receives or are eligible to receive because of his eligibility for retirement benefits.

5. Any amount the Covered Person receives from any unemployment benefits.

Presiding Judge: HON. MITCH PERRY (630267)

EXH : 000028 of 000045

**Long Term Disability Primary and Family Integration**
**Other Income Benefits and Other Income Earnings**

Form ADOP-LTD-22

Filed          22-CI-005754    11/03/2022     David L. Nicholson, Jefferson Circuit Clerk

Filed          22-CI-005754     11/03/2022          David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
11/04/2022 12:53:55 PM
90450-111

## SECTION 4 - DISABILITY INCOME BENEFITS
(Continued)

**LONG TERM DISABILITY COVERAGE** (Continued)

**Other Income Benefits and Other Income Earnings** (Continued)

**Other Income Earnings** means:

1. the amount of earnings the Covered Person earns or receives from any form of employment including severance; and

2. any amount the Covered Person receives from any formal or informal sick leave or salary continuation plan(s).

Other Income Benefits, except retirement benefits, must be payable as a result of the same Disability for which Liberty pays a benefit. The sum of Other Income Benefits and Other Income Earnings will be deducted in accordance with the provisions of this policy.

Presiding Judge: HON. MITCH PERRY (630267)

EXH : 000029 of 000045

Filed          22-CI-005754     11/03/2022          David L. Nicholson, Jefferson Circuit Clerk

Filed          22-CI-005754      11/03/2022      David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
11/04/2022 12:53:55 PM
90450-111

## SECTION 4 - DISABILITY INCOME BENEFITS
(Continued)

**LONG TERM DISABILITY COVERAGE** (Continued)

**Estimation of Benefits**

Liberty will reduce the Covered Person's Disability or Partial Disability benefits by the amount of Other Income Benefits that we estimate are payable to the Covered Person and his dependents.

The Covered Person's Disability benefit will not be reduced by the estimated amount of Other Income Benefits if the Covered Person:

1. provides satisfactory proof of application for Other Income Benefits;

2. signs a reimbursement agreement under which, in part, the Covered Person agrees to repay Liberty for any overpayment resulting from the award or receipt of Other Income Benefits;

3. if applicable, provides satisfactory proof that all appeals for Other Income Benefits have been made on a timely basis to the highest administrative level unless Liberty determines that further appeals are not likely to succeed; and

4. if applicable, submits satisfactory proof that Other Income Benefits have been denied at the highest administrative level unless Liberty determines that further appeals are not likely to succeed.

Liberty will not estimate or reduce for any benefits under the Sponsor's pension or retirement benefit plan according to applicable law, until the Covered Person actually receives them.

In the event that Liberty overestimates the amount payable to the Covered Person from any plans referred to in the Other Income Benefits and Other Income Earnings provision of this policy, Liberty will reimburse the Covered Person for such amount upon receipt of written proof of the amount of Other Income Benefits awarded (whether by compromise, settlement, award or judgement) or denied (after appeal through the highest administrative level).

**Social Security Assistance**

Liberty may help a Covered Person in applying for Social Security Disability Income Benefits.  In order to be eligible for assistance the Covered Person must be receiving a Monthly Benefit from Liberty.  Such assistance will be provided only if Liberty determines that assistance would be beneficial.

Presiding Judge: HON. MITCH PERRY (630267)

EXH : 000030 of 000045

Long Term Disability
Estimation of Benefits and Social Security Assistance

Filed          22-CI-005754      11/03/2022      David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
11/04/2022 12:53:55 PM
90450-111

## SECTION 4 - DISABILITY INCOME BENEFITS
(Continued)

**LONG TERM DISABILITY COVERAGE** (Continued)

**Lump Sum Payments**

Other Income Benefits from a compromise, settlement, award or judgement which are paid to the Covered Person in a lump sum and are meant to compensate the Covered Person for any one or more of the following:

1. loss of past or future wages;
2. impaired earnings capacity;
3. lessened ability to compete in the open labor market;
4. any degree of permanent impairment; and
5. any degree of loss of bodily function or capacity;

will be prorated on a monthly basis as follows:

1. over the period of time such benefits would have been paid if not in a lump sum; or

2. if such period of time cannot be determined, the lesser of:

    a. the remainder of the Maximum Benefit Period; or
    b. 5 years.

