**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF KENTUCKY**
**AT LOUISVILLE**
**CIVIL ACTION NO. 3:22-CV-00626-DJH-CHL**

| | | |
|---|---|---|
| **RICHARD JOHNSON,** | ) | |
| | ) | ***Electronically Filed*** |
| **PLAINTIFF,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **LANTECH'S REPLY** |
| **LANTECH.COM, LLC** | ) | **IN SUPPORT OF** |
| **d/b/a LANTECH, INC., et al.,** | ) | **MOTION TO DISMISS** |
| | ) | |
| **DEFENDANTS.** | ) | |
| | ) | |
| | ) | |

\* \* \*   \* \* \*   \* \* \*

Defendant, Lantech.com, LLC. ("Lantech"), by counsel, respectfully submits this reply in support of its motion to dismiss (DN 11) pursuant to Fed. R. Civ. P. 12(b)(6):

## INTRODUCTION

Plaintiff's response (DN 20) should not dissuade the Court from granting Lantech's motion. In its underlying motion, Lantech demonstrated that Plaintiff's claims against it for violations of ERISA, breach of contract, unjust enrichment, and promissory estoppel fail because ERISA preempts all of Plaintiff's state law claims, Plaintiff's ERISA claim is not stated against Lantech,[1] and even if ERISA did not preempt the state law claims, Lantech established that it could not possibly have breached either of the putative contracts referenced in the Complaint as a matter of fact and law. Defendant reiterates the arguments set forth in its Motion to Dismiss.

In response to Defendant's motion, Plaintiff maintains his unsupported assertion that Lantech violated the terms of the parties' Release Agreement (an agreement between Plaintiff and

---

[1] To be sure, Plaintiff's Complaint purports to assert an ERISA claim against Lantech's co-defendant, Lincoln. But Plaintiff has not contested Lincoln's motion to dismiss on preemption grounds. (DN 13).

Lantech, not Lincoln) by providing a copy of the Agreement to Lincoln, which caused Plaintiff to be "deprived of $90,500.00 in long-term disability benefits" to which he alleges he otherwise would have been entitled. (DN 20 at 2).  Plaintiff further contends that his state law claims against Lantech are not preempted by ERISA because the Release Agreement "neither mentions nor involves employee benefits." *Id.* at 3. For the reasons stated herein, Plaintiff's arguments fail as a matter of fact and law and his claims should be dismissed with prejudice.

**ARGUMENT**

**I.      THE RELEASE AGREEMENT IS CLEARLY IDENTIFIED AS A SEVERANCE AGREEMENT.**

Plaintiff makes the inaccurate statement that the $90,500.00 payment he received from Lantech pursuant to the Release Agreement "is incorrectly identified as severance pay." But it is manifest factually and legally that this payment was never intended to be—nor was it ever treated as—anything other than severance. *Id.* On its face, the unambiguous Release Agreement is a severance agreement. *See* Release Agreement, Ex. 5 to Affidavit of Gina McIntosh ("McIntosh Affidavit" attached hereto as Exhibit A). Indeed, the plain language of the Release Agreement explicitly states that it is a "severance agreement." *Id.* at 1.

"'[I]n the absence of ambiguity a written instrument will be enforced strictly according to its terms,' and a court will interpret the contract's terms by assigning language its ordinary meaning and without resort to extrinsic evidence." *Wehr Constructors, Inc. v. Assurance Co. of Am.*, 384 S.W.3d 680, 687 (Ky. 2012) as modified on denial of reh'g (Dec. 20, 2012) (quoting *Frear v. P.T.A. Industries, Inc.*, 103 S.W.3d 99, 106 (Ky.2003)). Therefore, because the contractual language itself plainly and obviously identifies the Release Agreement as a severance agreement, and Plaintiff's extraneous comments cannot even be considered, let alone used, to alter its terms, there is no basis in law or fact for the Court to conclude otherwise.

