| | |
|---|---|
| From: | LFGNotifications@LFG.com |
| Sent: | Monday, May 10, 2021 2:54:50 PM |
| To: | KDORAN@THEDORANLAWOFFICE.COM; |
| CC: | |
| BCC: | |
| Subject: | [Send Secure]Lantech, Inc. Claim No. 7521853 Richard Johnson |
| Attachments: | w4ioxwvmg56hw9hgwzpt_10443668.pdf; |

This notification contains important information regarding a claim with Lincoln Financial Group company. THIS IS AN AUTOMATED EMAIL. PLEASE DO NOT RESPOND. You may use the contact information in the attached letter to respond if needed.

EXHIBIT

2

Lincoln/R. Johnson 0070



Lincoln Life Assurance Company of Boston
Disability and Life Claims Appeal
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (888) 437-7611
Secure Fax No.: (603) 334-5704

May 10, 2021

Kevan M. Doran
Doran Law Office
2950 BRECKENRIDGE LANE
STE 12A
LOUISVILLE, KY 40220

RE:     Long Term Disability (LTD) Benefits
        Lantech, Inc.
        Claim #: 7521853
        Claimant: Richard Johnson

Dear Kevan Doran:

Lincoln Life Assurance Company of Boston ("Lincoln") is responsible for managing claims for Long Term Disability (LTD) benefits under the Lantech, Inc.'s LTD Policy.  We reviewed Richard Johnson's appeal request for LTD benefits and maintained the decision to deny benefits beyond March 12, 2020.

**Initial Claim Decision**

Mr. Johnson submitted a claim for his absence from work as of January 31, 2017, because of osteoarthritis of the left knee s/p left knee replacement and neck pain.  His LTD benefits were approved from July 30, 2017 through March 12, 2020.  Benefits beyond March 12, 2020, were denied as the evaluation concluded Mr. Johnson was no longer disabled as defined by the Policy.

The basis for the decision was outlined in a letter dated March 12, 2020. Mr. Johnson was provided an opportunity to request an appeal review of the denial, stating the reasons why he felt that his claim should not have been denied, and submit additional information to support his claim. Specifically, he was advised to submit the following information:

> *"A current, valid Functional Capacity Evaluation with full efforts evident in all tasks, supporting your inability to perform the material and substantial duties of your Own Occupation as outlined above beyond March 12, 2020 and carrying forward any and all office notes, phone notes, consultations/evaluations, diagnostic test results, operative/procedure reports, treatment plans, restrictions and limitations, out of work/return to work notes and/or prescribed medications from January 21, 2020 forward from all of your treating providers. You may submit any information pertaining to your Social Security Disability Award, including medical examinations, reports, disability determination explanations, record conducted by*

1  of 11

**Lincoln/R. Johnson 0071**

*the Social Security Administration (SSA), and/or a complete copy of the SSA's disability determination file. You should also provide any additional information that you feel will support his claim."*

**Appeal**

In your letter of appeal, received on August 18, 2020, you indicated that Mr. Johnson remained unable to perform the essential functions of his occupation. No additional medical information was provided.

Pursuant to your request, a complete copy of Mr. Johnson's claim file was sent to your office on August 19, 2020.

On September 10, 2020, we spoke to you regarding Mr. Johnson's appeal. We explained we received Mr. Johnson's appeal and forwarded a copy of the claim file. We confirmed you received the copy of the claim file. During the telephone conversation, we explained the last office note on file from Dr. Popham was dated March 26, 2019 and the next office visit was scheduled for February 17, 2020, but the note was not on file. We also stated there was a Restrictions Form on file from Dr. Popham dated January 21, 2020. In summary, we advised there was no updated medical records or proof of ongoing impairment to support beyond March 12, 2020. You stated you already asked your assistant to request updated medical records.

We sent a letter to your office on September 10, 2020 confirming the telephone conversation. The letter indicated that in an effort to provide Mr. Johnson with a full and fair review, it may be in his best interest to submit additional medical records (i.e., office notes, consultation reports, diagnostic testing reports, etc.,) from Dr. Popham and any other treating providers from June 1, 2019 to the present for us to review as part of his appeal. We advised for Lincoln to conduct a timely review of Mr. Johnson's appeal, we asked that you submit any additional information to be considered within 30 days of the letter.