**Cost of Living Freeze**

After the first deduction for each of the Other Income Benefits, the Monthly Benefit will not be further reduced due to any cost of living increases payable under the Other Income Benefits and Other Income Earnings provision of this policy. This provision does not apply to increases received from any form of employment.

**Prorated Benefits**

For any period for which a Long Term Disability benefit is payable that does not extend through a full month, the benefit will be paid on a prorated basis. The rate will be 1/30th for each day for such period of Disability.

**Discontinuation of the Long Term Disability Benefit**

The Monthly Benefit will cease on the earliest of:

1. the date the Covered Person fails to provide Proof of continued Disability or Partial Disability and Regular Attendance of a Physician;

2. the date the Covered Person fails to cooperate in the administration of the claim. Such cooperation includes, but is not limited to, providing any information or documents needed to determine whether benefits are payable or the actual benefit amount due.

Presiding Judge: HON. MITCH PERRY (630267)

EXH - 000031 of 000045

Form ADOP-LTD-25

Long Term Disability

Filed          22-CI-005754          11/03/2022          David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
11/04/2022 12:53:55 PM
90450-111

## SECTION 4 - DISABILITY INCOME BENEFITS
### (Continued)

**LONG TERM DISABILITY COVERAGE** (Continued)

**Discontinuation of the Long Term Disability Benefit** (Continued)

The Monthly Benefit will cease on the earliest of: (Continued)

    3.    the date the Covered Person refuses to be examined or evaluated at reasonable intervals;

    4.    the date the Covered Person refuses to receive Appropriate Available Treatment;

    5.    the date the Covered Person refuses a job with the Sponsor where workplace modifications or accommodations were made to allow the Covered Person to perform the Material and Substantial Duties of the job;

    6.    the date the Covered Person is able to work in his Own Occupation on a part-time basis, but chooses not to;

    7.    on the first day of the month following the date the Covered Person refuses to fully participate in a Rehabilitation Program recommended by Liberty according to the individually written Rehabilitation Program;

    8.    the date the Covered Person's current Partial Disability earnings exceed 80.00% of his Basic Monthly Earnings;

            Because the Covered Person's current earnings may fluctuate, Liberty will average earnings over three consecutive months rather than immediately terminating his benefit once 80.00% of Basic Monthly Earnings has been exceeded.

    9.    the date the Covered Person is no longer Disabled according to this policy;

   10.    the end of the Maximum Benefit Period; or

   11.    the date the Covered Person dies.

Presiding Judge: HON. MITCH PERRY (630267)

EXH : 000032 of 000045

Filed          22-CI-005754          11/03/2022          David L. Nicholson, Jefferson Circuit Clerk

Filed          22-CI-005754     11/03/2022          David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
11/04/2022 12:53:55 PM
90450-111

## SECTION 4 - DISABILITY INCOME BENEFITS
(Continued)

**LONG TERM DISABILITY COVERAGE** (Continued)

**Successive Periods of Disability**

With respect to this policy, **"Successive Periods of Disability"** means a Disability which is related or due to the same cause(s) as a prior Disability for which a Monthly Benefit was payable.

A Successive Period of Disability will be treated as part of the prior Disability if, after receiving Disability benefits under this policy, a Covered Person

1. returns to his Own Occupation on an Active Employment basis for less than six continuous months; and

2. performs all the Material and Substantial Duties of his Own Occupation.

To qualify for a Successive Periods of Disability benefit, the Covered Person must experience more than a 20% loss of Basic Monthly Earnings.

Benefit payments will be subject to the terms of this policy for the prior Disability.

If a Covered Person returns to his Own Occupation on an Active Employment basis for six continuous months or more, the Successive Period of Disability will be treated as a new period of Disability. The Covered Person must complete another Elimination Period.

If a Covered Person becomes eligible for coverage under any other group long term disability coverage, this Successive Period of Disability provision will cease to apply to that Covered Person.