2

Though Plaintiff relies on the Release Agreement as the basis for his lawsuit, he did not attach a copy of the Agreement to the pleadings.  Lantech recognizes that if "matters outside the pleadings are presented to and not excluded by the court" when ruling upon a motion to dismiss under Rule 12(b)(6), the Federal Rules typically require that "the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). However, under certain circumstances, "a document that is not formally incorporated by reference or attached to a complaint may still be considered part of the pleadings." *Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999). "[W]hen a document is referred to in the complaint and is central to the plaintiff's claim . . . [,] the defendant may submit an authentic copy [of the document] to the court to be considered on a motion to dismiss, and the court's consideration of the document does not require conversion of the motion to one for summary judgment." *Id*; *see, e.g.*, *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997) (considering pension plan documents defendant attached to motion to dismiss part of pleadings because documents were referenced in complaint and were central to plaintiff's claim for benefits under plan).

Here, the Release Agreement attached as an exhibit to the McIntosh Affidavit is not a "matter outside the pleading." First, the Release Agreement is referred to throughout the Complaint. (*See generally* DN 1-2). Second, the Release Agreement is central to Plaintiff's claims. Each of his five causes of action relates to and arises from the Release Agreement in question. Therefore, the Court's consideration of the Release Agreement does not require conversion of Lantech's motion to dismiss into a motion for summary judgment. *See Greenberg*, 117 F.3d at 514.

However, if the Court converts Lantech's motion to dismiss into a motion for summary judgment and considers Lantech's attachment of other authenticated business records in addition

3

to the Release Agreement, Lantech's position that the Release Agreement necessarily is a severance agreement still prevails under the Rule 56 summary judgment standard. Plaintiff fails to establish any genuine issue of material fact regarding whether the Release Agreement is a severance agreement.

Both the unambiguous plain language of the Agreement itself and the following communications unequivocally establish that the Agreement is severance. In a letter to Plaintiff from Lantech on February 13, 2017, Plaintiff was presented with the option of "taking a severance payment and early retirement" in lieu of accepting an offer for a new position. *See*, McIntosh Affidavit, Ex. 1 ("February 13, 2017 Letter"). Further, in an electronic communication sent to Plaintiff on February 21, 2017, Gina McIntosh, Lantech's Director of Operations, explained to Plaintiff how his "severance package" would be paid out following the termination of his short-term disability benefits. *See* McIntosh Affidavit, Ex. 2 ("February 21, 2017 Email"). It is clear as a matter of fact and law that this payment is severance pay and was always intended to be.[2]

## II.    LANTECH DID NOT BREACH THE TERMS OF ITS AGREEMENT WITH PLAINTIFF.

Plaintiff's breach of contract claim against Lantech fails because, as the fiduciary of the ERISA-regulated disability benefit plan at issue, Lantech had a duty to comply with the plan documents which required it to disclose relevant employee information to Lincoln, *i.e.*, that Plaintiff received $90,500.00 as severance pay under the Release Agreement. Plaintiff's severance pay qualifies as "Other Income Earnings" under the plan and must be deducted from the amount of monthly benefits payable to Plaintiff.[3] *See* Lantech's Disability Benefit Policy, at 29 ("ERISA

---

[2] *See also* Notes for conversation with Plaintiff regarding offer of severance pay; *and see* July 24, 2017 Email stating that Plaintiff "chose to retire and will be due the agreed upon severance package that is documented in his severance agreement." McIntosh Affidavit Exs. 3–4. The exhibits are authenticated by the affidavit of Ms. McIntosh, attached as Exhibit A. If necessary, the Motion to Dismiss may be treated as one for summary judgment. *See Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999).

[3] Section 4 of the Plan provides, in relevant part, that "[t]o figure the amount of Monthly Benefit: . . . (2) Deduct Other Income Benefits and Other Income Earnings . . ." ERISA Plan at 21. "Other Income Earnings" means "the

Plan" attached hereto as Exhibit B.)[4] The plain text of the policy demonstrates that Lincoln was permitted to deduct this amount from Plaintiff's benefits, and it was reasonable for it to interpret the policy in such a manner. *See Barber v. Lincoln Nat'l Life Ins. Co.*, 260 F. Supp. 3d 855, 860 (W.D. Ky. 2017), aff'd, 722 F. App'x 470 (6th Cir. 2018) (citing *Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 556 (6th Cir. 1998) (requiring a court to "give effect to the unambiguous terms of an ERISA plan")).