We called your office on October 12, 2020 and left a voice message following up on the September 10, 2020 letter. You returned the call on October 22, 2020 stating you just received the medical records on a disc and was printing them. You stated your office would fax them.

On October 22, 2020, we received medical records from your office. The records included:

- March 4, 2020 office note from Dr. Ryan Krupp – Orthopedic Institute
- March 11, 2020 MRI of the right shoulder
- March 17, 2020 orders only from Norton Orthopedic Institute
- March 24, 2020 telephone note from Norton Orthopedic Institute
- March 25, 2020 phone note from Dr. Ryan Krupp at Norton Orthopedic Institute
- May 5, 2020 telephone note from Norton Orthopedic Institute
- May 6, 2020 telephone note from Norton Orthopedic Institute

We called your office on October 22, 2020 and left a voice message confirming receipt of medical records. We also asked if Mr. Johnson had his right shoulder arthroscopy with rotator cuff repair or any other procedure. We requested a return call.

**Lincoln/R. Johnson 0072**

You returned the call on October 26, 2020, stating you received our voice message but could not understand the entire message. We asked if Mr. Johnson had shoulder arthroscopy. You stated he might have had injections. You stated you would have to check the records in the office. You also stated you had a lot of medical requests sent to Mr. Johnson's doctors. We advised we could provide additional time before moving forward with the appeal.

On October 26, 2020, we wrote to your office following our telephone conversation. We advised that for Lincoln to conduct a timely review of Mr. Johnson's appeal, we asked that you submit any additional information to be considered within 30 days of the letter or by November 25, 2020.

We called you on December 1, 2020. We left a voice message stating we were following up for additional records for Mr. Johnson's appeal. We requested a return call.

On December 3, 2020, we wrote to your office following up for records pertaining to Mr. Johnson's appeal. We advised that for Lincoln to conduct a timely review of Mr. Johnson's appeal, we asked that you submit any additional information to be considered within 30 days of the letter or by January 2, 2021.

You called on December 8, 2020, to let us know that you received additional records. You explained you would send two sets. You also stated you would check with your assistant to see if there was anything else. You advised you would call back.

On December 14, 2020, we received medical records from your office. The records included:

- March 4, 2020 office note from Dr. Ryan Krupp – Orthopedic Institute
- March 11, 2020 MRI of the right shoulder
- March 17, 2020 orders only from Norton Orthopedic Institute
- March 24, 2020 telephone note from Norton Orthopedic Institute
- March 25, 2020 phone note from Dr. Ryan Krupp at Norton Orthopedic Institute
- May 5, 2020 telephone note from Norton Orthopedic Institute
- May 6, 2020 telephone note from Norton Orthopedic Institute

On January 11, 2020, we called your office advising we were following up to confirm if the December 14, 2020 fax was the complete appeal or would your office be submitting additional medical records. The letter indicated in order for Lincoln to conduct a timely review of Mr. Johnson's appeal, we asked that you submit any additional information to be considered within 30 days or by February 10, 2021.

We called your office on February 10, 2021 and explained we received records on December 14, 2020. We explained that your office indicated additional records might be submitted. We stated we were calling to confirm if additional information was being submitted.

Your office called on February 11, 2021 stating your office was closed due to weather and you were working remotely. We asked if your office would be submitting additional records for Mr. Johnson's appeal. You stated you would check with your assistants and call me back the following day.

3 of 11

**Lincoln/R. Johnson 0073**

We called your office on February 23, 2021 and left a voice message to determine if Mr. Johnson's appeal was complete. We requested a return call.

On February 25, 2021, we wrote to your office following up for records pertaining to Mr. Johnson's appeal. We advised that for Lincoln to conduct a timely review of Mr. Johnson's appeal, we asked that you submit any additional information to be considered within 30 days of the letter or by March 27, 2021.

On March 30, 2021, we called your office and left a voice message asking for information regarding Mr. Johnson's appeal. We requested a return call.

Your office returned the call on March 31, 2021. You stated yes, Lincoln should have received all the documents now. It was everything your office received. You asked if there was something missing, to let you know.