Presiding Judge: HON. MITCH PERRY (630267)

EXH-: 000033 of 000045

Filed          22-CI-005754     11/03/2022          David L. Nicholson, Jefferson Circuit Clerk

Filed        22-CI-005754      11/03/2022        David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
11/04/2022 12:53:55 PM
90450-111

## SECTION 5 - EXCLUSIONS

**GENERAL EXCLUSIONS**

This policy will not cover any Disability due to:

1. war, declared or undeclared, or any act of war;

2. intentionally self-inflicted injuries, while sane or insane;

3. active Participation in a Riot;

4. the committing of or attempting to commit a felony or misdemeanor;

5. cosmetic surgery unless such surgery is in connection with an Injury or Sickness sustained while the individual is a Covered Person; or

6. a gender change, including, but not limited to, any operation, drug therapy or any other procedure related to a gender change.

No benefit will be payable during any period of incarceration.

With respect to this provision, **Participation** shall include promoting, inciting, conspiring to promote or incite, aiding, abetting, and all forms of taking part in, but shall not include actions taken in defense of public or private property, or actions taken in defense of the Covered Person, if such actions of defense are not taken against persons seeking to maintain or restore law and order including, but not limited to police officers and fire fighters.

With respect to this provision, **Riot** shall include all forms of public violence, disorder or disturbance of the public peace, by three or more persons assembled together, whether or not acting with a common intent and whether or not damage to persons or property or unlawful act or acts is the intent or the consequence of such disorder.

Presiding Judge: HON. MITCH PERRY (630267)

EXH : 000034 of 000045

Filed        22-CI-005754      11/03/2022        David L. Nicholson, Jefferson Circuit Clerk

Filed          22-CI-005754      11/03/2022        David L. Nicholson, Jefferson Circuit Clerk
NOT ORIGINAL DOCUMENT
11/04/2022 12:53:55 PM
90450-111

# SECTION 5 - EXCLUSIONS
## (Continued)

**LONG TERM DISABILITY COVERAGE**

**Pre-Existing Condition Exclusion**

This policy will not cover any Disability or Partial Disability:

1.  which is caused or contributed to by, or results from, a Pre-Existing Condition; and

2.  which begins in the first 12 months immediately after the Covered Person's effective date of coverage.

**"Pre-Existing Condition"** means a condition resulting from an Injury or Sickness for which the Covered Person is diagnosed or received Treatment within three months prior to the Covered Person's effective date of coverage.

Presiding Judge: HON. MITCH PERRY (630267)

EXH : 000035 of 000045

Form ADOP-EXC-5

Long Term Disability
3-12 Pre-Existing Exclusion

Filed          22-CI-005754      11/03/2022        David L. Nicholson, Jefferson Circuit Clerk

Filed          22-CI-005754    11/03/2022    David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
11/04/2022 12:53:55 PM
90450-111

# SECTION 6 - TERMINATION PROVISIONS

**Termination of a Covered Person's Insurance**

A Covered Person will cease to be insured on the earliest of the following dates:

1.  the date this policy terminates, but without prejudice to any claim originating prior to the time of termination;

2.  the date the Covered Person is no longer in an eligible class;

3.  the date the Covered Person's class is no longer included for insurance;

4.  the date employment terminates.  Cessation of Active Employment will be deemed termination of employment, except the insurance will be continued for an Employee absent due to Disability during:

    a.  the Elimination Period; and
    b.  any period during which premium is being waived.

5.  the date the Covered Person ceases active work due to a labor dispute, including any strike, work slowdown, or lockout.

Liberty reserves the right to review and terminate all classes insured under this policy if any class(es) cease(s) to be covered.

Presiding Judge: HON. MITCH PERRY (630267)

EXH : 000036 of 000045

Filed          22-CI-005754    11/03/2022    David L. Nicholson, Jefferson Circuit Clerk

Filed        22-CI-005754        11/03/2022        David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
11/04/2022 12:53:55 PM
90450-111

## SECTION 6 - TERMINATION PROVISIONS
### (Continued)

**Policy Termination**

1. Termination of this policy under any conditions will not prejudice any claim which occurs while this policy is in force.

2. If the Sponsor fails to pay any premium within the grace period, this policy will terminate at 12:00 midnight Standard Time on the last day of the grace period. The Sponsor may terminate this policy by advance written notice delivered to Liberty at least 31 days prior to the termination date. This policy will not terminate during any period for which premium has been paid. The Sponsor will be liable to Liberty for all premiums due and unpaid for the full period for which this policy is in force.