Thus, because information and documents regarding Plaintiff's receipt of "Other Income Earnings" were necessary for Lincoln to determine whether benefits were payable or the actual amount due, Lantech was obligated to disclose this information. *See id.* at 31. As Plaintiff's $90,500.00 payment was obtained pursuant to the Release Agreement that contains a confidentiality provision that affects the information required by the ERISA benefit plan, the confidentiality provision is unenforceable (or not applicable) as to the disclosure of the required information to Lincoln. Accordingly, Lantech did not breach its Release Agreement with Plaintiff by providing this information to Lincoln.

Pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1104(a)(1)(D), ". . . a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—***in accordance with the documents and instruments governing the plan*** . . ." (emphasis added) The "duty to disclose material information is the core of a[n ERISA] fiduciary's responsibility." *Eddy v. Colonial Life Ins. Co. of Am.*, 919 F.2d 747,

---

amount of earnings the Covered Person earns or receives from any form of employment including severance; and any amount the Covered Person receives from any formal or informal sick leave or salary continuation plan(s). . . "The sum of Other Income Benefits and Other Income Earnings will be deducted in accordance with the provisions of this policy."

[4] The Plan was attached to the Complaint and may be considered part of the pleadings for purposes of Rule 12. *See Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) ("When a court is presented with a Rule 12(b)(6) motion [failure to state a claim upon which relief can be granted], it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein.").

750 (D.C. Cir. 1990). An employer's failure to forward an employee's information to an ERISA insurance provider may constitute a breach of fiduciary duty. *See Hamilton v. Allen–Bradley Co., 244 F.3d 819, 827 (11th Cir. 2001) (citing Krohn v. Huron Mem'l Hosp.*, 173 F.3d 542, 552 (6th Cir. 1999)).

Here, the ERISA plan documents explicitly required Lantech, as the Sponsor of the plan, to furnish at regular intervals to Lincoln: (1) information and records relative to employees who qualify to become insured, and (2) any other information that Lincoln may reasonably require. *See* ERISA Plan at 41. "The Sponsor's [Lantech's] records which, in the opinion of [Lincoln], have a bearing on the insurance will be opened for inspection at any reasonable time." *Id.* Moreover, Lincoln "may terminate this policy" if "the Sponsor fails to furnish promptly any information which [Lincoln] may reasonably require; or to perform any other obligations pertaining to this policy." *Id.* at 37. Thus, if Lantech did not forward the required information to Lincoln regarding Plaintiff's receipt of the $90,500.00 payment, this failure would have violated the terms of the benefit plan which in turn, would have constituted a breach of Lantech's fiduciary duty imposed by ERISA.

In short, none of the three parties could have determined Plaintiff's eligibility for benefits under the Plan, let alone the amount of those benefits, without knowledge and consideration of what other income or payments Plaintiff may have been receiving. The failure to disclose the information to Lincoln would have rendered Plaintiff ineligible for benefits in the first place. Because both the disclosure itself, or the failure to disclose, would have foreclosed Plaintiff's eligibility, the outcome is exactly the same. Hence, Plaintiff has no claim.

Lantech's fiduciary duty to forward material employee information to Lincoln permitted it to disclose such information without resulting in a breach of the Agreement's confidentiality

6

provision. Indeed, the language of the Agreement itself indicates and contemplates that there necessarily are going to be instances, like this one, where either party is permitted to disclose information regarding the terms, conditions, and existence of the Agreement. *See* McIntosh Affidavit Ex. 5, at 1 ("Release Agreement") ("To the extent either party is permitted to disclose and does disclose such information, each agrees to require and warrants that the person receiving such information shall maintain its confidentiality.")

Not only did Lantech have a duty to disclose relevant employee information to Lincoln, but Plaintiff himself was also obligated to "cooperate in the administration of the claim" by "providing any information or documents needed to determine whether benefits are payable or the actual benefit amount due." *See* ERISA Plan at 31. This language indicates that in order to "cooperate in the administration of the claim," Plaintiff had a duty to provide any information or documentation that Lincoln would need to calculate any potential benefit payments. *See id.* This would clearly include information concerning Plaintiff's receipt of the $90,500.00 severance payment because Plaintiff's severance pay qualifies as "Other Income Earnings" —which must be deducted from the amount of monthly benefits. As such, Lincoln was entitled to this information regardless of whether it was provided by Lantech or Plaintiff.