**Appeal Evaluation**

During the ongoing claim evaluation, Mr. Johnson's claim was reviewed by Dr. Fargo Khoury, an independent physician Board Certified in Physical Medicine & Rehabilitation. Dr. Khoury spoke to Dr. Lido Petrucci during the review of the medical documentation on file. Dr. Petrucci stated he had nothing to add because Mr. Johnson had not been seen in over a year. Dr. Khoury's medical evaluation indicated the primary impairing diagnoses included: presence of an artificial left knee joint, chronic pain syndrome, pain in the right shoulder, and pain in the left shoulder. After the review of all the information contained in Mr. Johnson's claim file, Dr. Khoury's medical evaluation concluded:

*"This claimant is status post left TKR, with ongoing pain. However, the records do not include any recent physician reports, including updated imaging or physical exam findings. Therefore, given this lack of critical information, no specific restrictions/limitations can be supported from a Physical Medicine and Rehabilitation perspective, from the review period of February 24, 2020 onward and beyond."*

The medical information received on appeal included a March 4, 2020 office note from Dr. Ryan Krupp. The office note indicated Mr. Johnson reported right shoulder pain and was noted in the office after undergoing left shoulder debridement in 2016. He claimed to have right shoulder pain for over a year with no specific injury. He reported increased pain with forward elevation, internal rotation, abduction, and at night. Mr. Johnson reported numbness and tingling, mostly on the left side, related to neck issues. He was treated conservatively with injection, NSAIDs, and physical therapy but did not get much improvement. On examination, he had positive tenderness/crepitus to the greater tuberosity laterally in the right shoulder along with the bicep groove. Range of motion was reduced in both shoulders with motor strength graded 4+/5 for right shoulder scaption/forward elevation, external rotation, and 5-/5 for the deltoid. On the left, motor strength was 5/5 throughout. The claimant had positive Neer test, Hawkins test, speeds test, and O'Brien's test. X-rays of the right shoulder showed no glenohumeral joint osteophytes, joint space narrowing, or other degenerative changes. The acromioclavicular joint had moderate arthritis with a hooked acromion, but no evidence of fracture or dislocation. There were also no periosteal reactions or medullary lesions seen.

**Lincoln/R. Johnson 0074**

The March 11, 2020 MRI of the right shoulder noted mild supraspinatus and infraspinatus tendinosis with no evidence of disruption. Signal abnormality was noted in the superior fibers of the distal subscapularis muscle and tendon suggesting a mild sprain or partial intrasubstance tearing with no evidence of disruption. Mild lateral downsloping of the acromion and mild degenerative changes in the acromioclavicular joint. Probable degenerative changes and fraying in the superior labrum with possible shallow tear of the base of the superior labrum posteriorly with the labrum otherwise intact. Mild intra-articular long head biceps tendinopathy.  Small amount of increased signal in the subacromial space suggesting slight bursal inflammation.

The March 25, 2020 phone note from Dr. Ryan Krupp indicated he reviewed the right shoulder MRI with Mr. Johnson on the telephone. Treatment options were discussed with Mr. Johnson pertaining to the right shoulder with the indication that if he were to move forward with surgery, this would include a right shoulder arthroscopy with rotator cuff repair versus debridement, labral debridement, chondroplasty, subacromial decompression, biceps tenodesis, and related procedures, similar to what he had on the left shoulder. Mr. Johnson indicated he wanted to proceed with conservative care to see how he responded. He was instructed to utilize activity modification, a home exercise program as instructed, Biofreeze, and Mobic 15 mg 1 by mouth daily.

The May 5, 2020 telephone note from Norton Orthopedic Institute was related to a collections bill Mr. Johnson received.

During the review of Mr. Johnson's appeal, his claim was reviewed by Dr. Aruna Yarrozu, an independent physician Board Certified in Physical Medicine & Rehabilitation.  Dr. Yarrozu's medical evaluation stated the medical records on file support the following primary impairing diagnoses:  artificial left knee joint, chronic pain syndrome, right shoulder pain, and left shoulder pain.  Based on the review of all of the medical documentation on file, Dr. Yarrozu concluded:

*"Taking into consideration the entire clinical picture, including standards of care and evidence-based medicine, and any medication or other treatment side effects, the information provided for the review supported restrictions and limitations from through March 13, 2020 to March 25, 2020 and beyond for 3 months from the date of the progress notes dated March 25, 2020 (i.e., June 25, 2020). No updated information was provided for the review beyond that date to support that the claimant had any significant deficits requiring work restrictions and limitations pertaining to his reported conditions. The physician failed to establish whether the claimant continued with the recommended conservative treatment or if he proceeded with surgical intervention to warrant continued or alternative restrictions and limitations (R/L) from June 26, 2020 and beyond.*