3. Liberty may terminate this policy on any premium due date by giving written notice to the Sponsor at least 31 days in advance if:

   a. the number of Employees insured is fewer than 10; or

   b. less than 100.00% of all the Employees eligible for any non-contributory insurance are insured for it; or

   c. the Sponsor fails:

      i. to furnish promptly any information which Liberty may reasonably require; or
      ii. to perform any other obligations pertaining to this policy.

4. Liberty may terminate this policy or any coverage(s) afforded hereunder and for any class of covered Employees on any premium due date after it has been in force for 12 months. Liberty will provide written notice of such termination to the Sponsor at least 31 days before the termination is effective.

5. Termination may take effect on an earlier date if agreed to by the Sponsor and Liberty.

Presiding Judge: HON. MITCH PERRY (630267)

EXH : 000037 of 000045

Filed        22-CI-005754        11/03/2022        David L. Nicholson, Jefferson Circuit Clerk

Filed          22-CI-005754      11/03/2022       David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
11/04/2022 12:53:55 PM
90450-111

# SECTION 7 - GENERAL PROVISIONS

**Assignment**

No assignment of any present or future right or benefit under this policy will be allowed.

**Complete Contract - Policy Changes**

1. This policy is the entire contract. It consists of:

    a. all of the pages; and
    b. the attached signed Application of the Sponsor.

2. This policy may be changed in whole or in part. Only an officer of Liberty can approve a change. The approval must be in writing and endorsed on or attached to this policy.

3. No other person, including an agent, may change this policy or waive any part of it.

**Conformity with State Statutes**

Any provision of this policy which, on its effective date, is in conflict with the statutes of the governing jurisdiction of this policy is hereby amended to conform to the minimum requirements of such statute.

**Employee's Certificate**

Liberty will provide a Certificate to the Sponsor for delivery to Covered Persons. It will state:

1. the name of the insurance company and the policy number;
2. a description of the insurance provided;
3. the method used to determine the amount of benefits;
4. to whom benefits are payable;
5. limitations or reductions that may apply;
6. the circumstances under which insurance terminates; and
7. the rights of the Covered Person upon termination of this policy.

If the terms of a Certificate and this policy differ, this policy will govern.

**Examination**

Liberty, at its own expense, may have the right and opportunity to have a Covered Person, whose Injury or Sickness is the basis of a claim, examined or evaluated at reasonable intervals deemed necessary by Liberty. This right may be used as often as reasonably required.

Presiding Judge: HON. MITCH PERRY (630267)

EXH : 000038 of 000045

Form ADOP-GNP-1                                                              General Provisions

Filed          22-CI-005754      11/03/2022      David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
11/04/2022 12:53:55 PM
90450-111

## SECTION 7 - GENERAL PROVISIONS
### (Continued)

**Furnishing of Information - Access to Records**

1.  The Sponsor will furnish at regular intervals to Liberty:

    a.  information relative to Employees:

        i.    who qualify to become insured;
        ii.   whose amounts of insurance change; and/or
        iii.  whose insurance terminates.

    b.  any other information about this policy that may be reasonably required.

    The Sponsor's records which, in the opinion of Liberty, have a bearing on the insurance will be opened for inspection at any reasonable time.

2.  Clerical error or omission will not:

    a.  deprive an Employee of insurance;
    b.  affect an Employee's Amount of Insurance; or
    c.  effect or continue an Employee's insurance which otherwise would not be in force.

**Interpretation of the Policy**

Liberty shall possess the authority, in its sole discretion, to construe the terms of this policy and to determine benefit eligibility hereunder.  Liberty's decisions regarding construction of the terms of this policy and benefit eligibility shall be conclusive and binding.

**Incontestability**

The validity of this policy shall not be contested, except for non-payment of premiums, after it has been in force for two years from the date of issue.  The validity of this policy shall not be contested on the basis of a statement made relating to insurability by any person covered under this policy after such insurance has been in force for two years during such person's lifetime, and shall not be contested unless the statement is contained in a written instrument signed by the person making such statement.