Finally, Plaintiff's breach of contract claim must fail because he has not established proof (and cannot possibly show proof) of any damages as a result of Lantech's alleged breach. Under Kentucky law, to sufficiently allege a claim for breach of contract, the Plaintiff must establish: (1) the existence of a contract; (2) breach of that contract; and (3) damages flowing from the breach of contract. *See Metro Louisville/Jefferson County Gov't v. Abma*, 326 S.W.3d 1, 8 (Ky. App. 2009) (citing *Barnett v. Mercy Health Partners-Lourdes, Inc.*, 233 S.W.3d 723, 727 (Ky. App. 2007)).

Here, Section 7 of the Policy provides that Lincoln has the "right to recover any overpayment of benefits caused by, *but not limited to*, the following: (1) fraud; (2) any error made by [Lincoln] in processing a claim; or (3) the Covered Person's receipt of any Other Income Benefits" and "[i]t is required that full reimbursement be made to [Lincoln]." ERISA Plan, at 41 (emphasis added). Thus, even if Plaintiff initially might have received payment of long-term disability benefits from the policy in addition to the $90,500.00 severance payment from Lantech, due to the parties' failure or refusal to consider the severance payment in the calculus, Lincoln would have had the right to recover any overpayment of benefits and Plaintiff would have to reimburse Lincoln for any overpayment he received as a result of the parties' failure to disclose his "Other Income Earnings." There is simply no conceivable outcome wherein Plaintiff would be lawfully or legitimately entitled to receive and keep forever both the $90,500.00 severance pay from the Release Agreement and an additional sum of $90,500.00 in monthly benefits from the disability policy.

Any private agreement to thwart this outcome, whether under a non-disclosure clause or otherwise, smacks of fraud on the Plan, a prospect that could not be sanctioned by any court. This negates Plaintiff's claim against Lantech because Plaintiff's position that his receipt of severance pay should not have been disclosed to Lincoln treads dangerously close to fraud by omission as both Plaintiff and Lantech had a duty to disclose this information. "A fraud by omission claim is grounded in a duty to disclose." *Giddings & Lewis, Inc. v. Indus. Risk Insurers*, 348 S.W.3d 729, 747 (Ky. 2011); *Republic Bank & Trust Co. v. Bear, Stearns & Co.*, 707 F.Supp.2d 702, 710 (W.D. Ky. 2010) ("The gravamen of the tort is breach of a duty to disclose. . ."). "To prevail, a plaintiff must prove: (1) the defendant had a duty to disclose the material fact at issue; (2) the defendant failed to disclose the fact; (3) the defendant's failure to disclose the material fact induced the

8

plaintiff to act; and (4) the plaintiff suffered actual damages as a consequence." *Giddings & Lewis*, 348 S.W.3d at 747 (citing *Rivermont Inn, Inc. v. Bass Hotels Resorts, Inc*., 113 S.W.3d 636, 641 (Ky. App. 2003)). The existence of a duty to disclose is a matter of law for the court. *Id.* (citing *Smith v. General Motors Corp*., 979 S.W.2d 127, 129 (Ky. App. 1998)).

Kentucky recognizes a duty to disclose in four circumstances. *Id.* (citing *Smith*, 979 S.W.2d at 129–30). The first two, the duty arising from a confidential or fiduciary relationship, or a duty provided by statute, are applicable to the ERISA-regulated benefits policy in this case. The two other circumstances where a duty may arise are "when a defendant has partially disclosed material facts to the plaintiff but created the impression of full disclosure," *Id.* (quoting *Rivermont Inn*, 113 S.W.3d at 641), or "where one party to a contract has superior knowledge and is relied upon to disclose same." *Id.* at 748 (quoting *Smith*, 979 S.W.2d at 129). Consequently, whether by design or misunderstanding, Plaintiff's effort to double-dip cannot be permitted.