*For the timeframe of March 13, 2020 to March 25, 2020 and beyond for 3 months from the date of the progress notes dated March 25, 2020 (i.e., June 25, 2020) the R/L to be implemented will include the following:*

- *Sitting: up to 60 minutes at a time for a total of 8 hours per day*
- *Standing: up to 60 minutes at a time for a total of 8 hours per day*
- *Walking: up to 60 minutes at a time for a total of 8 hours per day*
- *Lifting/carrying/pushing/pulling: frequently up to 20 lbs. on the left and occasionally up to 10 lbs. on the right*
- *Climbing stairs: unrestricted*

**Lincoln/R. Johnson 0075**

- *Climbing ladders: never*
- *Stooping: unrestricted*
- *Kneeling: unrestricted*
- *Crouching: unrestricted*
- *Crawling: never*
- *Reaching: never overhead with the right/unrestricted on the left; unrestricted at waist and desk level on the left/occasionally on the right; unrestricted on the left/occasionally on the right*
- *Use lower extremities for foot controls: unrestricted bilaterally*
- *Fine manipulation: unrestricted bilaterally*
- *Simple and firm grasping: unrestricted bilaterally*
- *Keyboarding: unrestricted bilaterally*
- *Use of a mouse: occasionally on the right/unrestricted on the left.*
- *Claimant can take 10-minute working breaks every 2 hours to stretch, reposition, or sit/stand comfortably*
- *No operating power tools/vibratory tools with the right upper extremity to avoid aggravation of symptoms*

*The medical records in the file do not support impairments and the need for restrictions and/or limitations during the above timeframe pertaining to the diagnosis of the presence of an artificial left knee joint (Z96.652) given that the most recent clinical documentation did not endorse that the claimant was having any functional difficulties pertaining to this region of the body requiring R/L."*

On April 16, 2021, we wrote to Dr. Ryan Krupp and copied your office. The letter stated we were in the process of reviewing Mr. Johnson's appeal of the denial determination regarding his claim. We asked Dr. Krupp to review the medical report and restrictions and limitations outlined by Dr. Aruna Yarrozu. We asked Dr. Krupp if he disagreed with Dr. Yarrozu's findings, to please detail specific areas with which he disagreed and provide medical documentation to support his position. In the absence of a response, we would conclude that he agreed with Dr. Aruna Yarrozu's medical report. We asked Dr. Krupp to provide any information by May 7, 2021. To date, we have not received any additional information.

## **Vocational Review**

Mr. Johnson's claim was reviewed by a vocational consultant for an occupational analysis to determine how his occupation is performed in the national economy. The review noted the occupation is best captured by the following title per the DOT: Project Engineer. The vocational consultant concluded the occupation is typically performed as light in the National Economy, per the DOT. National Economy demand levels include:

Per the DOT:

- Frequent handling
- Occasional reaching, fingering

6 of 11

**Lincoln/R. Johnson 0076**

Per ERI:

- Frequent sitting
- Occasional standing, walking, keyboarding

Summary: The occupation is most often performed at the light level in the National Economy, per the DOT with frequent handling, sitting; occasional reaching, fingering, standing, walking, keyboarding.

Strength: Light Lifting, Carrying, Pushing, Pulling 20 Lbs. occasionally, frequently up to 10 Lbs., or negligible amount constantly. Can include walking and or standing frequently even though weight is negligible. Can include pushing and or pulling of arm and or leg controls.

This appeal review and analysis considered all the medical and claim documentation contained in Mr. Johnson's LTD administrative record, whether or not specifically referenced in this document. We understand Mr. Johnson may be experiencing symptoms related to his conditions. The appeal review concludes that the medical documentation reasonably supports medical restrictions and limitations from March 13, 2020 through June 25, 2020. However, based on our review of the totality of information on file, we have determined Mr. Johnson does not meet the definition of disability from his Own Occupation beyond March 12, 2020. Our role in reviewing Mr. Johnson's file is to determine whether his medical condition and the medical documentation contained in the file validates impairment resulting in restrictions and limitations, which would preclude him from performing the material and substantial duties of his Own Occupation as defined by the Policy beyond March 12, 2020. We are not required to ensure the availability of this occupation or that he return to active employment with his former employer in the same or different position.