**Legal Proceedings**

A claimant or the claimant's authorized representative cannot start any legal action:

1.  until 60 days after Proof of claim has been given; or

2.  more than three years after the time Proof of claim is required.

Presiding Judge: HON. MITCH PERRY (630267)

EXH : 000039 of 000045

Form ADOP-GNP-2.1                                      General Provisions

Filed          22-CI-005754      11/03/2022        David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
11/04/2022 12:53:55 PM
90450-111

# SECTION 7 - GENERAL PROVISIONS
(Continued)

**Misstatement of Age**

If a Covered Person's age has been misstated, an equitable adjustment will be made in the premium. If the amount of the benefit is dependent upon an Employee's age, the amount of the benefit will be the amount an Employee would have been entitled to if his correct age were known.

A refund of premium will not be made for a period more than 12 months before the date Liberty is advised of the error.

**Notice and Proof of Claim**

1. **Notice**

   a. Notice of claim must be given to Liberty within 30 days of the date of the loss on which the claim is based. If that is not possible, Liberty must be notified as soon as it is reasonably possible to do so. Such notice of claim must be received in a form or format satisfactory to Liberty.

   b. When written notice of claim is applicable and has been received by Liberty, the Covered Person will be sent claim forms. If the forms are not received within 15 days after written notice of claim is sent, the Covered Person can send to Liberty written Proof of claim without waiting for the forms.

2. **Proof**

   a. Satisfactory Proof of loss must be given to Liberty no later than 90 days after the end of the Elimination Period.

   b. Failure to furnish such Proof within such time shall not invalidate or reduce any claim if it was not reasonably possible to furnish such Proof within such time. Such Proof must be furnished as soon as reasonably possible, and in no event, except in the absence of legal capacity of the claimant, later than one year from the time Proof is otherwise required.

   c. Proof of continued loss, continued Disability or Partial Disability, when applicable, and Regular Attendance of a Physician must be given to Liberty within 30 days of the request for such Proof.

Liberty reserves the right to determine if the Covered Person's Proof of loss is satisfactory.

**Payment of Claims**

The benefit is payable to the Covered Person. But, if a benefit is payable to a Covered Person's estate, a Covered Person who is a minor, or who is not competent, Liberty has the right to pay up to $1,000 to any of the Covered Person's relatives or any other person whom Liberty considers entitled thereto by reason of having incurred expense for the maintenance, medical attendance or burial of the Covered Person. If Liberty in good faith pays the benefit in such a manner, any such payment shall fulfill Liberty's responsibility for the amount paid.

Presiding Judge: HON. MITCH PERRY (630267)

EXH - 000040 of 000045

Filed          22-CI-005754      11/03/2022        David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
11/04/2022 12:53:55 PM
90450-111

# SECTION 7 - GENERAL PROVISIONS
## (Continued)

**Right of Recovery**

Liberty has the right to recover any overpayment of benefits caused by, but not limited to, the following:

1. fraud;
2. any error made by Liberty in processing a claim; or
3. the Covered Person's receipt of any Other Income Benefits.

Liberty may recover an overpayment by, but not limited to, the following:

1. requesting a lump sum payment of the overpaid amount;
2. reducing any benefits payable under this policy;
3. taking any appropriate collection activity available including any legal action needed; and
4. placing a lien, if not prohibited by law, in the amount of the overpayment on the proceeds of any Other Income Benefits, whether on a periodic or lump sum basis.

It is required that full reimbursement be made to Liberty.

**Statements**

In the absence of fraud, all statements made in any application are considered representations and not warranties (absolute guarantees). No representation by:

1. the Sponsor in applying for this policy will make it void unless the representation is contained in the signed Application; or

2. any Employee in enrolling for insurance under this policy will be used to reduce or deny a claim unless a copy of the Enrollment Form, signed by the Employee if required, is or has been given to the Employee.

**Subrogation and Reimbursement**

When a Covered Person's Injury or Sickness appears to be someone else's fault, benefits otherwise payable under this policy for loss of time as a result of that Injury or Sickness will not be paid unless the Covered Person or his legal representative agree(s):

1. to repay Liberty for such benefits to the extent they are for losses for which compensation is paid to the Covered Person by or on behalf of the person at fault;

2. to allow Liberty a lien on such compensation and to hold such compensation in trust for Liberty; and

3. to execute and give to Liberty any instruments needed to secure the rights under 1. and 2. above.