Accordingly, Plaintiff has failed to state a claim for breach of contract upon which relief can be granted because the confidentiality provision is unenforceable or inapplicable as to the disclosure of the information required under ERISA. As such, Plaintiff has not established that Lantech breached the terms of the Agreement.  Moreover, Plaintiff has not suffered any damages as he was never going to be entitled to an additional $90,500.00 in long-term disability benefits under the ERISA policy regardless of whether Lantech disclosed the existence of the Release Agreement to Lincoln or not.

**III.     PLAINTIFF'S STATE LAW CLAIMS ARE PREEMPTED AND MUST BE DISMISSED.**

The Sixth Circuit "has repeatedly recognized that virtually all state law claims relating to an employee benefit plan are preempted by ERISA." *Cromwell v. Equicor-Equitable HCA Corp*., 944 F.2d 1272, 1276 (6th Cir. 1991) ("only those state laws and state law claims whose effect on employee benefit plans is merely tenuous, remote or peripheral are not preempted'"); *see also*

9

*Penny/Ohlmann/Nieman, Inc. v. Miami Valley Pension Corp.*, 399 F.3d 692, 698 (6th Cir. 2005). "It is not the label placed on the state law claim that determines whether it is preempted, but whether in essence such a claim is for the recovery of an ERISA plan benefit." *Cromwell*, 922 F.2d at 1276.

Here, Plaintiff's state law claims against Lantech are effectively claims for recovery of ERISA plan benefits.  In his Complaint, Johnson claims he "is entitled to reinstatement and repayment of unpaid long-term disability benefits under the plan" and alleges that Lantech's breach of "the confidential Release Agreement" caused him to "be[] deprived of enjoyment of $90,500.00" in benefits. (DN 1-2.) Johnson requests the "payment of disability benefits due to him" as a remedy. *Id.* at 14. *Marks v. Newcourt Credit Grp., Inc.*, 342 F.3d 444, 453 (6th Cir. 2003) ("In deciding whether state-law claims are preempted by ERISA, we have focused on the remedy sought by plaintiffs"). In all respects, Johnson's state law claims are for ERISA plan benefits. Accordingly, these claims are preempted and must be dismissed with prejudice.

It is important to remember that Lantech did not fail or refuse to pay Plaintiff the $90,500.00 to which he was entitled as a severance payment under the Release Agreement. Plaintiff does not deny that he received that amount from Lantech in full.  Plaintiff's Complaint, rather, is that Lincoln did not pay him an additional $90,500.00 in plan benefits in light of the fact that he had received the off-setting severance payment.  But the propriety of that set-off is governed strictly by the terms of the Plan and, hence, by the terms of ERISA.  Plaintiff cannot, by private agreement or otherwise, alter the terms of the very Plan upon which his whole theory of liability is based.  Plaintiff cannot evade the terms of the Plan or the terms or ERISA simply by mis-labeling the same $90,500.00 as putative contract damages rather than ERISA disability plan benefits.

## CONCLUSION

For the foregoing reasons, Lantech respectfully requests the Court to grant its Motion to Dismiss and dismiss Plaintiff's claims against it with prejudice.

Respectfully submitted,

*/s/ John O. Sheller*
John O. Sheller
Kirby A. Black
STOLL KEENON OGDEN PLLC
500 West Jefferson Street, Suite 2000
Louisville, KY 40202-2828
Phone: (502) 333.6000
Fax: (502) 562.0939
john.sheller@skofirm.com
kirby.black@skofirm.com
*Counsel for Defendant,*
*Lantech.com, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that, on this 20th day of March, 2023, I served the foregoing via the Court's CM/ECF electronic filing system, which will send email notification to the following:

Kevan M. Doran
DORAN LAW OFFICE
2950 Breckenridge Lane, Suite 12A
Louisville, Kentucky 40220
Phone: (502) 208-4971
kdoran@thedoranlawoffice.com
*Counsel for Plaintiff,*
*Richard Johnson*

11

Iwana Rademaekers
LAW OFFICES OF IWANA RADEMAEKERS, P.C.
17304 Preston Road, Suite 800
Dallas, Texas 75252
Phone: (214) 579-9319
iwana@rademaekerslaw.com
*Counsel for Defendant, The Lincoln National*
*Life Insurance Company f/k/a Lincoln Life*
*Assurance Company of Boston*

*/s/ John O. Sheller*
*Counsel for Defendant*
*Lantech.com, LLC*