In the current employment environment, and as a result of technological advancement, employers are providing a variety of workstation types and associated equipment that allow individuals opportunity to experience and sustain comfort in their respective work settings within the occupation(s).

Please note that in order to be eligible to receive continued disability benefits, along with proof of continued disability, Mr. Johnson must provide proof of continued regular attendance of a physician and appropriate available treatment which is generally acknowledged by Physicians to cure, correct, limit, treat or manage the disabling condition. The records on file do not provide proof of continued disability and the respective appropriate available treatment for his conditions. Overall, the file lacks proof of a level of or frequency of treatment that would be expected from someone who is continuing to experience disabling symptoms.

In our review of Mr. Johnson's claim, Lincoln has fully considered the Social Security Administration's (SSA) ruling to approve Social Security Disability (SSD) benefits. It should be noted, however, that while we have fully considered the SSA's ruling, the decision by the SSA does not determine entitlement to benefits under the terms and conditions of Lantech, Inc.'s LTD Policy. Moreover, Lincoln has obtained and considered medical reviews that were not considered by the SSA in its determination process.

**Lincoln/R. Johnson 0077**

**Conclusion**

We conducted a thorough and independent review of Mr. Johnson's entire claim. In summary, we acknowledge he may have continued to experience some impairment and symptoms associated with his conditions. However, the medical documentation on file does not contain physical examination findings, mental status examination findings, diagnostic test results, or other forms of medical documentation supporting his impairments and symptoms remained of such severity, frequency, and duration that they resulted in restrictions or limitations, rendering Mr. Johnson unable to perform the duties of his occupation beyond March 12, 2020.

After a complete evaluation of the claim, including the information submitted with the appeal, all medical reviews completed on the file, and taking into consideration the opinion of Mr. Johnson's providers as set forth in their written record, we determined the clinical evidence does not support Mr. Johnson is precluded from performing his Own Occupation beyond March 12, 2020. Our position remains that proof of continued disability in accordance with the Policy's provisions has not been provided, and our original determination to deny benefits is upheld. Therefore, no further benefits are payable.

This claim decision reflects an evaluation of the claim facts and Policy provisions.

**Policy Provisions**

In order to receive benefits, you must satisfy the requirements of all Policy provisions that state, in part:

***LONG TERM DISABILITY COVERAGE***

***Disability Benefit***

*When Liberty receives Proof that a Covered Person is Disabled due to Injury or Sickness and requires the Regular Attendance of a Physician, Liberty will pay the Covered Person a Monthly Benefit after the end of the Elimination Period, subject to any other provisions of this policy. The benefit will be paid for the period of Disability if the Covered Person gives to Liberty Proof of continued:*

1. *Disability;*

2. *Regular Attendance of a Physician; and*

3. *Appropriate Available Treatment.*

*The Proof must be given upon Liberty's request and at the Covered Person's expense. In determining whether the Covered Person is Disabled, Liberty will not consider employment factors including, but not limited to, interpersonal conflict in the workplace, recession, job obsolescence, paycuts, job sharing and loss of a professional or occupational license or certification.*

**Lincoln/R. Johnson 0078**

**"*Appropriate Available Treatment*"** *means care or services which are:*

1. *generally acknowledged by Physicians to cure, correct, limit, treat or manage the disabling condition;*
2. *accessible within the Covered Person's geographical region;*
3. *provided by a Physician who is licensed and qualified in a discipline suitable to treat the disabling Injury or Sickness;*
4. *in accordance with generally accepted medical standards of practice.*

**"*Disability*" or "*Disabled*"** *means:*

*1. For persons other than pilots, co-pilots, and crewmembers of an aircraft:*

  i.   *that during the Elimination Period and the next 36 months of Disability the Covered Person, as a result of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Occupation; and*

  ii.  *thereafter, the Covered Person is unable to perform, with reasonable continuity, the Material and Substantial Duties of Any Occupation.*

**"*Own Occupation*"** *means the Covered Person's occupation that he was performing when his Disability or Partial Disability began. For the purposes of determining Disability under this policy, Liberty will consider the Covered Person's occupation as it is normally performed in the national economy.*