Further, when Liberty has paid benefits to or on behalf of the injured Covered Person, Liberty will be subrogated to all rights of recovery that the Covered Person has against the person at fault. These subrogation rights will extend only to recovery of the amount Liberty has paid. The Covered Person must execute and deliver any instruments needed and do whatever else is necessary to secure those rights to Liberty.

Presiding Judge: HON. MITCH PERRY (630267)

EXH - 000041 of 000045

Form ADOP-GNP-4                                                General Provisions

NOT ORIGINAL DOCUMENT
11/04/2022 12:53:55 PM
90450-111

## SECTION 7 - GENERAL PROVISIONS
### (Continued)

**Workers' Compensation**

This policy and the coverages provided are not in lieu of, nor will they affect any requirements for coverage under any Workers' Compensation Law or other similar law.

Form ADOP-GNP-5                                             General Provisions

Filed          22-CI-005754      11/03/2022          David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
11/04/2022 12:53:55 PM
90450-111

# SECTION 8 - PREMIUMS

**Premium Rates**

Liberty has set the premiums that apply to the coverage(s) provided under this policy. Those premiums are shown in a notice given to the Sponsor with or prior to delivery of this policy.

A change in the initial premium rate(s) will not take effect within the first 36 months except that Liberty may change premium rates at any time for reasons which affect the risk assumed, including those reasons shown below:

1.  a change occurs in the policy design;

2.  a division, subsidiary or Associated Company is added to or deleted from this policy;

3.  when the number of Covered Persons changes by 15.00% or more from the number insured on this policy's effective date; or

4.  a change in existing law which affects this policy.

No premium may be changed unless Liberty notifies the Sponsor at least 31 days in advance. Premium changes may take effect on an earlier date when both Liberty and the Sponsor agree.

**Payment of Premiums**

1.  All premiums due under this policy, including adjustments, if any, are payable by the Sponsor on or before their due dates at Liberty's Administrative Office, or to Liberty's agent. The due dates are specified on the first page of this policy.

2.  All payments made to or by Liberty shall be in United States dollars.

3.  If premiums are payable on a monthly basis, premiums for additional or increased insurance becoming effective during a policy month will be charged from the next premium due date.

4.  The premium charge for insurance terminated during a policy month will cease at the end of the policy month in which such insurance terminates. This manner of charging premium is for accounting purposes only. It will not extend insurance coverage beyond a date it would have otherwise terminated as shown in the "Termination of a Covered Person's Insurance" provision of this policy.

5.  If premiums are payable on other than a monthly basis, premiums for additional, increased, reduced or terminated insurance will cause a prorated adjustment on the next premium due date.

6.  Except for fraud and premium adjustments, refunds of premiums or charges will be made only for:

    1.  the current policy year; and

    2.  the immediately preceding policy year.

Presiding Judge: HON. MITCH PERRY (630267)

EXH : 000043 of 000045

Form ADOP-PRE-1                                                    Premiums

Filed          22-CI-005754      11/03/2022          David L. Nicholson, Jefferson Circuit Clerk

Filed        22-CI-005754        11/03/2022        David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
11/04/2022 12:53:55 PM
90450-111

## SECTION 8 - PREMIUMS
### (Continued)

**Grace Period**

This is the 31 days following a premium due date, other than the first, during which premium payment may be made.  During the grace period this policy shall continue in force, unless the Sponsor has given Liberty written notice 31 days in advance of discontinuance of this policy.

**Waiver of Premium**

Premium payments for a Covered Person are waived during any period for which benefits are payable.  If coverage is to be continued, premium payments must be resumed following a period during which they were waived.

Presiding Judge: HON. MITCH PERRY (630267)

EXH - 000044 of 000045

Form ADOP-PRE-2                                                                                    Premiums

Filed        22-CI-005754        11/03/2022        David L. Nicholson, Jefferson Circuit Clerk

Filed        22-CI-005754        11/03/2022        David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
11/04/2022 12:53:55 PM
90450-111

# AMENDMENT NO. 1

It is agreed the following changes are hereby made to this policy:  GF3-890-463163-01

| Changes | Additions | Deletions |
|---|---|---|
| Revised the Eligibility Waiting Period for new hires | Form ADOP-SCH-1 R (I) | Form ADOP-SCH-1 |

The effective date of this change is October 1, 2015.