**"*Proof*"** *means the evidence in support of a claim for benefits and includes, but is not limited to, the following:*

1. *a claim form completed and signed (or otherwise formally submitted) by the Covered Person claiming benefits;*

2. *an attending Physician's statement completed and signed (or otherwise formally submitted) by the Covered Person's attending Physician; and*

3. *the provision by the attending Physician of standard diagnosis, chart notes, lab findings, test results, x-rays and/or other forms of objective medical evidence in support of a claim for benefits.*

*Proof must be submitted in a form or format satisfactory to Liberty.*

**"*Regular Attendance*"** *means the Covered Person's personal visits to a Physician which are medically necessary according to generally accepted medical standards to effectively manage and treat the Covered Person's Disability or Partial Disability.*

**Lincoln/R. Johnson 0079**

*LONG TERM DISABILITY COVERAGE*

*Discontinuation of the Long-Term Disability Benefit*

*...*
*9. the date the Covered Person is no longer Disabled according to this policy;*
*...*

Under the Employee Retirement Income Security Act (ERISA) appeal guidelines, Mr. Johnson was entitled to appeal the decision made by Lincoln, and to submit any additional information he wished to be considered as part of the appeal. Lincoln has conducted a full and fair review of his appeal and accompanying materials and has concluded that the denial of benefits will be maintained.

At this time, Mr. Johnson's administrative right to review has been exhausted; no further review will be conducted by Lincoln and his claim will remain closed. Mr. Johnson may request to receive, free of charge, copies of all documents relevant to his claim. He has the right to bring a civil action under section 502(a) of ERISA following an adverse benefit determination on review.

The Lantech, Inc.'s Group Disability Income Policy contains the below provision:

*Legal Proceedings*

*A claimant or the claimant's authorized representative cannot start any legal action:*

*1. until 60 days after Proof of claim has been given; or*

*2. more than three years after the time Proof of claim is required.*

If Mr. Johnson's policy is subject to ERISA, he may have other voluntary alternative dispute resolution options, such as mediation. One way to find out what may be available is to contact his local U.S. Department of Labor Office or his state insurance regulatory agency. In addition, once all required reviews of his claim have been completed, he has the right to bring a civil action under applicable law. Mr. Johnson's employer's policy has a contractual limitations period of three year(s), which means that a lawsuit must be brought within three year(s) after the date written proof of claim or proof of continued disability was required. The date on which the contractual limitations period expires for this claim is June 9, 2024.

Nothing in this letter should be construed as a waiver of any Lincoln rights and defenses under the above captioned Policy, and all these rights and defenses are reserved to the Company, whether they are specifically mentioned herein.

Lincoln/R. Johnson 0080

Decisions made by Lincoln are based on the provisions outlined in Lantech, Inc.'s LTD Policy. These provisions are not contingent on decisions made by either the Social Security Administration or other disability-determining entities. No internal rules, guidelines, protocols, standard or other similar criteria were relied upon in rendering the claim determination.

If you require language translation assistance, please contact Lincoln to initiate a service provided free of charge to assist with understanding your claim and appeal rights.

如果您需要翻译方面的帮助，请联系我，我会免费为您服务以便了解您的要求和诉求。

Shá ata' hane'go shíká a'doowoł nínízingo saad hosínííłịị' dóó ná'ookạạh nííní'ạạgo naaltsoos nííníłtsoozígíí hazho'ó bik'idi'deeshtịịł nínízingo doo bạạh ílínígóó níká a'doowoł éí biniiyé shił hodíílnih áko ákwe'égi níká adeeshwoł.

Si necesita traducción, contácteme para iniciar un servicio gratuito a fin de ayudarle a entender sus derechos de reclamo y apelación.

Kung nangangailangan ka ng tulong sa translation, mangyaring makipag-ugnayan sa akin upang gumamit ng serbisyong ibinigay nang walang bayad upang matulungan kang maunawaan ang iyong mga karapatan sa paghahabol at pag-aapela.

If you have any questions regarding this matter, please contact me.

Sincerely,

Jane Daniell
Appeals Consultant
Phone No.: (888) 437-7611 Ext. 16393
Secure Fax No.: (603) 334-5704

**Lincoln/R. Johnson 0081**