The changes will only apply to Disabilities or Partial Disabilities which start on or after the effective date of this change.

This policy's terms and provisions will apply other than as stated in this amendment.

Dated this 25th day of November, 2015.

Issued to and Accepted by:

Lantech, Inc.
**Sponsor**

By _____
**Signature and Title of Officer**

**Liberty Life Assurance Company of Boston**

*Stephen J. McAnna*

Presiding Judge: HON. MITCH PERRY (630267)

EXH : 000045 of 000045

Form ADOP-AMENDMENT                                        Delete/Add Policy Pages

NOT ORIGINAL DOCUMENT
11/04/2022 12:54:19 PM
90450-111



Lincoln Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7207
London, KY 40742-7207
Phone No.: (800) 291-0112
Secure Fax No.: (603) 430-5923

March 12, 2020

Kevan M. Doran
Doran Law Office
2950 BRECKENRIDGE LANE
STE 12A
LOUISVILLE, KY 40220

RE:   Long Term Disability (LTD) Benefits
      Lantech, Inc.
      Claim #: 7521853
      Claimant: Richard Johnson

Dear Kevan Doran:

Lincoln Life Assurance Company of Boston is responsible for managing claims for Long Term Disability (LTD) benefits under Lantech, Inc.'s Group Disability Policy. We are writing in reference to Richard Johnson's claim for LTD benefits under the Policy.

We have completed a thorough review of Mr. Johnson's eligibility for benefits and have determined that benefits are not payable beyond March 12, 2020. Lantech, Inc.'s LTD Policy requires that to receive benefits Mr. Johnson must meet the following definition of disability:

> *"Disability" or "Disabled" means:*
> *1. For persons other than pilots, co-pilots, and crewmembers of an aircraft:*
> *i. that during the Elimination Period and the next 36 months of Disability the Covered Person, as a result of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Occupation; and*
> *ii. thereafter, the Covered Person is unable to perform, with reasonable continuity, the Material and Substantial Duties of Any Occupation.*
>
> *"Own Occupation" means the Covered Person's occupation that he was performing when his Disability or Partial Disability began. For the purposes of determining Disability under this policy, Liberty will consider the Covered Person's occupation as it is normally performed in the national economy.*

Mr. Johnson has been receiving LTD benefits for his disability since July 30, 2017.

In order to evaluate whether or not he continued to meet the above definition of disability, we requested medical information from his physician(s).

Exhibit B

Presiding Judge: HON. MITCH PERRY (630267)

EXH - 000001 of 000004

Filed          22-CI-005754      11/03/2022        David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
11/04/2022 12:54:19 PM
90450-111

Mr. Johnson submitted a claim for left knee pain and back and neck pain and his claim file contains the following medical documentation:

- Medical records dated January 10, 2017 through January 21, 2020 from Dr. Popham.
- Medical records dated May 29, 2018 through October 4, 2018 Dr. Petrucci.
- Medical records dated March 26, 2019 from Ellis and Badenhausen Physical Therapy

In order to better understand the restrictions and limitations in relation to your medical condition, your file was referred to a doctor Board Certified in Physical Medicine and Rehabilitation. A summary of the review follows:

*Assessment/Rationale*

*This review is from a Physical Medicine and Rehabilitation perspective only. The claimant is a 64-yearold male. The chiropractic reports spanning 05/29/2018 - 10/04/2018 are reviewed. The claimant has been managed with manual, manipulative therapy for diagnoses that include upper back pain, and cervical myofascial pains. Treatments have included manual manipulation, dry needling, and soft tissue mobilizations. The chiropractic provider notes there are multiple areas of subluxations, noted about the spine and active trigger points are consistently palpated. On 10/04/2018, the chiropractic provider notes the claimant derives some relief of pain, with manual therapy. However, subluxations and spasms remain present on the exam, and the visual analog scale (VAS) pain level is 7/10. As per the report dated 01/16/2019, Dr. Krupp, MD indicates the claimant complains of new-onset right shoulder pains. There is no specific mechanism of injury, but the claimant does report associated numbness. The history is notable for prior LEFT shoulder debridement in 2016. On exam, there is tenderness to palpation over the greater tuberosity and biceps groove. There is positive impingement, and Speed's. Mild ER and deltoid weakness is seen. Diagnoses include rotator cuff (RTC) impingement. Plan: A cortisone injection was performed. MRI can be considered if symptoms do not improve. As per the report dated 03/26/2019, Dr. Popham, MD indicates the claimant is now status post left total knee arthroplasty (TKA). The current pain is 6/10 and made worse by walking. Medications include Tylenol ES. The claimant denies instability or tingling. On exam, there is distal hamstring insertion tenderness to palpation. There is no gross motor or sensory deficit. Hamstring injury following TKA is diagnosed. Medications were prescribed for knee pain.*

*This claimant is status post left TKR, with ongoing pain. However, the records do not include any recent physician reports, including updated imaging or physical exam findings. Therefore, given this lack of critical information, no specific restrictions/limitations can be supported from a Physical Medicine and Rehabilitation perspective, from the review period of 02/24/2020 onward and beyond.*

Based on the medical documentation received in relation to the requirements of his occupation, Mr. Johnson no longer meets the definition of disability outlined above. Thus benefits are no longer payable and we must close his claim.

Any pending application(s) for benefits that are considered an offset under the disability Policy continue to be applicable to Mr. Johnson's claim. If benefits are awarded retroactive to his period of disability with Lincoln Life Assurance Company of Boston, Mr. Johnson is expected to repay the

Presiding Judge: HON. MITCH PERRY (630267)

EXH : 000002 of 000004

Filed          22-CI-005754      11/03/2022          David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
11/04/2022 12:54:19 PM
90450-111

written request for review within 180 days from the receipt of this notice, our claim decision will be final, his file will remain closed, and no further review will be conducted.

Under normal circumstances, Mr. Johnson will be notified of the final decision within 45 days from the date his request is received.

If you require language translation assistance, please contact Lincoln Financial Group to initiate a service provided free of charge to assist with understanding your claim and appeal rights.

如果您需要翻译方面的帮助，请联系我，我会免费为您服务以便了解您的要求和诉求。

Shá ata' hane'go shíká a'doowoł nínízingo saad hosíníłį̜' dóó ná'ookąąh nííní'ą̜ą̜go naaltsoos nííníłtsoozígíí hazho'ó bik'idi'deeshtį̜į̜ł nínízingo doo bą̜ą̜h ílínígóó níká a'doowoł éí biniiyé shił hodíílnih áko ákwe'égi níká adeeshwoł.

Si necesita traducción, contácteme para iniciar un servicio gratuito a fin de ayudarle a entender sus derechos de reclamo y apelación.

Kung nangangailangan ka ng tulong sa translation, mangyaring makipag-ugnayan sa akin upang gumamit ng serbisyong ibinigay nang walang bayad upang matulungan kang maunawaan ang iyong mga karapatan sa paghahabol at pag-aapela.

If special circumstances cause a delay in our decision, Mr. Johnson will be notified of the final decision no later than 90 days from the date his request is received.

Nothing in this letter should be construed as a waiver of any rights and defenses under the above captioned Policy, and all of these rights and defenses are reserved to the company, whether or not they are specifically mentioned herein.

If Mr. Johnson has any questions regarding this matter, please contact me.

Sincerely,

Latimer Turner
LTD Technical Specialist I
Phone No.: (800) 291-0112 Ext. 13973
Secure Fax No.: (603) 430-5923

Presiding Judge: HON. MITCH PERRY (630267)

EXH: 000003 of 000004

Filed        22-CI-005754     11/03/2022      David L. Nicholson, Jefferson Circuit Clerk

NOT ORIGINAL DOCUMENT
11/04/2022 12:54:19 PM
90450-111

Liberty Life Assurance Company of Boston
Group Benefits Disability Claims
P.O. Box 7207
London, KY 40742-7207

MR. RICHARD JOHNSON
2112 CLEARVIEW DRIVE
LAGRANGE KY 40031

Presiding Judge: HON. MITCH PERRY (630267)

EXH-: 000004 of 000004